IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| BERNHARDT TIEDE, II,<br>    *Plaintiff*, | §<br>§<br>§ | |
| v. | § | CIVIL ACTION NO. 1:23-CV-01004 |
| BRYAN COLLIER, ET AL.,<br>    *Defendants*. | §<br>§<br>§ | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S
MOTION FOR TEMPORARY RESTRAINING ORDER**

Defendant, the Office of the Attorney General for the State of Texas, by and through undersigned counsel, files this response to Plaintiff's Opposed Second Motion for Temporary Restraining Order (ECF No. 7). Plaintiff has not met the burden for obtaining a Temporary Restraining Order, and granting such relief would be improper at this stage. Defendant offers the following:

**I.      STANDARD FOR TEMPORARY RESTRAINING ORDER**

The purpose of a temporary restraining order ("TRO") is to "preserve the status quo, for a very short time, so as to avoid irreparable injury pending a hearing on the issuance of a preliminary injunction." *Norman Bridge Drug. Co. v. Banner*, 529 F.2d 822, 829 (5th Cir. 1976); *see also Adams v. Vance*, 570 F.2d 950, 953 (D.C. Cir. 1978) (holding that the self-styled TRO was *de jure* a mandatory injunction because "[i]t did not merely preserve the status quo pending further proceeding, but commanded an unprecedented action irreversibly altering [the status quo]"). As such, "under federal law [ex parte TROs] should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods Inc. v. Bhd. of Teamsters*, 415 U.S. 423, 439 (1974); *see also Hope v. Warde York Cty. Prison*, 956 F.3d 156, 160 (3d Cir. 2020) (quoting the *Supreme Court's Granny Goose Foods Inc.* holding, but expanding its

application to all TROs, not merely those issued ex parte).

"To obtain a Temporary Restraining Order ('TRO'), a plaintiff must show the following: (1) there is a substantial likelihood of success on the merits; (2) there is a substantial threat that the plaintiff will suffer irreparable injury if injunctive relief is denied; (3) the threatened injury outweighs any damage that the TRO might cause the defendant; and (4) granting the TRO will not disserve the public interest." *Nianga v. Wolfe*, 435 F. Supp.3d 739, 742–43 (N.D. Tex. 2020); *Garza v. Starr Cnty*, 309 F. Supp.3d 454, 456 (S.D. Tex. 2018). "Such relief is an extraordinary remedy which should only be granted if the movant has clearly carried his burden of persuasion on each of the four factors." *Id.*; *see also PCI Transp. Inc. v. Fort Worth & W. R.R. Co.*, 418 F.3d 535, 545 (5th Cir. 2005) (noting that the court should not grant preliminary injunctive relief "unless the party seeking it has clearly carried the burden of persuasion on all four requirements"). Even if a movant satisfies each requirement, the decision to grant an injunction still rests with the trial court, and judges reviewing such requests should grant them only under exceptional circumstances. *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985).

Due to their overlapping elements, TRO and preliminary injunction hearings are often conflated, and in some instances, a TRO hearing may convert into one for a preliminary injunction. *See e.g., CarMax*, 177 F.3d 306; *Dilworth v. Riner*, 343 F.2d 226 (5th Cir. 1965). For this conversion to occur, however, the requirements of sufficient notice and an opportunity to meaningfully prepare and respond must still be satisfied. *See id.*; *Phillips v. Charles Schreiner Bank*, 894 F.2d 127, 131 (5th Cir. 1990)' *Document Operations, L.L.C. v. AOS Legal Techs., Inc.*, No. 20-20388, 2021 WL 3729333, at *2 (5th Cir. Aug. 23, 2021). "The notice requirement of rule 65(a) [prohibiting preliminary injunctions without notice to the adverse party] has constitutional as well as procedural dimensions; it implies 'a hearing in which the defendant is given a fair opportunity to oppose the application and to prepare for such opposition.'" *Parker v. Ryan*, 960 F.2d 543, 545 n.1 (5th Cir. 1992) (quoting *Williams v. McKeithen*, 939

F.2d 1100, 1105 (5th Cir. 1991)).

## II.   ARGUMENTS & AUTHORITIES

In this case, Plaintiff has entirely failed to meet the requirements of sufficient notice for a preliminary injunction. Defendants have not had an opportunity to meaningfully prepare or respond to the thousands of pages of documents Plaintiff filed with this Court mere days ago to support their motion for TRO. Therefore, this particular proceeding is limited to an application for a TRO. But a TRO is unavailable because the relief Plaintiff seeks would alter, not maintain, the status quo. The Court should deny the application and, should Plaintiff still wish to pursue it, set Plaintiff's request for a preliminary injunction for hearing at a future date consistent with the procedural and constitutional due process demands.

