IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| BERNHARDT TIEDE, II, §<br>    *Plaintiff,* §<br> §<br>v.   § **CIVIL ACTION NO. 1:23-CV-01004**<br> §<br>BRYAN COLLIER, ET AL., §<br>    *Defendants.* § | |

**DEFENDANTS TEXAS DEPARTMENT OF CRIMINAL JUSTICE AND BRYAN COLLIER'S MOTION TO DISMISS PURSUANT TO FEDERAL RULES 12(B)(1) AND 12(B)(6)**

Defendants the Texas Department of Criminal Justice ("TDCJ") and TDCJ Executive Director Bryan Collier file this Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) in response to Plaintiff's Original Complaint, the live pleading (ECF No. 1). Defendants offer the following:

### STATEMENT OF CASE

Plaintiff Bernhardt Tiede brings this suit against TDCJ and Bryan Collier for alleged violations of the Americans with Disabilities Act ("ADA"), the Rehabilitation Act ("RA"), and the Eighth Amendment's proscription of unconstitutional conditions of confinement, as well as various other claims under Section 1983. Plaintiff alleges he suffers chronic health issues, including diabetes and hypertension. ECF 1 at 2. He seeks injunctive and declaratory relief; he does not seek damages. *Id.* at 3, 29.

### UNDISPUTED FACTS

1. Plaintiff is Bernhardt Tiede, an inmate in custody of the Texas Department of Criminal Justice ("TDCJ").

2. Plaintiff is currently housed at the Estelle Unit in Huntsville, Texas.

3. Plaintiff was originally sentenced to life for the murder of Marjorie Nugent. 123rd Judicial District Court of Panola County, Texas, (Tr.Ct. No. 1997-C-103).

4. Plaintiff received a resentencing trial in April 2016 in which he was resentenced to 99 years.

5. The Texas Sixth Court of Appeals affirmed the 99-year sentence in 2017. No. 06-16-00083-CR (Tex. App. Aug. 9, 2017).

6. Plaintiff returned to TDCJ custody in 2016.

7. Plaintiff filed this action on August 24, 2023.

8. Currently, Plaintiff has a 'heat sensitivity score' of 2.

## ISSUES TO BE RULED ON BY THE COURT

I. Whether dismissal is proper under Rule 12(b)(1)

   a. Whether Plaintiff's claims are barred by sovereign immunity.

   b. Whether Plaintiff's request for injunctive relief is moot.

II. Whether dismissal is proper under Rule 12(b)(6)

   a. Whether Defendants are "persons" under 42 U.S.C. §1983.

   b. Whether Plaintiff states a claim under the ADA/RA.

   c. Whether Plaintiff's request for habeas relief is improper.

   d. Whether *Heck v. Humphrey* bars Plaintiff's requested relief.

## EVIDENCE SUPPORTING MOTION TO DISMISS PURSUANT TO RULE 12(B)(1)

EXHIBIT A:   TDCJ Administrative Directive 10.64 "TDCJ's Heat Policy"

TDCJ "work[s] closely with health staff" to "identify offenders at risk from excessive or extreme temperatures" and "prevent injuries related to excessive or extreme temperatures in the TDCJ." Ex. A at 1. To this end, TDCJ maintains a "list of offenders with restrictions related to physical activities, transportation, and work that have been entered in the Restrictions Module of the electronic health record (EHR) and transmitted to the TDCJ mainframe [Health Summary Inquiry or] HSIN

screen." Ex. A at 2, 6. This list is called the "Heat Restriction List." Ex. A at 2. TDCJ relies on health care staff to assign appropriate restrictions and enter them in the EHR. Ex. A at 6.

TDCJ policy "recognizes that some offenders are potentially at a heightened risk of heat-related illnesses because of their age, health conditions, or medications." Ex. A at 8-9. "These offenders are identified through an automated heat sensitivity score that uses information from the offender's EHR." Id. "Heat sensitivity scores are updated daily with changes to the EHR." Ex. A at 9. "Once an offender is identified as at-risk, health care staff notify the unit countroom staff and update the offender's HSIN accordingly," and "[c]ountroom staff [] then make any necessary changes to the offender's housing or work assignment and notify correctional staff if an adjustment is necessary." Ex. A at 6. "Offenders who have a heat sensitivity score receive priority placement in a housing area that is air-conditioned." Ex. A at 9.

