**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| BERNHARDT TIEDE, II, | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | Civil Action No. |
| | § | 1:23-CV-1004-RP |
| BRIAN COLLIER, et al. | § | |
| | § | |
| *Defendants.* | § | |

<u>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS TEXAS**</u>
<u>**DEPARTMENT OF CRIMINAL JUSTICE AND BRYAN COLLIER'S MOTION TO**</u>
<u>**DISMISS**</u>

# Exhibit 7

# Excerpts from Hearing Testimony of Fmr. TDCJ Health Services Liaison Phyllis McWhorter, M.D.

1                UNITED STATES DISTRICT COURT
                 SOUTHERN DISTRICT OF TEXAS
2                     HOUSTON DIVISION

3
    KEITH COLE, ET AL          *    4:14-CV-01698
4                              *
    VS.                        *    10:09 A.M.
5                              *
    BRYAN COLLIER, ET AL       *    JUNE 23, 2017
6
                       INJUNCTION HEARING
7          BEFORE THE HONORABLE KEITH P. ELLISON
                      Day 5 of 9 Days
8
    **APPEARANCES:**
9
    **FOR THE PLAINTIFFS:**
10  Mr. Jeffrey S. Edwards
    Mr. Michael C. Singley
11  Mr. Scott Charles Medlock
    Mr. David James
12  The Edwards Law Firm
    1101 East 11th Street
13  Austin, Texas 78702
    (512) 623-7727
14
    **FOR THE DEFENDANTS:**
15  Mr. Craig Michael Warner
    Ms. Leah Jean O'Leary
16  Mr. Matthew J. Greer
    Mr. C. Daniel DiLizia
17  Mr. Daniel Christopher Neuhoff
    Office of the Attorney General
18  P.O. Box 12548
    Austin, Texas 78711
19  (512) 936-2109

20  Court Reporter:
    Laura Wells, RPR, RMR, CRR
21  515 Rusk, Suite 8004
    Houston, Texas 77002
22
    Proceedings recorded by mechanical stenography.
23  Transcript produced by computer-assisted transcription.

24

25

1                              **DAY 5**
                        **(Injunction Hearing)**
2                                                            Page
     June 23, 2017
3
     WITNESSES                                              Page
4
     **ROBERT HERRERA**
5        Recross-Examination By Mr. Edwards                 908

6    **PHYLLIS MCWHORTER**
         Direct Examination By Ms. O'Leary                  930
7        Cross-Examination By Mr. Edwards                   948
         Redirect Examination By Ms. O'Leary                988
8        Recross-Examination By Mr. Edwards                 997
         Redirect Examination By Ms. O'Leary               1003
9
     **CODY GINSEL**
10       Direct Examination By Ms. O'Leary                 1004

11                                                          Page

12   Court Reporter's Certificate....................     1111

13

14

15

16

17

18

19

20

21

22

23

24

25

                         *Laura Wells, CRR, RDR*

<pre>
 1                          EXHIBIT INDEX

 2   PLAINTIFFS' EXHIBITS

 3   EXHIBIT NUMBER              OFFERED    ADMITTED

 4    Plaintiffs' Exhibit         926        927
      Number 129
 5
     DEFENDANTS' EXHIBITS
 6
     EXHIBIT NUMBER              OFFERED    ADMITTED
 7
     Defendants' Exhibit        1046       1046
 8   Number 8

 9   Defendants' Exhibit        1017       1018
     Number 30
10
     Defendants' Exhibit        1044       1044
11   Number 32

12   Defendants' Exhibit         945        946
     Number 34
13
     Defendants' Exhibit        1047       1047
14   Numbers 36A, 36B and
     36C
15
     Defendants' Exhibit         942        942
16   Number 50

17   Defendants' Exhibit         932        932
     Number 90
18
     Defendants' Exhibit        1036       1037
19   Number 136

20   Defendants' Exhibit        1035       1035
     Number 137
21
     Defendants' Exhibit        1095       1095
22   Number 138

