# Exhibit 4

## THE LAW OFFICE OF CHAD BARUCH

*An Appellate Practice*
3201 Main Street
Rowlett, Texas 75088
Telephone (972) 412-7192
Facsimile (972) 412-4028
BaruchEsq@aol.com
www.baruchlaw.com

Board Certified in Civil Appellate Law
Texas Board of Legal Specialization

ADMITTED TO PRACTICE IN UNITED STATES SUPREME COURT, U.S. COURTS OF APPEALS FOR THE SECOND, THIRD, FIFTH, SEVENTH, EIGHTH, TENTH, AND ELEVENTH CIRCUITS, TEXAS STATE COURTS, AND U.S. DISTRICT COURTS FOR THE NORTHERN, EASTERN, SOUTHERN, AND WESTERN DISTRICTS OF TEXAS, AND EASTERN AND WESTERN DISTRICTS OF WISCONSIN

February 24, 2015

Hon. Diane DeVasto
Potter Minton
110 North College
Tyler, Texas 75702

    RE:  *State of Texas v. Bernhardt Tiede II*
           Cause Nos. 1997-C-103, 1997-C-103A, 1997-C-104

Dear Judge DeVasto:

    As you know, I represent the Family of Marjorie Nugent. Mr. Tiede's counsel has filed a motion to dismiss the theft case and asking that you "enter a sentence of time-served on [the murder conviction]."

    The District Attorney's Office has not informed the Family of any pending plea arrangement or negotiation on either charge. *See* TEX. CODE CRIM. PROC. art. 56.02(a)(13). The Family nevertheless worries that the State and Tiede may try to obtain dismissal of the theft charge and an agreed sentence of time-served next week.

    We write now to inform you that the Family will invoke its statutory right to provide a Victim Impact Statement and have it considered by the Court before sentencing—including before acceptance of any agreement between the State and Tiede. We also write as amicus curiae to address the speedy trial motion and the possibility of any plea deal for time-served.



1.     **Tiede waived his speedy trial claim.**

Tiede has filed a bizarre, rambling motion to dismiss the theft case on speedy trial grounds. The motion levels outlandish and unsupported accusations against almost everyone involved in Tiede's arrest and conviction. Tiede even accuses the Family's longtime attorney (and, now, respected appellate judge) Jim Campbell of misconduct.

These accusations are both unsupported by the record and irrelevant to the speedy trial claim. The Family will not dignify them with any response. The sole exception is the accusation that the Family ever has suggested a monetary settlement with Mr. Tiede. Let me make the Family's position clear: *the Family opposes any agreement, regardless of the amount of restitution, that does not return Tiede to prison.* Tiede's irrelevant and scurrilous accusations reflect his longtime pattern, continuing even now, of deflecting all responsibility for his actions—even though he never once denies either the murder or the theft.

Texas courts analyze federal constitutional speedy-trial claims by weighing and balancing: (1) length of the delay, (2) reason for the delay, (3) assertion of the right, and (4) prejudice to the accused. *Cantu v. State*, 253 S.W.3d 273, 280 (Tex. Crim. App. 2003) (citation omitted). The delay in this case is due to Tiede's conviction and incarceration. This is a valid reason for delay that should not weigh against the State. *See State v. Munoz*, 991 S.W.2d 818, 822 (Tex. Crim. App. 1999).

More important, Tiede's failure to assert his speedy trial rights—*a failure that continued even during the pendency of the habeas proceeding while Tiede was represented by Ms. Cole*—weighs heavily against granting relief. A defendant's failure to assert his right to a speedy trial "will make it difficult for a defendant to prove that he was denied a speedy trial." *Barker v. Wingo*, 407 U.S. 514, 532 (1972). As the Texas Court of Criminal Appeals has held:

> Although a defendant's failure to seek a speedy trial does not amount to a waiver of the speedy trial right, *failure to seek a speedy trial makes it difficult for a defendant to prevail on a speedy trial claim.* This is so because a

defendant's failure to make a timely demand for a speedy trial indicates strongly that he did not really want one and that he was not prejudiced by not having one. *Furthermore, the longer the delay becomes, the more likely it is that a defendant who really wanted a speedy trial would take some action to obtain one.*

*Shaw v. State*, 117 S.W.3d 883, 890 (Tex. Crim. App. 2003) (internal citations omitted).

