# EXHIBIT 32

1              **UNITED STATES DISTRICT COURT**
             **SOUTHERN DISTRICT OF TEXAS**
2                **HOUSTON DIVISION**

3    **DAVID BAILEY, ET AL**         \*   **4:14-CV-01698**
                            \*
4    **VS.**                  \*   **9:05 A.M.**
                            \*
5    **BRAD LIVINGSTON, ET AL**    \*   **JUNE 1, 2016**

6   **HEARING ON PRELIMINARY INJUNCTION AND CLASS CERTIFICATION**
       **BEFORE THE HONORABLE KEITH P. ELLISON**
7            **Volume 3 of 4 Volumes**

8   **APPEARANCES:**

9   **FOR THE PLAINTIFFS:**
    Mr. Jeffrey S. Edwards
10  Mr. Scott Charles Medlock
    Mr. David James
11  The Edwards Law Firm
    1101 East 11th Street
12  Austin, Texas 78702
    (512) 623-7727
13
    Mr. Michael Singley
14  The Singley Law Firm, PLLC
    4131 Spicewood Springs Road
15  Suite O-3
    Austin, Texas  78759
16  (512) 334-4302

17  Mr. Nathan M. Smith
    Reynolds Frizzell, LLP
18  1100 Louisiana, Suite 3500
    Houston, Texas  77002
19  (713) 485-7212

20  Ms. Wallis Anne Nader
    Texas Civil Rights Project-Houston
21  2006 Wheeler Avenue
    Houston, Texas  77004
22  (832) 767-3650