**A.   The application for TRO should be denied because Plaintiff asks the Court to alter, rather than preserve, the status quo.**

The status-quo-altering relief Plaintiff seeks cannot be obtained through a TRO. Plaintiff attached a proposed Temporary Restraining Order (ECF 3) against The Office of the Attorney General for the State of Texas ("OAG"), Kenneth Paxton and/or Angela Colmenero in their official capacity as Attorney General for the State of Texas, The Texas Department of Criminal Justice ("TDCJ"), and Bryan Collier, in his official capacity as Executive Director of TDCJ. Plaintiff seeks the following relief:

1. Defendants, their officers, agents, servants, employees, and attorneys, and all persons acting in concert with them be restrained from housing Plaintiff in TDCJ prison housing lacking in air conditions and temperature regulation, and/or in temperatures not exceeding 78 degrees.

2. If Plaintiff is currently housed without air conditioning, Defendants, their officers, agents, servants, employees, and attorneys, and all persons acting in concert with them are required to immediately move Plaintiff immediately to TDCJ housing with air conditions

and temperature regulations, and/or temperatures exceeding [SIC] 78 degrees.

Plaintiff's proposed order does not seek to preserve the status quo—it seeks to change it by moving him to different housing. As TDCJ will demonstrate when given an opportunity to gather and present its rebuttal evidence for the Court, Plaintiff is not currently housed in the air-conditioned housing because he does not meet the risk assessment standard under TDCJ's heat mitigation plan. Again, as TDCJ will demonstrate when given adequate time to muster its evidence, this plan provides the greatest remedial measures to those with the greatest medical or physiological needs—which does not include Plaintiff. Prohibiting TDCJ from appropriately housing Plaintiff, where he has been housed for years in congruence with his medical issues, is inherently forcing them to deviate from the status quo. The relief Plaintiff seeks does maintain anything, rather it commands an unprecedented action irreversibly altering the status quo.

**B.    Plaintiff's "everything-but-the-kitchen-sink" evidentiary submission fails to meet his evidentiary burden to demonstrate substantial likelihood of success on the merits.**

Plaintiff fails entirely to meet their burden for a TRO. Simply providing the court with numerous records (ECF 10), purportedly in support of their TRO, does not satisfy the burden of persuasion on all four requirements. The burden is not on the Court to sift through records, therefore carrying the burden of Plaintiff. *Cf. R.P. v. Alamo Heights Indep. Sch. Dist.*, 703 F.3d 801, 811 (5th Cir. 2012) ("It is not the Court's duty to sift through the record in search of evidence to support a party's opposition to summary judgment.") (internal quotes omitted). While Defendants lack sufficient time to muster their rebuttal evidence prior to the Court's hearing on the TRO, even in the absence of rebuttal evidence, Plaintiff has not carried his burden.

**C.    The benefits of issuing the status-quo-changing TRO neither outweighs the harm to Defendants nor serves the public interest because it micromanages the state's prison system in contravention of public policy.**

The threatened injury neither outweighs the damage that the TRO might cause the defendant; nor does granting the TRO will serve the public interest. *See Nianga*, 435 F. Supp.3d at 742–43. Even

if Plaintiff had met his burden to demonstrate substantial likelihood of success on the merits—which he has not—and even if the status-quo-changing relief he seeks were proper for a TRO—which it is not—the balance of the equities still does not favor issuance. Plaintiff's request contravenes a well-established line of precedent that disfavors preliminary injunctions in cases involving prisoners. "[J]udicial restraint is especially called for in dealing with the complex and intractable problems of prison administration." *Wagner v. Campuzano*, No. 1:12-CV-205-C, 2013 WL 12147778, at *1 (N.D. Tex. May 31, 2013). "'[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury.'" *Valentine v. Collier*, 956 F.3d 797, 803 (5th Cir. 2020) (quoting *Maryland v. King*, 133 S. Ct. 1, 3 (2012) (Roberts, C.J., in chambers) (itself quoting *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers))). Nor is this merely a matter of judicial restraint. The Prison Litigation Reform Act (PLRA) instructs that "[p]rospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs." 18 U.S.C. § 3626(a)(1)(A). The Texas Legislature assigned the prerogatives of prison policy to TDCJ. See, e.g., Chapter 501, Tex. Gov't Code.