But, of course, air-conditioned housing is not the only way TDCJ protects inmates from extreme heat related harm. "Once an offender is identified as at-risk, health care staff shall notify unit courtroom staff . . . [who] shall then make any necessary changes to the offender's housing or work assignment and notify correctional staff if an adjustment is necessary." Ex. A at 6. (emphasis added). TDCJ policy requires all offenders to have access to respite areas during periods of excessive heat, even if they are not feeling ill at the time of the request. Ex. A at 6. "Any area with air conditioning may be used for respite, as determined by the warden." Ex. A at 7. When the heat index is above 90°F, units must take additional measures, including providing additional water in housing areas, cooling towels, shorts and t-shirts in dayrooms and recreational areas, and fans. Ex. A at 8-9. Training regarding heat-related resources and responsibilities is required for both prison staff and offenders. Ex. A at 12-13.

EXHIBIT B:   Bernhardt Tiede's Heat Sensitivity Score

Plaintiff received a heat sensitivity score entitling him to priority placement in a housing area

that is air-conditioned. Ex. B at 2. Since then, Plaintiff continues to live in air-conditioned housing, per his heat sensitivity score.

## ARGUMENTS & AUTHORITIES

Plaintiff admits that he wanted his counsel to begin efforts to secure his early release, whether through post-conviction work, compassionate release, early medical release, or other "equitable grounds." ECF 1 at 8. Plaintiff's counsel admits she "realized that Mr. Tiede needed to receive credit for the time he was out on bond in 2014, so a Motion for Nunc Pro Tunc was filed on July 19, 2023, in the state district court retaining plenary power to correct his sentence, requesting a hearing for no later than July 23, 2023." *Id.* at 10. Plaintiff's counsel admits to filing Amended Nunc Pro Tunc motion, which was filed in Panola County on August 10, 2023, requesting a hearing by August 21, 2023. *Id.* at 11. Plaintiff filed the present action in this Court on August 24, 2023. ECF 1. It is clear from Plaintiff's own pleadings that this action is brought in federal court under §1983 to attempt to obtain release from his incarceration.

## MOTION TO DISMISS PURSUANT TO RULE 12(B)(1)

A party may move for dismissal of a cause of action when a court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *CleanCOALition v. TXU* Power, 536 F.3d 469, 473 (5th Cir. 2008) (*quoting Home Builders Ass'n of Mississippi, Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998)). When a motion to dismiss under Rule 12(b)(1) is filed, "the party asserting jurisdiction bears the burden of proof …" *Morrison v. Livingston*, 739 F.3d 740, 745 (5th Cir. 2014). Unlike Federal Rule of Civil Procedure 12(b)(6), under Federal Rule of Civil Procedure 12(b)(1), in a motion to dismiss due to lack of subject-matter jurisdiction, a Court may consider extrinsic materials without treating the motion as one for summary judgment. *See* Fed. R. Civ. P. 12(d).

"A 'factual attack' . . . challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980) (citing *Mortensen v. First Federal Savings & Loan Ass'n*, 549 F.2d 884, 891–92 (3d Cir. 1977)). A "'factual attack' under Rule 12(b)(1) may occur at any stage of the proceedings, and plaintiff bears the burden of proof that jurisdiction does in fact exist." *Id.* In a factual attack, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Williamson v. Tucker*, 645 F.2d 404, 412–13 (5th Cir. 1981).

Having said that, "there are limits to a district court's ability to resolve fact disputes on a 12(b)(1) motion." *Pickett v. Texas Tech Univ. Health Sci. Ctr.*, 37 F.4th 1013, __ (5th Cir. 2022). "[W]here issues of fact are central both to subject matter jurisdiction and the claim on the merits, . . . the trial court must assume jurisdiction and proceed to the merits." *Montez v. Dep't of the Navy*, 392 F.3d 147, 150 (5th Cir. 2004). "[T]he question whether the trial court [can] resolve[] factual disputes . . . depends on whether the subject-matter jurisdiction and merits questions are coterminous." *Pickett*, 37 F.4th at 1019. Here, the subject matter jurisdiction and the merits question are one in the same. Plaintiff ultimately sought injunctive relief that has already been granted to him.