23

24

25

                        Laura Wells, CRR, RDR
</pre>

Case 1:23-cv-01004-RP Document 307-7 Filed 11/13/23 Page 5 of 10
Case 4:14-cv-01698-O Document 950 Filed 12/08/17 Page 270 of 208     930
Direct Examination of Phyllis McWhorter

```
                    THE COURT:  Ms. McWhorter, is she in the
       courtroom?
                    MS. O'LEARY:  I'm sorry.  We sent someone to
       go -- she is just outside, Your Honor.
10:35:05            THE COURT:  Okay.  Good morning.  If you could
       make your way up here.  We're going to have you in the
       seat nearest me.
                    THE WITNESS:  Okay.
                    THE COURT:  Before you take your seat, Mr. Rivera
10:35:28   will administer the oath.
               (Witness sworn by the case manager.)
                    THE WITNESS:  Yes.
                    THE COURT:  Please have a seat and try to adjust
       the mic so you can speak directly into it.
10:35:39            MS. O'LEARY:  May I have the defendants' inside
       computer, please.  Thank you.
```

**PHYLLIS MCWHORTER,**

```
       having been first duly sworn, testified as follows:
```

**DIRECT EXAMINATION**

```
10:35:44   BY MS. O'LEARY:
       Q.  Good morning.
       A.  Good morning.
       Q.  Will you please tell the Court your job title.
       A.  I'm a registered nurse.  I'm the manager for the
10:35:52   office of the Mental Health Services Monitoring and -- I'm
```

*Laura Wells, CRR, RDR*

```
              1        THE COURT:  All right.  Let's go.

              2   Q.  (By Mr. Edwards)  All right.  Before we get into this,

              3   ma'am, you understand that the Pack Unit is a geriatric

              4   unit, correct?

11:03:53      5   A.  Yes.

              6   Q.  And that means that it has a higher percentage of

              7   older people?

              8   A.  Yes.

              9   Q.  And I mean -- when I say that, I mean older than 65,

11:03:59     10   right?

             11   A.  Yes.

             12   Q.  And you know that the people at Pack, the inmates at

             13   Pack are going to have significant mobility issues; isn't

             14   that correct?

11:04:07     15   A.  In some cases, yes.

             16   Q.  Okay.  And you know you have to make accommodations

             17   for these people in light of their mobility issues; isn't

             18   that correct?

             19   A.  Yes.

11:04:16     20   Q.  Okay.  Now, with regard to I think what, Judge

             21   Ellison -- I may be repeating myself.  But no one at TDCJ

             22   Health Services, that's your office, has ever looked at

             23   which prison housing areas are air-conditioned; isn't that

             24   correct?

11:04:31     25   A.  Correct.
```

1    Q.    Okay.

2          MR. EDWARDS:  Could you go to -- yeah.

3    Q.    (By Mr. Edwards)  And I just want to -- this bears

4    repeating because it is, frankly, astonishing to me -- but

11:04:41  5    I'll withdraw that.

6          According to TDCJ policy, "Health Services Liaison

7    cannot --" in italics, "-- request reassignment to an

8    air-conditioned or climate-controlled environment"?

9    A.    That is the practice of HSL, yes.

11:04:57  10   Q.    And so the record is clear -- and you have got it a

11   little better than me -- "cannot" is --

12         MR. EDWARDS:  And can you move to that particular

13   portion of the document.

14   Q.    (By Mr. Edwards)  "Cannot" is emphasized in italics,

11:05:08  15   right?

16   A.    Correct.

17   Q.    And you told me you have no idea why that would be

18   TDCJ policy; isn't that correct?

19   A.    It is not the role of that office.  That's the only

11:05:18  20   thing I know to say about it.

21   Q.    Did you tell me on Friday you have no idea why that

22   would be the policy?

23   A.    Correct.

24   Q.    And you are the manager who assesses heat-related

11:05:31  25   illnesses, right?