Finally, Tiede has not established any cognizable prejudice resulting from the delay. Tiede makes a strange argument concerning "prejudice" in the context of his sexual orientation. But the prejudice referred to by the *Barker* test is impairment of defense. *Cantu*, 253 S.W.3d at 285. Nothing suggests that Tiede will be unable to defend the theft charges as the result of any delay in the trial.

For all these reasons, the motion to dismiss should be denied.

**2.    Resentencing on the murder charge should be by a jury; as Chief Justice Keller noted (and District Attorney Davidson has confirmed to the Attorney General), substantial evidence rebuts Mr. Tiede's "sudden passion" claim.**

Tiede's motion assumes that he has proven his sudden passion defense. He has not. This Court and the Court of Criminal Appeals held only that he is entitled *to try and prove it* at a new sentencing hearing.

No one can seriously dispute the substantial evidence rebutting Tiede's defense. Chief Justice Keller detailed some of it in her dissent:

The jury had before it evidence that applicant had been thinking about killing Marjorie for months and placed the murder weapon where it would be easily accessible, that he hid the murder by telling various lies about Marjorie's whereabouts, that he spent hundreds of thousands of dollars of Marjorie's money after her murder, that he sought a wire transfer of an additional $225,000 of her

money, and that he took up with another elderly, wealthy widow after he killed Marjorie . . . The jury also had evidence that applicant had spent large amounts of money before Marjorie's death, with no explanation for where the money came from . . . Aside from saying he had received somewhere around $15,000 to $18,000 when his grandmother died in 1988, [Tiede] offered no explanation for where he got over a quarter of a million dollars during the last three years of Marjorie's life. The jury also saw applicant's confession to the murder. As relevant to whether sudden passion was a viable defense, that confession says: "I had moved the rifle into the bathroom near the garage. [Marjorie] had walked out into the garage towards my car. I took the rifle and I shot Marjorie in the back. She fell face first. Marjorie was still breathing heavily, so I shot her again . . . I then dragged Marjorie by the feet from the garage to the freezer. I had taken the food from the freezer. I placed her into the freezer and covered her with a Land's End brand white sheet. I then covered her with the food. I took a water hose and washed the blood from the garage. I swept up the bullets along with some leaves and threw them away." These actions hardly sound like applicant was "incapable of cool reflection," as required by a sudden-passion defense.

*Ex Parte Tiede*, 448 S.W.3d 456, 469-69 (Tex. Crim. App. 2014) (Keller, C.J., dissenting).

This analysis, provided by our state's highest-ranking criminal jurist and joined by two of her colleagues, establishes at bare minimum that reasonable minds could differ concerning the viability of Tiede's sudden passion defense in light of the evidence. *A jury should decide.*

District Attorney Davidson has stated in writing that he possesses evidence rebutting the defense. In contesting an Open Records Act request by the Family, Davidson (through counsel) informed the Attorney General's Office that he was withholding this evidence specifically for use in the new sentencing trial:

> The information is also relevant to the specific investigation and prosecution in *the new punishment trial* in the murder case . . . The concealment of the body and deception in the withdrawals *appears contrary to the "sudden passion/emotion" [defense]* . . . [and] is relevant to prove the intentional murder *and to rebut or counter the "new evidence"* which arose during the Writ Hearing.[1]

Mr. Davidson is correct about evidence concerning Tiede's motive. For the past several months, the Family has compiled financial records relating to the theft and murder, as well as witness testimony concerning aspects of it. The Family believes it will be able to provide District Attorney Davidson, before a new sentencing hearing, with concrete evidence establishing Tiede's clear and sole motive for murdering Marjorie was to cover up his substantial theft of her assets.