23  Mr. Sean Flammer
    Texas Attorney General
24  P.O. Box 12548
    Austin, Texas  78711-2548
25  (512) 475-4071

```
 1                    APPEARANCES (continued)

 2
      FOR THE DEFENDANTS:
 3    Ms. Cynthia Burton
      Mr. Matthew J. Greer
 4    Mr. Phillip Boyd
      Ms. Amanda Kates
 5    Ms. Pat Tulinski
      Office of the Attorney General
 6    Capitol Station
      P.O. Box 12548
 7    Austin, Texas 78711-2548
      (512) 463-2080
 8
      Ms. Sharon Felfe Howell
 9    Texas Department of Criminal Justice
      P.O. Box 4004
10    Huntsville, Texas 77342-4004
      (936) 437-2141
11
      Court Reporter:
12    Laura Wells, RPR, RMR, CRR
      515 Rusk, Suite 8004
13    Houston, Texas 77002

14    Proceedings recorded by mechanical stenography.
      Transcript produced by computer-assisted transcription.
15

16

17

18

19

20

21

22

23

24

25
```

```
 1                        VOLUME 3
        (Hearing on Preliminary Injunction and Class Certification)
 2                                                              Page
        June 1, 2016
 3
        Argument as to Dr. Means report.................      4
 4
        Argument as to Defendants Post Hearing               18
 5      Briefing.......................................
 6      Hearing on Preliminary Injunction and Class          23
        Certification..................................
 7
        WITNESSES                                            Page
 8
        SUSANNA VASSALLO
 9          Direct Examination By Mr. Singley                 29
            Cross-Examination By Ms. Tulinski               139
10
                                                             Page
11
        Court Reporter's Certificate....................    226
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                          **PROCEEDINGS**

2              THE COURT:  Please keep your seats everybody.

3       Good morning and welcome back.

4              Okay.  We have had two briefs come in overnight.  I

10:10:57  5     need to talk about both of them.  The first one I want to

6       talk about was plaintiffs' motion concerning Dr. Means.

7       The argument is that Dr. Means changed her report

8       drastically after her deposition and ask that I strike

9       those new opinions.  Anything you want to add to what you

10:11:22  10    have already written?

11             MR. JAMES:  I just want to clarify that the new

12      opinions that we're complaining about were filed on Monday

13      of this week.

14             THE COURT:  Let me get defendants' response then.

10:11:36  15           MR. GREER:  Your Honor, first and foremost,

16      Dr. Means' opinions in this case are not changing and that

17      is clear from the opinions that we have disclosed to the

18      plaintiffs' counsel and it's clear from her deposition

19      testimony.

10:12:01  20           THE COURT:  Move the mic a little closer to you,

21      Mr. Greer.  Thank you very much.

22             MR. GREER:  Certainly.  So that's the first and

23      foremost point to be made here.  I first point out that

24      the plaintiffs themselves have supplemented their expert

10:12:14  25    designations after the depositions took place.  But even

Case 1:23-cv-01004-RP  Document 50-43  Filed 04/25/24  Page 6 of 10
Case 4:14-cv-01698  Document 4651  Filed 09/20/16  Page 134 of 226    134
Direct Examination of Susanna Vassallo

1    Q.   What does that show?

2    A.   That just shows that air-conditioning is protective.

3    Q.   Is the finding having a working fan and taking extra

4    showers also on the Bouchama study?

02:29:34    5    A.   Those were not statistically significant.  Fans are

6    not protective at temperature 90 degrees with the humidity

7    of 35 percent or more.  Fans should not be used for

8    preventing heat-related illness in areas of high humidity.

9    That's the MMWR and the CDC.

02:29:54    10    Q.   Okay.  Are there any other studies, if you can

11    identify them, that stand for the proposition that

12    air-conditioning is the key protective measure here?

13    A.   Yes.  The article -- No. 25 tab by Ostro, the effects

14    of temperature and use of air-conditioning clearly shows

02:30:13    15    that as the penetration in ownership of air-conditioning

16    in a community increases, mortality decreases.

17    Q.   Is the Semenza study, mortality study, relevant on

18    this question?

19    A.   Yes.  It shows the same thing.  Semenza, New England

02:30:30    20    Journal, 1995, Chicago heat wave showed clearly that

21    air-conditioning was protective against death.  And that's

22    Semenza.  And Semenza is also included in the Bouchama,

23    No. 4, study meta-analysis, which also showed a protective

24    effect of air-conditioning.

02:30:55    25    Q.   Doctor, a TDCJ witness testified last week in these

Case 4:14-cv-01698-P Document 805-1 Filed 05/31/16 Page 135 of 226 135
Case 1:23-cv-01004-RP Document 50-42 Filed 04/25/24 Page 7 of 10
Direct Examination of Susanna Vassallo

1  hearings that the current respite policy at the Pack Unit

2  is that inmates can get on-demand access to