The Supreme Court has repeatedly warned that "it is 'difficult to imagine an activity in which a State has a stronger interest, or one that is more intricately bound up with state laws, regulations, and procedures, than the administration of its prisons.'" *Woodford v. Ngo*, 548 U.S. 81, 94 (2006) (*quoting Preiser v. Rodriguez*, 411 U.S. 475, 491–92 (1973)); *see also Missouri v. Jenkins*, 495 U.S. 33, 51 (1990). "Except in extreme circumstances, federal courts are reluctant to interfere with matters of prison administration and management of inmates." *Mills v. LeBlanc*, No. CV 21-418, 2021 WL 3572148, at *10 (E.D. La. July 15, 2021), adopted, 2021 WL 3566434 (E.D. La. Aug. 11, 2021) (*citing Young v. Wainwright*, 449 F.2d 338, 339 (5th Cir. 1971)). Additionally, "[p]rison administrators are accorded wide-ranging deference in the adoption and execution of policies that in their judgment are needed to

preserve internal order and discipline in the daily operations of the prison system." *Renfro v. Baker*, No. CV H-21-2172, 2021 WL 4861802, at *2 (S.D. Tex. Oct. 13, 2021) (Werlein, J.) (citing *Bell v. Wolfish*, 441 U.S. 520, 546- 47 (1979)).

Here, Plaintiff asks this Court to become deeply intermeshed in prison management by dictating his prison housing—without giving Defendants an adequate opportunity to respond to explain why Plaintiff's current housing is appropriate. Plaintiff asks TDCJ to immediately assign him to air-conditioned housing, when there is limited air-conditioned housing space available and a number of inmates that have higher risks of heat-related illnesses. By taking up a finite resource, Plaintiff's gain would come at another inmate's loss—another inmate who may be at greater risk of heat-related injury. The inherent challenge posed by zero-sum resource management in a demanding environment is why the heat score policy exists in the first place and why "prison officials are entitled to substantial deference in the exercise of their professional judgment." *Cf. DeMarco v. Bynum*, 50 F.4th 479, 482 (5th Cir. 2022). Interference with the McConnell Unit's operations and placing Tiede in an air-conditioned cell ahead of other inmates with higher risk categories is not in the public's interest. *Valentine*, 956 F.3d at 806 (the court's "level of micromanagement … does not reflect the principles of comity commanded by the PLRA").

Additionally, many of the Defendants named by the Plaintiff cannot grant him the relief he seeks. The Office of the Attorney General, nor Angela Colmenero or Kenneth Paxon have the authority to grant Plaintiff the relief he seeks as they are not employees of TDCJ thus they have zero authority to enact changes to inmate's housing assignment. TDCJ and Bryan Collier should not be forced to deviate from a heat mitigation plan already in place in the form of a temporary restraining order. Such an order is inappropriate as it has been established that granting such relief goes beyond maintaining status quo. Plaintiff's relief is better sought through a Motion for Preliminary Injunction,

if Defendants are provided sufficient notice and enough time to adequately respond.[1]

### III.   CONCLUSION

Defendant prays that this court find that Plaintiff failed to meet his burden in issuing a Temporary Restraining Order and deny Plaintiff's Motion.

    Respectfully submitted.

**ANGELA COLMENERO**
Provisional Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**GRANT DORFMAN**
Deputy First Assistant Attorney General

**JAMES LLOYD**
Acting Deputy Attorney General for Civil Litigation

**SHANNA E. MOLINARE**
Chief, Law Enforcement Defense Division

*/s/ Abigail K. Carter*
**ABIGAIL K. CARTER**
Assistant Attorney General
Attorney-in-Charge
State Bar No. 24126376
Abigail.Carter@oag.texas.gov

**OFFICE OF THE ATTORNEY GENERAL**
P. O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Office (512) 463-2080/Fax (512) 370-9814

**COUNSEL FOR DEFENDANTS**

---

[1] And, of course, no defendant can simply release Plaintiff from prison—as a writ of habeas corpus is the "sole federal remedy" to obtain immediate or speedier release from imprisonment. *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973).

## NOTICE OF ELECTRONIC FILING

I, **ABIGAIL K. CARTER**, Assistant Attorney General of Texas, do hereby certify that I have electronically submitted for filing a true copy of the above Defendant's Response to Plaintiff's Motion for Temporary Restraining Order in accordance with the Electronic Case Files System of the Western District of Texas, Austin Division, on September 1, 2023.

/s/ Abigail K. Carter
**ABIGAIL K. CARTER**
Assistant Attorney General

## CERTIFICATE OF SERVICE

I, **ABIGAIL K. CARTER**, Assistant Attorney General of Texas, certify that a true copy of the above Defendant's Response to Plaintiff's Motion for Temporary Restraining Order has been served by via email to all counsel of record through this Court's electronic filing system.

/s/ Abigail K. Carter
**ABIGAIL K. CARTER**
Assistant Attorney General