**I.  Sovereign Immunity bars Plaintiff's claims against Defendants in their official capacities.**

Plaintiff brings claims against Defendants under §1983 for violations of the Fifth, Sixth, Eighth, and Fourteenth Amendment. *See* ECF 1 *generally*. While 42 U.S.C. § 1983 does create a private cause of action for vindication of federal constitutional rights, *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11–12 (2014), it is well-established that §1983 does not contain a valid abrogation of sovereign immunity by Congress, *Quern v. Jordan*, 440 U.S. 332, 345 (1979). Nor has the State of Texas voluntarily waived sovereign immunity for claims brought under §1983, *Texas A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 839 (Tex. 2007). As such, to the extent Plaintiff seeks damages against Defendants in

their official capacities, such claims are barred.

To the extent Plaintiff seeks equitable relief, sovereign immunity still bars his requested relief. Under the *Ex parte Young* exception, sovereign immunity may be overcome when the suit "seeks prospective, injunctive relief from a state actor, in [his] official capacity, based on an alleged ongoing violation of the federal constitution." *K.P.*, 729 F.3d at 439. But, as discussed below in the context of mootness, any violation of federal law stemming from Plaintiff not living in air-conditioned housing is not "ongoing." "Remedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law." *Green v. Mansour*, 474 U.S. 64, 68 (1985). "But compensatory or deterrence interests are insufficient to overcome the dictates of the Eleventh Amendment," *id.* at 68, which prohibits suing States in "federal court unless they consent to it in unequivocal terms or unless Congress, pursuant to a valid exercise of power, unequivocally expresses its intent to abrogate the immunity," *id.* at 69. "Because there is no continuing violation of federal law to enjoin in this case, an injunction is not available." *Id.* at 71. "Declaratory relief is similarly barred under such circumstances . . . because such relief could relate solely to past violations of federal law." *Id.* at 67, 73. Plaintiff's official-capacity Section 1983 claims are barred.

## II. Plaintiff's request for injunctive relief is moot

"The standing question [] bears close affinity to [the] question[] . . . of mootness—whether the occasion for judicial intervention persists." *Warth v. Seldin*, 422 U.S. 490, 499 n.10 (1975). Mootness can be described as "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997). "The mootness doctrine requires that the controversy posed by the plaintiff's complaint be 'live' not only at the time the plaintiff files the complaint but also throughout the litigation process." *Rocky v. King*, 900 F.2d 864, 866 (5th Cir. 1990). "An action is moot where (1) the controversy is no longer live or (2) the parties lack a personal stake in its outcome." *Id.* at 867.

"It is well-settled that mootness is a threshold jurisdictional inquiry." *La. Env't Action Network v. U.S. E.P.A.*, 382 F.3d 575, 580 (5th Cir. 2004). "In general, a claim becomes moot 'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *La. Env't*, 382 F.3d at 581 (*quoting Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (per curiam)). Therefore, "[m]ootness applies when intervening circumstances render the court no longer capable of providing meaningful relief to the plaintiff." *Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 425 (5th Cir. 2013).

An otherwise moot claim cannot persist based on the plaintiff's request for attorneys' fees and costs. See 42 U.S.C. § 1988(b); *Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 773 (2000) ("'[A]n interest that is merely a 'byproduct' of the suit itself cannot give rise to a cognizable injury in fact for Article III standing purposes."); *Steel Co.*, 523 U.S. at 107 ("[A] plaintiff cannot achieve standing to litigate a substantive issue by bringing suit for the cost of bringing suit"); *Diamond v. Charles*, 476 U.S. 54, 69–71 (1986) (assessment of attorney's fees against a party does not confer standing to pursue the action on appeal).