*Laura Wells, CRR, RDR*

Case 4:14-cv-01698-RP-... Document 30-7 Filed 11/13/23 Page 8 of 10
Case 1:23-cv-01004-RP Document 30-7 Filed 11/13/23 Page 8 of 10   990
Redirect Examination of Phyllis Dewhirster

             1   to it.
             2   **Q.**   (By Ms. O'Leary)  About in the second sentence, where
             3   does it say Mr. Huerta was when this incident occurred?
             4   **A.**   He was -- he chose to participate in the afternoon
12:13:04     5   recreation period.
             6   **Q.**   Okay.
             7   **A.**   He worked out by jogging around the recreation yard
             8   several times and lifting weights.
             9   **Q.**   Okay.  Thank you.
12:13:20    10          MR. EDWARDS:  Now, can I see Plaintiffs' 116.
            11   **Q.**   (By Ms. O'Leary)  Now, Mr. Edwards asked you whether
            12   Health Services Liaison can assign inmates to units solely
            13   based on air-conditioning.  Oh, and what was your answer
            14   to that?
12:13:34    15   **A.**   They cannot.
            16   **Q.**   Right.  Because the policy says that?
            17   **A.**   Yes.
            18   **Q.**   Okay.
            19          MS. O'LEARY:  Will you scroll down to geriatrics
12:13:44    20   row, the geriatric row.
            21   **Q.**   (By Ms. O'Leary)  Okay.  With regard to geriatric
            22   units, is the Pack Unit a geriatric unit?
            23   **A.**   Yes.
            24   **Q.**   Okay.  Is it a Type I, Type II or Type III?
12:13:55    25   **A.**   Type I.

*Laura Wells, CRR, RDR*

1    **A.**   No.

2    **Q.**   Okay.  Do you conduct wellness checks?

3    **A.**   No.

4    **Q.**   Do you have patient interaction at all?

12:21:07   5    **A.**   No.  I have no direct patient contact.

6    **Q.**   And for the record, you don't go -- you don't work at

7    a unit?

8    **A.**   No.

9    **Q.**   All right.  Is it part of your job to know how

12:21:17   10   officers are trained to do wellness checks?

11   **A.**   No.

12   **Q.**   So when Mr. Edwards asked you whether you think

13   officers should be trained to perform wellness checks, do

14   you know if they are trained at all?

12:21:32   15   **A.**   I don't know whether they are.

16            MS. O'LEARY:  I pass the witness.

17            THE COURT:  Okay.  Any recross?

18            MR. EDWARDS:  Briefly, Your Honor.

19                      **RECROSS-EXAMINATION**

12:21:40   20   BY MR. EDWARDS:

21   **Q.**   I think you said "sometimes, yes," with regards to

22   this Duncan facility, air-conditioning can be factored in,

23   right?

24   **A.**   By the providers requesting it, yes, sir.

12:21:58   25   **Q.**   Other than that, you can't, correct?

*Laura Wells, CRR, RDR*

Case 4:23-cv-01004-RB Document 30-7 Filed 11/13/23 Page 10 of 10
Case 4:16-cv-00914-RP Document 298-1 *SEALED* Filed 07/26/17 Page 203 of 208 1111
Direct Examination of Cody Crisler

1    MR. EDWARDS:  No.  As long as we can incorporate

2 her prior testimony as the Court ordered previously.  Oh,

3 we may have some rebuttal testimony from inmates; but that

4 would be at the close of evidence.

03:57:47   5    MR. JAMES:  We just -- we just figured out the

6 names of inmates.  We haven't conferred with opposing

7 counsel, but we'll submit writs.

8    THE COURT:  Okay.  That is fine.  Thank you.

9    (Proceedings concluded at 3:57 p.m. and continued on

10 Day 6.)

11 *Date: July 27, 2017*

12             **COURT REPORTER'S CERTIFICATE**

13    *I, Laura Wells, certify that the foregoing is a*

14 *correct transcript from the record of proceedings in the*

15 *above-entitled matter.*

16

17             */s/ Laura Wells*

18        *Laura Wells, CRR, RMR*

19

20

21

22

23

24

25