According to voluminous financial records gathered by the Family, Tiede stole between $1 and $4 million from Marjorie before murdering her. *Tiede murdered Marjorie on the very day of—and indeed only hours before—a meeting with her banker that would have resulted in Marjorie's discovery of this theft.* There was no "sudden passion," only a realization that his theft was about to be exposed—explaining why, as Tiede admitted, he moved the rifle that morning for easier access.

Tiede's theft was simple, amounting to essentially a one-victim Ponzi scheme. Tiede claimed to be investing Marjorie's money for her. She would provide him with large checks. These checks generally stated they were for investment purposes and often referenced Marjorie's investment account with Charles Schwab.[2] Periodically, Tiede would give Marjorie a much smaller check in return, representing it as the proceeds of her "investments." Actually, Tiede was paying Marjorie with her own money and stealing the rest. A personal balance sheet recovered from Marjorie's computer after the murder shows that she believed her Charles Schwab account had a balance of around $2.5 million as of December 31, 1994; in

---

[1] Exhibit 1 (emphasis added).

[2] An example is attached as Exhibit 2.

fact, Tiede had depleted the account so drastically that its balance was around $4,000.

Over time, Tiede depleted Marjorie's liquid assets to the point that he had to steal everything, and could not even provide the small (fraudulent) return checks. At that point, Tiede began falsifying deposit slips. He would present Marjorie with a deposit slip for her records reflecting deposit of a return "investment check." But when Tiede actually made the deposit (remember, he "handled" all of her finances and banking), he used a deposit slip that did not include any such check.[3]

Eventually, as part of a settlement agreement concerning her grandchildren's trust, Marjorie agreed to have all trust assets transferred to the control of Longview Bank & Trust. On October 26, 1996, just weeks before the murder, a court order accepted Marjorie's resignation as trustee, making the Bank the new Trustee[4]—and making inevitable the discovery of Tiede's theft.

The Bank began having Marjorie's investment accounts closed and the funds in them transferred to its control. This process quickly revealed what appeared to be missing funds of around $1 million.[5] An officer of the Bank, having been unable to account for these missing funds, scheduled a meeting with Marjorie and Tiede at which he intended to raise the matter.

Marjorie never got to the meeting. As she approached her car to leave for the meeting at the Bank, Tiede shot her in the back. After cleaning up the murder scene and concealing Marjorie's body, Tiede called and cancelled the meeting, purportedly at Marjorie's request. He then left to attend a rehearsal of *Guys & Dolls*, treating the cast and crew to a post-rehearsal pizza dinner (which he paid for using one of Marjorie's credit cards). The next day, Tiede forged and cashed a personal check to himself on Marjorie's account for $20,000; his post-murder spending spree was underway.

---

[3] Two examples of the fraudulent and legitimate deposit slips, in Tiede's handwriting and identical except for omission of the "investment" checks, are attached as Exhibit 3.
[4] Exhibit 4.
[5] The amount missing was actually greater, but the Bank was only the trust assets, not the entire estate.

The Family respectfully suggests that this Court look very skeptically at any agreement permitting Tiede to obtain a sentence of time-served without (1) having his sudden passion defense examined through an adversarial proceeding and (2) adjudicated by a jury.