3  air-conditioning just by asking for it for as long as they

4  want and without having to go through medical screening.

02:31:13
5       My question for you is:  Is that an adequate plan to

6  deal with the heat risk at Pack Unit?

7  **A.**   No.

8  **Q.**   Why not?

9  **A.**   Because the time that they are not in

02:31:23
10  air-conditioning, they are subjected to the temperatures

11  at the Pack Unit which are risky and cause harm, including

12  sickness, morbidity and mortality.

13      We already have dead people in the prison system in

14  Texas and on the autopsy table in Galveston.  So we

02:31:43
15  already know that people die.

16      Now, the key piece is if you say three or four or five

17  hours, that leaves 20 or -- 19 or 20 hours in these heat

18  conditions.

19      The other key piece is not only the risk for those

02:32:01
20  other hours is that people don't know they are in trouble.

21  I have alluded to that throughout the studies that people

22  show headache, dizziness, fatigue.

23      And the rapidity outside of the exacerbation of

24  illnesses such as cardiovascular, all the things we have

02:32:22
25  gone through, the rapidity, the speed at which heatstroke

Case 1:23-cv-01004-RP Document 50-43 Filed 04/25/24 Page 8 of 10
Case 4:14-cv-01698-RP Document 4081 Filed 11/50/16 Page 136 of 226    136
Direct Examination of Susanna Vassallo

1   strikes means that checking people that are walking

2   around, somebody is sleeping in their bed, everything

3   looks fine in the night, and they can still suffer a

4   heatstroke without the correction staff realizing they're

02:32:43  5   in trouble.

6   **Q.**   Is it possible for someone to start having cognitive

7   problems from heat illness before they realize they need

8   to go to air-conditioning?

9   **A.**   Of course.  That's one of the reasons that it has to

02:32:52  10  be simply mandatory that they are there.  It's not up to

11  an individual who is not a doctor or individuals who may

12  not recognize that dizziness and weakness and fatigue are

13  manifestations of heat-related illness that could be

14  precursors, but frequently they do not occur before

02:33:16  15  heatstroke occurs.

16  **Q.**   Let me finish up here, Doctor.  Plaintiff Santee --

17  you looked at all the plaintiffs' medical records, right?

18  **A.**   That's right.

19  **Q.**   He is younger than 65?

02:33:30  20  **A.**   Yes.  I think he is in his 40s.

21  **Q.**   He doesn't have any medical conditions that make him

22  heat sensitive?

23  **A.**   That's correct.

24  **Q.**   He doesn't take any medications that make him heat

02:33:38  25  sensitive?

Case 1:23-cv-01004-RP Document 50-42 Filed 04/25/24 Page 9 of 10
Case 4:14-cv-01698-P Document 409 Filed 06/30/16 Page 225 of 226    225
Cross-Examination of Susanna Vassallo

1    is that it is not necessary for me to look at the 1,400

2    medical records."

3  **A.**    That's what I just said.

4  **Q.**    No.  No.  Let me finish, please.  "These

05:19:29  5    temperatures" -- it's hard to see.  There we go.

6         "These temperatures are well understood, well

7    accepted, too hot and every individual is at risk.  I

8    don't need to find -- I'm saying there's a risk.  I don't

9    need to look at 1,400 or 130,000 prisoners in the Texas

05:19:51  10   Department of Corrections to find harm.  So what I'm

11   talking about is the risk of these temperatures.  Whether

12   someone has suffered injury, disease or worsening of

13   underlying illnesses on a one-by-one basis is not the

14   basis of my opinion."

05:20:08  15        Did I read that correctly?

16  **A.**    You read it correctly, yes.

17            MS. TULINSKI:  That's all the questions I have,

18   Your Honor.

19            THE COURT:  Any redirect?

05:20:16  20           MR. SINGLEY:  No, Your Honor.  Thank you.

21            THE COURT:  Can we adjourn for the day or you

22   want to put on another witness?

23            MS. BURTON:  We can adjourn for the day and start

24   tomorrow.

05:20:24  25           THE COURT:  That's fine.  I'm not going to leave

Case 1:23-cv-01004-RP   Document 50-42   Filed 04/25/24   Page 10 of 10
Case 4:14-cv-01698-DCB   Document 489   Filed 06/10/16   Page 226 of 226   226
Cross-Examination of Susanna Vassallo

```
05:20:33
```

1    right away.  You are excused.  Thank you very much.  We'll

2    start at 9:00.

3              MR. SINGLEY:  Thank you, Your Honor.

4              THE COURT:  Thank you, Doctor.

5              THE WITNESS:  Thank you, Your Honor.  I

6    appreciate the opportunity.

7              THE COURT:  Thank you.

8         (Proceedings concluded at 5:21 p.m.)

9         *(Proceedings adjourned at 5:20 p.m. and continued in*

10   *Volume 4.)*

11   *Date: June 10, 2016*

12                    **COURT REPORTER'S CERTIFICATE**

13        *I, Laura Wells, certify that the foregoing is a*

14   *correct transcript from the record of proceedings in the*

15   *above-entitled matter.*

16

17                         */s/ Laura Wells*
     _____

18                    *Laura Wells, CRR, RMR*

19

20

21

22

23

24

25