"Article III's 'case or controversy' requirement permits federal courts to adjudicate only live disputes—a party must retain a 'legally cognizable interest in the outcome' of an issue, or its resolution is moot." *Hinkley v. Envoy Air, Inc.*, 968 F.3d 544, 548 (5th Cir. 2020). "'There must be a case or controversy through all stages of a case'—not just when a suit comes *into* existence but *throughout* its existence." *Yarls v. Bunton*, 905 F.3d 905, 909 (5th Cir. 2018) (quoting *K.P. v. LeBlanc*, 729 F.3d 427, 438 (5th Cir. 2013)) (emphasis in original). "[A]ny set of circumstances that eliminates actual controversy after the commencement of a lawsuit renders that action moot." *DeOtte v. Nevada*, 20 F.4th 1055, 1064 (5th Cir. 2021) (quoting *Center for Indust. Freedom v. Carmouche*, 449 F.3d 655, 651 (5th Cir. 2006)). Here, Plaintiff's request to obtain injunctive relief to be in temperature-controlled housing is moot because he currently has a heat score, and he is assigned to air-conditioned housing.

This Court granted (and extended) Plaintiff's ex parte motion for temporary restraining order; and it remained in effect until October 28, 2023. ECF 27. At the filing of this motion, temperatures in Huntsville, Texas have significantly decreased—the projected high temperature today is 45 degrees fahrenheit. Plaintiff is no longer subject to alleged extreme heat temperatures. Even so, Plaintiff currently has a 'heat sensitivity score,' and is housed in air-conditioning for the time governed by TDCJ Administrative Directive 10.64. ECF 15-5. When the injunctive relief sought has already been granted by the party sought to be enjoined, claims seeking that injunctive relief become moot. *New York State Rifle & Pistol Assoc., Inc. v. City of New York, New York*, 140 S. Ct. 1525, 1526 (2020); *cf. Hernon v. Upton*, 985 F.3d 445, 446 (5th Cir. 2021) (holding that a habeas petition's release from prison rendered moot her habeas petition because there was no longer a live case or controversy).

Admittedly, in general, a defendant's voluntary conduct moots a case only if "it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Sossamon v. Texas*, 560 F.3d 316, 325 (5th Cir. 2009), *affirmed*, 563 U.S. 277 (2011). But governmental entities and officials bear a "'lighter burden' . . . in proving that the challenged conduct will not recur once the suit is dismissed as moot." *Stauffer v. Gearhart*, 741 F.3d 574, 582 (5th Cir. 2014) (quoting *Sossamon*, 560 F.3d at 325). State actors enjoy a presumption that they act in good faith. *See, e.g., Amawi v. Paxton*, 956 F.3d 816, 821 (5th Cir. 2020) (citing *Sossamon*, 560 F.3d at 325); *Fantasy Ranch Inc. v. City of Arlington*, 459 F.3d 546, 564 (5th Cir. 2006)); *see also New York State Rifle & Pistol*, 140 S. Ct. at 1526. Applying that presumption here, and in light of the evidence before the Court, Defendants have met their burden to prove that the challenged conduct will not recur post-dismissal.

Nothing in the pleadings, nor the evidence, supports the inference that, upon dismissal, Defendants will revoke Plaintiff's heat sensitivity score. Heat scores are generated through an automated process that uses information from the inmate's electronic health record. Ex. A at 8-9. Plaintiff now has a heat sensitivity score, which is higher than the score he had earlier this summer.

His heat sensitivity score demonstrates medical professionals are constantly assessing his diagnoses, treatments, and medical needs and making adjustments or changes when necessary. His current heat score ensures that he is assigned to an air-conditioned living area. The fact that Plaintiff was assigned to air-conditioned housing on two different occasions this summer provides further evidence that Court intervention and a permanent injunction is not necessary. Plaintiff's request for a permanent injunction compelling Defendants to assign him to air-conditioned housing has been rendered moot by his receipt of a heat score entitling him to that housing. And without a case-or-controversy, the Court lacks subject-matter jurisdiction to grant non-monetary relief.

## MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)

A party is entitled to dismissal under Federal Rule of Civil Procedure 12(b)(6) when an opposing party fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). When reviewing the sufficiency of a complaint, the main objective is "to determine whether the plaintiff has stated a legally cognizable claim that is plausible." *Lone Star Fund V (US), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In order for a claim to be plausible on its face, the plaintiff must sufficiently plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *United States v. Bollinger Shipyards, Inc.*, 775 F.3d 255, 260 (5th Cir. 2014). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While the Court must accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff, plaintiff's legal conclusions need not be accepted as true. *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient. *Id.*

### I. TDCJ and Defendants in their official capacities are not "persons" under §1983.

Plaintiff brings several claims against Defendants under §1983, including Fifth, Sixth, Eighth,

and Fourteenth Amendment violations. Section 1983 renders certain "persons" liable for deprivations of constitutional rights. 42 U.S.C. § 1983. However, "neither a State nor its officials acting in their official capacities are 'persons' under [Section] 1983." *Will v. Mich. Dep't. of State Police*, 491 U.S. 58, 71, 71 n.10 (1989); *see also Hafer v. Melo*, 502 U.S. 21, 25–27 (1991); *Bates v. Univ. of Tex. Med. Branch*, 425 F. Supp.2d 826, 838–39 (S.D. Tex. 2003). Plaintiff sues TDCJ for claims under §1983, but as a state agency, TDCJ is not a "person" who can be held liable for deprivations of constitutional rights. Plaintiff also sues Bryan Collier in his official capacity. ECF 1 at 2, 22. As shown, state officials, acting in their official capacity, such as Executive Director Collier, are not "persons" under §1983. Accordingly, Plaintiff's brought under §1983 against TDCJ and Executive Director Collier should be dismissed.

## II. Plaintiff fails to state a claim under the Americans with Disabilities Act or Rehabilitation Act.

Plaintiff claims that he is a "medically vulnerable" inmate "to such a degree as to invoke these protections" and attempts to improperly raise an Americans with Disabilities Act (ADA) and Rehabilitation Act (RA) claim against all Defendants. ECF 1 at 24, 25. Plaintiff claims Defendants know that he suffers from heat-sensitive disabilities, and he admits he is prescribed medications to treat his disabilities. But he argues that, despite the treatment of his disabilities, Defendants intentionally discriminate against Plaintiff, in violation of the ADA and RA. *Id.* at 25.

Under the ADA, "No qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any public entity." 42 U.S.C. § 12132. A "qualified individual" is "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices . . . meets the essential eligibility requirements for . . . the participation in programs or activities provided by the public entity." 42 U.S.C. § 12131(2); 28 C.F.R. § 35.104. Similarly, the RA provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely

by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a); *see also Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 291 (5th Cir. 2005).

To demonstrate a violation of Title II of the ADA, Plaintiff must show "(1) that he has a qualifying disability; (2) that he is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such discrimination is by reason of his disability." *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011). The same standard applies to claim under the RA, except that the discrimination must be *solely* by reason of disability-- a higher causation standard. *Duncan v. Univ. of Tex. Health Sci. Ctr. at Houston*, 469 F. App'x 364, 368 (5th Cir. 2012) (unpublished); *see also Soledad v. U.S. Dept. of Treasury*, 304 F.3d 500, 505 (5th Cir. 2002).

A "disability" means "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).

Here, Plaintiff has not shown he was denied temperature-controlled (air-conditioned) housing because of his disability. To the contrary, the only times that Plaintiff did not have air-conditioned housing during the summer months are the times that his medical needs, conditions, and medications didn't result in a heat score. When changes in his conditions or medications resulted in a heat score, he was housed to air-conditioned housing. Plaintiff alleges no facts that support his claim that Defendants denied him access to a benefit, program, or service because of a disability. To the contrary, Defendants made necessary adjustments to Plaintiff's heat scores in accordance with his medical

conditions, medical needs, and medications. Defendants house Plaintiff in accordance with his medical needs, thereby ensuring he has access to the agency's benefits, programs, and services.