Respectfully,

Chad Baruch

copies: Panola County District Clerk
Danny Buck Davidson
Jodi Cole

1

# UNDERWOOD LAW OFFICE

324 West Panola
P.O. Box 1138
Carthage, Texas 75633
Telephone: (903) 693-2303
Fax: (903) 693-2356

Robert Underwood
Texas Board of Legal Specialization
Civil Trial Law &
Personal Injury Trial Law
R. Collin Underwood

*Via Certified Mail No. 7012 0470 0001 5041 4114*

December 23, 2014

THE HONORABLE GREG ABBOTT
TEXAS ATTORNEY GENERAL
ATTN: OPEN RECORDS DIVISION
PO BOX 12548
AUSTIN TX 78711-2548

Re: Request for Attorney General Decision and Submission / Two (2) December 12, 2014 Shanna Nugent requests to Panola County Criminal District Attorney

Dear Attorney General Abbott:

This letter serves as submission to the Attorney General of Texas pursuant to Section 552.301(e) of the Public Information Act (the "Act"). The undersigned Attorney represents the Panola County Criminal District Attorney and Panola County Criminal District Attorney's Office in this matter. This letter serves as request for a decision by the Attorney General on the question that exceptions apply to withhold information which was requested by Shanna Nugent in the two (2) requests dated December 12, 2014.

Copies of the two (2) December 12, 2014 Shanna Nugent requests to Criminal District Attorney Danny Buck Davidson of Panola County are attached.

A signed statement by Criminal District Attorney Danny Buck Davidson is attached showing the Panola County Criminal District Attorney's Office received the "Request for Evidence and Waiver of Fees" and "Request for Public Documents and Waiver of Fees" from Shanna Nugent on December 16, 2014.

## Background:

In November 1996 Bernie Tiede murdered Marjorie Nugent by shooting her with a gun and placed her body in a freezer. Her body was discovered in August of 1997. Tiede was convicted of murder and sentenced to life.

Tiede was also indicted for theft in a multi-count indictment for appropriating money from the Nugents after he murdered her. The theft case has not been tried but is pending. The theft indictment and docket sheet is attached.

In 2014 Tiede filed a writ of habeas corpus in the murder case in the Texas Court of Criminal Appeals. The Trial Court's Order in the writ recommended a new punishment phase of the murder

conviction. The Findings of Fact, Conclusions of Law, Recommendation and Order is attached. In November of 2014 the Texas Court of Criminal Appeals ordered a new sentencing trial. The Mandate is attached.

**Reasons for exceptions to apply:**

Government Code section 552.108(a)(1) protects information that pertains to specific pending criminal investigation or prosecution. The indictment number 1997 – C – 104 styled the *State of Texas versus Bernhardt Tiede II*, theft over $200,000 is pending in the 123rd Judicial Court. It is a ten (10) count indictment for unlawfully appropriating money from Dr. Rod Nugent or the heirs of Mrs. R.M. Nugent, which is Marjorie Nugent, after Tiede murdered her. The pending indictment and docket sheet are attached. The Criminal District Attorney has not dismissed the theft indictment.

The term "information" is used to include all items requested.

The requested information contains evidence or information relevant to the specific investigation and prosecution of the pending felony theft indictment. The relevant information would largely be the bank statements and cancelled checks which may be used to prove the illegal withdrawals by Tiede from the Nugent accounts through a Power of Attorney after he murdered her. At this time none of the documents have been admitted into evidence. A representative sample of the information is labeled and attached.

The information is also relevant to the specific investigation and prosecution in the new punishment trial in the murder case since Tiede acted in a knowing deceptive course of conduct over several months by withdrawing large sums of money and spending or giving it away. This conduct may be relevant to explain why Tiede murdered her and hid her body in a freezer. The concealment of the body and deception in the withdrawals appears contrary to the "sudden passion/emotion" as stated on page 11 paragraph 64 of the Findings of Fact of the Trial Court. The deceptive conduct and deliberate acts of Tiede for a period of nine (9) months after the murder is relevant to prove the intentional murder and to rebut or counter the "new evidence" which arose in the Writ Hearing. The information withheld contains clear evidence of this conduct after the murder.