Even if Plaintiff believes Defendants erred by not assigning him a heat sensitivity score sooner, "[i]nadequate medical care . . . does not provide a basis for an ADA claim unless medical services are withheld by reason of a disability." *Lee v. Valdez*, Civil Action No. 3:07-CV-1298-D, 2009 WL 1406244, at *13 (N.D. Tex. 2009) (Fitzwater, C.J.). To prevail, Plaintiff must show the challenged actions were taken *because of* a disability. *See Delano–Pyle v. Victoria Cty.*, 302 F.3d 567, 574 (5th Cir. 2002). Negligence is not sufficient to support an intentional discrimination claim under the ADA or RA. *Back v. Tex. Dep't of Crim. Justice Inst. Div.*, 684 F. App'x 356, 358–59 (5th Cir. 2017) (holding that the ADA and RA claims were properly dismissed at summary judgment because the evidence in the light most favorable to the plaintiff showed only the defendant's negligence, not intentional discrimination); *see also Hale*, 642 F.3d at 499.

To the extent Plaintiff intends to proceed under a failure-to-accommodate theory, he still fails to state a claim. "[A] public entity's failure reasonably to accommodate the known limitations of persons with disabilities can also constitute disability discrimination under Title II." *Windham v. Harris Cty., Tex.*, 875 F.3d 229, 235 (5th Cir. 2017). "A critical component of a Title II claim for failure to accommodate, however, is proof that the disability and its consequential limitations were known by the entity providing public services." *Id.* at 236 (internal quotations omitted). "Mere knowledge of the disability is not enough; the service provider must also have understood the limitations the plaintiff experienced . . . *as a result* of that disability." *Id.* (internal quotations omitted). "[T]he burden falls on the plaintiff to specifically identify any resulting limitations." *Id.* Moreover, the party requesting the accommodation "does not have a right to his accommodation of preference." *Campbell v. Lamar Institute of Tech.*, 842 F.3d 375, 379–80 (5th Cir. 2016) (ADA and RA opinion). If the program provider is already providing a reasonable accommodation for the disability, they are not obliged to provide

more on request. *See id.* at 380–81. Put more directly: "An institution is not duty bound to acquiesce in and implement every accommodation a disabled [inmate] demands." *See id.*

Here, Plaintiff himself admits he did not file a grievance regarding access to temperature-controlled housing. ECF 2 at 5. He merely asserts TDCJ does not have a grievance procedure that moves as quickly as he believes his health required. *Id.* Thus, neither TDCJ nor Collier were aware of his alleged disability, and they were certainly not aware of the limitations he claims to experience because of the disability. Defendants' actions do not violate the ADA or RA because their actions with respect to Plaintiff's housing assignment are guided by the medical decisions of Plaintiff's treating physicians. *See Campbell*, 842 F.3d at 381.

### III. Plaintiff's request for habeas relief in the form of release is improperly brought as a §1983 action.

A prisoner may use a § 1983 suit to challenge conditions of his confinement. *E.g., Nelson v. Campbell*, 541 U.S. 637, 643 (2004). But a prisoner may not use § 1983 to challenge "the fact or validity of the sentence itself" because such challenges "fall within the core of federal habeas corpus." *E.g.*, *id.* at 643–44; *see also Preiser*, 411 U.S. 475, 499 n.14 ("If a prisoner seeks to attack both the conditions of his confinement and the fact or length of that confinement, his latter claim, under our decision today, is cognizable only in federal habeas corpus."); *Heck*, 512 U.S. at 481 (*Preiser* "held that habeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release, even though such a claim may come within the literal terms of § 1983."). In short, if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence," the claim is not cognizable under § 1983. *Heck*, 512 U.S. at 487. *Buntion v. Lumpkin*, 31 F.4th 952, 966 (5th Cir. 2022). Plaintiff brings this action against OAG and Paxton

"[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." *Preiser v. Rodriguez*, 411

U.S. 475, 500 (1973). This is true even when the plaintiff's claims are brought under 42 U.S.C. § 1983, alleging an unconstitutional action. *Id.* This is a matter of "considerable practical importance" because when "habeas corpus is the exclusive federal remedy . . . a plaintiff cannot seek the intervention of a federal court until he has first sought and been denied relief in the state courts, if a state remedy is available and adequate." *Id.* at 477.