Additionally the information withheld contains evidence of the expenses and expenditures spent by Tiede and Marjorie Nugent prior to the murder. This evidence is relevant to rebut the alleged "verbal abuse" Tiede was subject to by Marjorie Nugent which is cited in the Findings of Fact, Conclusions of Law, Recommendations and Order on page 5 paragraph #26, and the "deteriorated" relationship between them cited on page 7 paragraph #43, and the reason Tiede could not end their relationship cited on page 8 paragraph #44. Evidence of the amount of money being spent can explain some of the "new evidence" arising from the writ.

In Requestor's "Request for Public Documents" includes correspondence from the deceased's family (#8), the opposing attorneys in the habeas corpus (#9), the mental experts in the murder trial and habeas corpus (#12). These items contain information which are involved in two active felony prosecutions and should not be disclosed with pending prosecution. The "decision making process" information requested in #13 is clearly exempt from disclosure.

The Criminal District Attorney Danny Buck Davidson of the 123rd Judicial Criminal District objects to any disclosure of the requested items. Clearly the theft case is pending. The murder case is pending since the Court of Criminal Appeals ordered a new murder punishment stage. All of the information items requested by the Requestor Nugent are potential exhibits to prove the motive, deception, fraud, and theft committed by Tiede in the murder and theft case.

The copy of this letter sent to the requestor Shanna Nugent is being redacted pursuant to Government Code section 552.301(e-1) so to not reveal the substance of the information.

Therefore, based upon the foregoing exceptions the requested information should not be disclosed.

The same issues, exclusions, arguments are similar, if not identical, to the issues in the attached Texas Attorney General Letter Ruling OR2014-22528. The following items are identical in both requests: #4 laptop computer, #5 videos, #6 answering machine tape, #11 notes and cards.

If you should need additional information please contact me.

Thank you.

Yours truly,

Robert Underwood

Cc:
Shanna Nugent   (Redacted copy)
Attorney at Law
14285 Midway Road Suite 130
Addison TX 75001
Via Fax

Criminal District Attorney Danny Buck Davidson

Attachments:
1. Two (2) Shanna Nugent Requests
2. Signed Statement by Criminal District Attorney regarding date
3. Two (2) Responses
4. Findings of Fact, Conclusions of Law, Recommendation and Order and Mandate
5. Two (2) Indictments
6. Theft Docket sheet
7. Documents labeled sample of Nugent records Gov. Code 552.108(a)(1)

2

187

**R. M. NUGENT ESTATE**
P.O. BOX 818
CARTHAGE, TEXAS 75833

8-45/1119

25 April 19 91

PAY TO THE ORDER OF: Bernhardt Eric. T & Beth Aqu system     $ 75,002 50

Seventy-five thousand and 50/100 ——————— DOLLARS

PAID

Mrs. R. M. Nugent, sp.