Plaintiff improperly seeks habeas relief through a §1983 suit. Section 2254—a writ of habeas corpus-- provides the remedy in federal court that allows a district court to evaluate whether an individual's detention pursuant to a state court judgment violates the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254. Such a writ should not be granted unless it appears that (A) the applicant has exhausted the remedies available in the courts of the State; or (B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant. *Id.*

Plaintiff has not exhausted the remedies available in state court. There is not an absence of available State corrective process, and Plaintiff has not identified any circumstances which render such process ineffective. While Plaintiff attempts to disguise his habeas claims under the ADA/RA and §1983, he asks the court to release him from TDCJ custody; and this Court lacks jurisdiction to grant that relief. ECF 1 at 8, 10, 29.

**IV. Plaintiff's habeas claims for relief are barred by *Heck v. Humphrey*.**

In *Heck v. Humphrey*, the Supreme Court held a plaintiff seeking to recover damages under §1983 for an allegedly "unconstitutional conviction, imprisonment, or other harm caused by actions whose unlawfulness would render a conviction or sentence invalid . . . must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determinations, or called into question by a federal court's issuance of a writ of habeas corpus [under] 28 U.S.C. § 2254." 512 U.S. 477, 486–87 (1994). "A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is

not cognizable under § 1983." *Id.* at 487 (emphasis in original). The Court reasoned §1983 damage claims that call into question the lawfulness of conviction or confinement are barred, lest those claims "permit a collateral attack on the conviction through the vehicle of a civil suit." *Id.* at 484. A dismissal of a claim for injunctive relief may also be made pursuant to *Heck* and may be made without prejudice. *See Clarke v. Stalder,* 154 F.3d 186, 190–191 (5th Cir. 1998) (en banc) (holding that a claim for prospective injunctive relief that would imply the invalidity of a prisoner's conviction may be dismissed without prejudice subject to the rule of *Heck v. Humphrey).* Here, it is clear Plaintiff's request for release from custody is a collateral attack on his underlying conviction and subsequent resentencing.

In this case, Plaintiff claims that he has suffered an enhanced or more punitive sentence because of the conditions he has endured while being incarcerated in TDCJ. But when an inmate alleged he was being incarcerated beyond his original 10-year sentence, the Fifth Circuit held his suit attacked the validity of his sentence, and it was, therefore, barred by Heck. *McGrew v. Texas Bd. of Pardons & Paroles*, 47 F.3d 158, 160, 161 (5th Cir. 1995). Like that inmate, Plaintiff's claims are also barred by *Heck.*

## CONCLUSION

Defendants prays that this Court dismiss Plaintiff's claims against them for injunctive relief because: (1) his claims are moot; (2) Defendants are entitled to sovereign immunity; and (3) Plaintiff fails to state claims for which relief may be granted. Further, Plaintiff's habeas claims are improper under §1983; and they are barred by *Heck.*

    Respectfully submitted.

    **KEN PAXTON**
    Attorney General of Texas

    **BRENT WEBSTER**
    First Assistant Attorney General

**GRANT DORFMAN**
Deputy First Assistant Attorney General

**JAMES LLOYD**
Deputy Attorney General for Civil Litigation

**SHANNA E. MOLINARE**
Chief, Law Enforcement Defense Division

/s/ Abigail K. Carter
**ABIGAIL K. CARTER**
Assistant Attorney General
Attorney-in-Charge
State Bar No. 24126376
Abigail.Carter@oag.texas.gov

P. O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Office (512) 463-2080/Fax (512) 370-9814

**COUNSEL FOR DEFENDANTS**

## NOTICE OF ELECTRONIC FILING

I, **ABIGAIL K. CARTER**, Assistant Attorney General of Texas, do hereby certify that I have electronically submitted for filing a true copy of the above Defendants Texas Department of Criminal Justice and Bryan Collier's Motion to Dismiss in accordance with the Electronic Case Files System of the Western District of Texas, Austin Division, on October 30, 2023.

/s/ Abigail K. Carter
**ABIGAIL K. CARTER**
Assistant Attorney General

## CERTIFICATE OF SERVICE

I, **ABIGAIL K. CARTER**, Assistant Attorney General of Texas, certify that a true copy of the above Defendants Texas Department of Criminal Justice and Bryan Collier's Motion to Dismiss has been served by via email to all counsel of record through this Court's electronic filing system.

/s/ Abigail K. Carter
**ABIGAIL K. CARTER**
Assistant Attorney General