⑈000 187⑈ ⑉111904150⑈ 54 240 7⑈          ⑈000 75000 00⑈

MARJORIE M. NUGENT
111 DOUG LAKE W.  PH. 214-693-6751
CARTHAGE, TEXAS  75633

280

PAY TO THE
ORDER OF _Beta Inn System_

$ 40,000

_Forty thousand and no_ DOLLARS

PAN BANK & TRUST COMPANY
Carthage, Texas 75633

MEMO _transfer to in act._

Marjorie M. Nugent

⑈⑈⑈⑈⑈⑈⑈⑈

344

**R. M. NUGENT ESTATE**
P.O. BOX 818
CARTHAGE, TEXAS 75633

85-415/1119

4/22 19 93

PAY TO THE ORDER OF _Bernhardt Lindy II_ $ 52,000⁰⁰

_fifty-thousand and no/100_ DOLLARS

_Transfer to R. M. Nugent_
_Guaranty #5835-13243_

Mrs. R. M. Nugent 96

⑈000344⑈ ⑆1119041150⑆ 54 240 7⑈ ⑈0005000000⑈

**3**

**DEPOSIT TICKET**

MARJORIE M. NUGENT
111 DIXIE LAKE WEST
CARTHAGE, TEXAS 75633

STATE BANK & TRUST COMPANY

| | DOLLARS | CENTS |
|---|---|---|
| DATE: 1/21/94 | | |
| CURRENCY | | |
| COIN | | |
| CHECKS LIST EACH SEPARATELY | | |
| V.F. Pittal. | 33 | 79 |
| | 558 | 90 |
| | 350 | 00 |
| | 31 | 49 |
| | 5 | 35 |
| | 60 | 45 |
| | 60 | 61 |
| | 64 | 09 |
| | 287 | 24 |
| | 27 | 30 |
| | 1500 | 00 |
| | 1500 | 00 |
| | 100 | 00 |
| | 19,685 | 39 |
| | 2000 | 00 |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| TOTAL FROM OTHER SIDE | | |
| OR ATTACHED LIST | | |
| **TOTAL** | 26,170 | 50 |

Checks and other items are received for deposit
subject to the provisions of the Uniform Commercial
Code or any applicable collection agreement.

**DEPOSIT TICKET**    88—418/1115

MARJORIE M. NUGENT
711 DIXIE GOLF WEST
CARTHAGE, TEXAS 75833

STATE BANK & TRUST COMPANY
Carthage, Texas 75833

| | DOLLARS | CENTS |
|---|---|---|
| DATE 1/21/94 | | |
| **CURRENCY** | | |
| **COIN** | | |
| **CHECKS** LIST EACH SEPARATELY | | |
| 1 V.F. Petrol. | 33 | 79 |
| 2 Franklin Ind. | 158 | 90 |
| 3 Mississippi Equil. | 350 | 00 |
| 4 Parker Paisley | 31 | 45 |
| 5 Ag. Tex Ref. | 5 | 35 |
| 6 Indiana yrgl. | 60 | 45 |
| 7 Mariner Drxd | 60 | 61 |
| 8 Unocal 76 | 69 | 49 |
| 9 Sara Oil | 287 | 34 |
| 10 Mitchell Energy | 27 | 30 |
| 11 Burge Aldridge | 1500 | 00 |
| 12 X 8th Nobbe Ch. | 1500 | 00 |
| 13 Kissig New | 1000 | 00 |
| 14 Lin 1/2 to 542107 | 2000 | 00 |
| 15 | | |
| 16 | | |
| 17 | | |
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| **TOTAL FROM OTHER SIDE OR ATTACHED LIST** | | |
| **TOTAL** | 3485 | 11 |

Checks and other items are received for deposit subject to the provisions of the Uniform Commercial Code or any applicable collection agreement.

*This is a deposit credited on Nigel statement*

*No total on Stmt Jan*

**DEPOSIT TICKET**   85-415/1118

MARJORIE M. NUGENT
111 DODE LAKE WEST
CARTHAGE, TEXAS 75633

STATE BANK & TRUST COMPANY
CARTHAGE, TEXAS 75633

| DATE 3/11/74 | DOLLARS | CENTS |
|---|---|---|
| CURRENCY | | |
| COIN | | |
| CHECKS LIST EACH SEPARATELY | | |
| Key Prod. Co. | 93 | 20 |
| Ayer Prod. Prod. | 25 | 25 |
| Williams MfM | 105 | 24 |
| Merolo Ferrian | 13,172 | 29 |
| Less 1/2 to 542407 | 6,561 | 15 |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| TOTAL FROM OTHER SIDE | | |
| OR ATTACHED LIST | | |
| **TOTAL** | 6 787 | 83 |

Checks and other items are received for deposit
subject to the provisions of the Uniform Commercial
Code or any applicable collection agreement.

DEPOSIT TICKET    50-418/1119

MARJORIE M. NUGENT
111 DIXIE LAKE WEST
CARTHAGE, TEXAS 75633

FIRST STATE BANK & TRUST COMPANY
CARTHAGE, TEXAS 75633

| | DOLLARS | CENTS |
|---|---|---|
| DATE 3/11/94 | | |
| CURRENCY | | |
| COIN | | |
| CHECKS LIST EACH SEPARATELY | | |
| 1 Ky Fuel Co. | 97 | 20 |
| 2 Roths Cattle Fuel | 78 | 25 |
| 3 Williams M/M | 105 | 24 |
| 4 Betta Fry | 13,482 | 27 |
| 5 Maggs Swigg | 13,100 | 29 |
| 6 | | |
| 7 San Mto 542407 | (656.1 | 15 |
| 8 | | |
| 9 | | |
| 10 | | |
| 11 | | |
| 12 | | |
| 13 | | |
| 14 | | |
| 15 | | |
| 16 | | |
| 17 | | |
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| TOTAL FROM OTHER SIDE OR ATTACHED LIST | | |
| TOTAL | 20,251 | 10 |

*This not on bank statement*

Checks and other items are received for deposit subject to the provisions of the Uniform Commercial Code or any applicable collection agreement.

**DEPOSIT TICKET**   88-415/1119

MARJORIE M. NUGENT
111 CODE LAKE WEST
CARTHAGE, TEXAS 75633

STATE BANK & TRUST COMPANY
CARTHAGE, TEXAS 75633

DATE 4/8/94

| | DOLLARS | CENTS |
|---|---|---|
| CURRENCY | | |
| COIN | | |
| CHECKS LIST EACH SEPARATELY | | |
| 1. UPRC | 149 | 12 |
| 2. Marg Call new | 262 | 47 |
| 3. Field Dept. | 56 | 77 |
| 4. SMK Luxury | 55 | 44 |
| 5. Layette Acct | 788 | 83 |
| 6. UPRC | 1653 | 14 |
| 7. Luxury | 14 | 49 |
| 8. Ranch Acct | 452 | 95 |
| 9. Luxury Acct | 235 | 65 |
| 10. | | |
| 11. | | |
| 12. | | |
| 13. | | |
| 14. | | |
| 15. | | |
| 16. | | |
| 17. | | |
| 18. | | |
| 19. | | |
| 20. | | |
| 21. | | |
| 22. | | |
| 23. | | |
| 24. | | |
| TOTAL FROM OTHER SIDE OR ATTACHED LIST | | |
| **TOTAL** | 3109 | 86 |

Checks and other items are received for deposit
subject to the provisions of the Uniform Commercial
Code or any applicable collection agreement.



This is credited on bank statement

**DEPOSIT TICKET** 88-415/1118

MARJORIE M. NUGENT
111 DIXIE LAKE WEST
CARTHAGE, TEXAS 75633

STATE BANK & TRUST COMPANY
CARTHAGE, TEXAS 75633

| | DOLLARS | CENTS |
|---|---|---|
| DATE 4/5/94 | | |
| CURRENCY | | |
| COIN | | |
| CHECKS LIST EACH SEPARATELY | | |
| 1 UPRC | 149 | 16 |
| 2 | 262 | 47 |
| 3 | 62 | 73 |
| 4 SMK | 59 | 44 |
| 5 | 209 | 83 |
| 6 UPRC | 165 | 34 |
| 7 | 14 | 09 |
| 8 | 46 | 595 |
| 9 | 19,521 | 21 |
| 10 | 9,265 | |
| 11 | | |
| 12 | | |
| 13 | | |
| 14 | | |
| 15 | | |
| 16 | | |
| 17 | | |
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| TOTAL FROM OTHER SIDE OR ATTACHED LIST | | |
| TOTAL | 21,673 | 07 |

Checks and other items are received for deposit subject to the provisions of the Uniform Commercial Code or any applicable collection agreement.

**4**

348

A TRUE COPY
of the original hereof, I certify
Sandra King
DISTRICT COURT CLERK
PANOLA COUNTY TEXAS
By _Carole Parks_
DEPUTY CLERK

FILED

96 OCT 29 PM 1: 50

SANDRA KING CLERK
DISTRICT COURT
PANOLA COUNTY TEXAS
By_____ DEPUTY

NO. 1996-A-190

IN RE: )
)
MARJORIE M. NUGENT )
)
MARITAL-DEDUCTION TRUST )

IN THE DISTRICT COURT OF

PANOLA COUNTY, TEXAS

123RD JUDICIAL DISTRICT

## AGREED ORDER ACCEPTING TRUSTEE'S RESIGNATION

On this day, came on for hearing the Petition for Acceptance of Trustee's Resignation filed herein by Marjorie M. Nugent. The Court finds the following:

1. Petitioner Marjorie M. Nugent and Respondents Jennifer Lynn Nugent, Susan K. Nugent, Shanna Lee Nugent and Mathew Tod Nugent are the only necessary parties to this cause. All such parties are adults and are properly before the Court.

2. Venue in this case is proper in Panola County, Texas.

3. This Court has jurisdiction over this cause, pursuant to Section 115.001, Texas Trust Code.

4. The last will and testament of Roderick M. Nugent, deceased, which will was admitted to probate in Cause No. 8001, County Court, Panola County, Texas, created two trusts: the Rod Nugent Grandchildren's Trust and the Marjorie M. Nugent Marital-Deduction Trust. The Rod Nugent Grandchildren's Trust was funded entirely with personal property of Mr. Nugent's estate; all surface and mineral real property interests of his estate passed to the Marjorie M. Nugent Marital-Deduction Trust.

5. Marjorie M. Nugent properly has petitioned this Court for acceptance of her resignation as trustee of the Marjorie M. Nugent Marital-Deduction Trust, created under the last will and testament of Roderick M. Nugent, deceased.

6. Marjorie M. Nugent properly and adequately has accounted for her actions as trustee through December 31, 1995. The acceptance of her resignation, her discharge from her trust, her release from any liability arising from service as trustee other than liability arising from any failure to deliver assets of the Trust to the successor trustee, the approval of her accounting dated as of December 31, 1995, her discharge from responsibility to further account to persons interested in the trust with respect to transactions occurring through that date, and her discharge from responsibility to account with respect to transactions in the ordinary course of business after that date and prior to the date the successor trustee receives all of the assets of the trust properly will protect the rights of persons interested in the trust.

IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED that:

1.  The resignation of Marjorie M. Nugent as trustee of the Marjorie M. Nugent Marital-Deduction Trust created under the last will and testament of Roderick M. Nugent, deceased, is accepted.

2.  The accounting dated as of December 31, 1995 appended to the petition filed herein is approved;

3.  Marjorie M. Nugent is discharged and released from any and all liability arising from service as trustee of the Marjorie M. Nugent Marital-Deduction Trust created under the last will and testament of Roderick M. Nugent, deceased, other than liability arising from any failure to deliver assets of the trust to the successor trustee; and

4.  Marjorie M. Nugent shall not be required to account further to persons interested in the trust with respect to transaction occurring through December 31, 1995, and shall note be required to account with respect to transactions occurring in the ordinary course of business after that date and prior to the date all assets of the trust are delivered to the successor trustee.

All relief not specifically granted herein is denied.

SIGNED this _14th_ day of _October_ , 1996.

_____
Judge Presiding

AGREED TO AS TO FORM AND CONTENT:

_____
Rick McPherson
Law Offices of Eric Scott McPherson
408 West Sabine Street
Carthage, TX 75633
Telephone (903) 693-7143
Fax (903) 693-3038
Attorney for Marjorie M. Nugent

CERTIFIED COPY

350

James T Campbell

__James T. Campbell__
Peterson Farris Doores & Jones,
a professional corporation
P. O. Box 9620
Amarillo, TX 79105-9620
(806) 374-5317
fax (806) 372-2107
Attorneys for Jennifer Lynn Nugent, Susan K. Nugent,
Shanna Lee Nugent and Mathew Tod Nugent

*Agreed Order Accepting Trustee's Resignation - Page 3*

CERTIFIED COPY