**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **BERNHARDT TIEDE, II;** | § | |
| **TEXAS PRISONS COMMUNITY** | § | |
| **ADVOCATES; BUILD UP, INC. A/K/A** | § | |
| **JUSTICE IMPACTED WOMEN'S** | § | |
| **ALLIANCE; TEXAS CITIZENS UNITED** | § | |
| **FOR REHABILITATION OF ERRANTS;** | § | |
| **and COALITION FOR TEXANS** | § | |
| **WITH DISABILITIES,** | § | |
| *Plaintiffs,* | § | **Civil Action No.:** |
| | § | **1:23-CV-01004-RP** |
| **v.** | § | |
| | § | |
| | § | |
| **BRYAN COLLIER, in his official capacity** | § | |
| **as Executive Director of Texas Department** | § | |
| **of Criminal Justice,** | § | |
| *Defendant.* | § | |

---

**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

---

## TABLE OF CONTENTS

Introduction ................................................................................................................3

Argument ....................................................................................................................3

    I.      Sovereign Immunity Bars Plaintiffs' Claims. ...............................................4

    II.    Plaintiffs' Claimed Injuries are Speculative. ...............................................5

    III.   The Organizational Plaintiffs Do Not Have Associational Standing to Assert a Representational Claim on Behalf of their "Constituents" or "Members." ...........7

        A.    The Organizational Plaintiffs do not establish that they have "members" who would otherwise have standing to sue in their own right. ...............................................8

        B.    The Organizational Plaintiffs' Eighth Amendment claim requires the participation of their individual "members" in the lawsuit. ...........................................................11

    IV.   Plaintiffs' Claims are Not Ripe. ................................................................18

    V.    Plaintiffs Fail to State Claims upon which Relief Can be Granted............19

Conclusion and Prayer .............................................................................................23

Certificate of Service ...............................................................................................24

Bryan Collier (Collier), in his official capacity as Executive Director of the Texas Department of Criminal Justice (TDCJ) files this Motion to Dismiss Plaintiffs' claims asserted in the Amended Complaint.

## Introduction

Plaintiff Bernhardt Tiede II (Tiede) originally brought this action against TDCJ officials, including Collier, alleging that Collier had violated his Eighth Amendment right to be free from cruel and unusual punishment by subjecting him to high temperatures in prison. *See generally* ECF 1. During the pendency of the suit, four separate activist groups, Texas Prisons Community Advocates**,** Build Up, Inc. A/K/A Justice Impacted Women's Alliance, Texas Citizens United for Rehabilitation of Errants, and Coalition for Texans with Disabilities (collectively the Organizational Plaintiffs) have joined as plaintiffs in an attempt to systematically alter the Texas prison system. ECF 57, ¶¶18–22.

The Organizational Plaintiffs' claims should be dismissed for a number of reasons. First, the Court lacks jurisdiction because Texas's sovereign immunity has not been abrogated or otherwise waived. Second, the Organizational Plaintiffs lack standing to sue because they have not met the requirements for associational standing. Third, the Organizational Plaintiffs' claims are not ripe—they are based on purely speculative or future harm. And last, the Organizational Plaintiffs have failed to state a claim upon which relief can be granted. For these reasons, the Court should dismiss their claims.

## Argument

Plaintiffs ask the Court to upend traditional limits on federal court jurisdiction and embed itself in Texas's legislative and executive policymaking in the absence of a concrete or individualized "stake in the outcome of the controversy as to warrant [their] invocation of federal-court jurisdiction[.]" *Warth v. Seldin,* 422 U.S. 490, 498 (1975) (internal quotation marks omitted). The Court should not entertain Plaintiffs' baseless claims, which they bring without any genuine basis for

establishing their standing to invoke the Court's jurisdiction. Of course, jurisdiction is not a simple obstacle to relief (the scale of which cannot be downplayed), but a fundamental defect in Plaintiffs' ability to petition the Court for *any* relief—a defect that Plaintiffs cannot overcome.

Jurisdiction is "a threshold issue that must be resolved before any federal court reaches the merits of the case before it," *Perez v. United States*, 312 F.3d 191, 194 (5th Cir. 2002), and "[t]he doctrine of standing is one of several doctrines that reflect this fundamental limitation" on the Court's power to review Plaintiffs' suit. *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). Federal Rule of Civil Procedure 12(b)(1) governs motions to dismiss for lack of subject-matter jurisdiction. *Moore v. Bryant*, 853 F.3d 245, 248 (5th Cir. 2017). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Plaintiffs' allegations are taken as true for purposes of a facial attack on the adequacy of their allegations in establishing the Court's jurisdiction. *Cell Science Sys. Corp. v. La. Health Serv.*, 804 F. App'x 260, 263 (5th Cir. 2020). In the instant case, because Plaintiffs' claims, even when taken as true, do not confer jurisdiction, the Court must dismiss them.

## I. Sovereign Immunity Bars Plaintiffs' Claims.

First, the Court lacks jurisdiction because the Plaintiffs' claims are barred by sovereign immunity. Plaintiffs bring claims against Collier under § 1983 for allegedly violating the Eighth Amendment to the United States Constitution. *See generally* ECF 57. While 42 U.S.C. § 1983 creates a private cause of action for vindication of federal constitutional rights, *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11–12 (2014), it does not contain a valid abrogation of sovereign immunity by Congress, *Quern v. Jordan*, 440 U.S. 332, 345 (1979). Nor has the State of Texas voluntarily waived sovereign immunity for claims brought under § 1983. *Texas A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 839 (Tex. 2007). Consequently, to the extent Plaintiffs seek damages against Defendant in his official capacity, such a claim is barred.

Texas's sovereign immunity also bars Plaintiffs' request for equitable relief. Under *Ex parte Young*, a litigant may overcome a state's sovereign immunity when the suit "seeks prospective, injunctive relief from a state actor, in [his] official capacity, based on an alleged ongoing violation of the federal constitution." *K.P. v. LeBlanc*, 729 F.3d 427, 439 (5th Cir. 2013). But Plaintiffs do not identify any current and ongoing violation of federal law suffered by Tiede or any constituent or member of the Organizational Plaintiffs not living in air-conditioned housing – they only allege the possibility of *future* harm to an unidentified "constituency" without alleging they are particularly susceptible to heat stress. Accordingly, "[b]ecause there is no continuing violation of federal law to enjoin in this case, an injunction is not available." *Green v. Mansour*, 474 U.S. 64, 71 (1985). "Declaratory relief is similarly barred under such circumstances . . . because such relief could relate solely to past violations of federal law." *Id.* at 67, 73. Plaintiffs' official-capacity § 1983 claims therefore are barred.

## II.  Plaintiffs' Claimed Injuries are Speculative.

Plaintiffs' claims are also barred because Plaintiffs lack traditional standing—they have not shown an injury-in fact. To establish standing, a plaintiff must show: (1) an actual or imminent, concrete and particularized "injury-in-fact"; (2) that is fairly traceable to the challenged action of the defendant; and (3) that is likely to be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Envt'l. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). All three elements are "an indispensable part of the plaintiff's case," and the party seeking to invoke federal jurisdiction bears the burden to establish them. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). "[E]ach element must be supported . . . with the manner and degree of evidence required at the successive stages of the litigation." *Id.*

To establish standing, an injury must be "actual or imminent." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). Such an injury may not be merely speculative—instead it must be "*certainly* impending." *Id.* (emphasis in original) (quoting *Lujan*, 504 U.S. at 565 n.2). "Thus, [the Supreme Court] [has] repeatedly reiterated that 'threatened injury must be *certainly impending* to constitute injury in fact,

and that allegations of *possible* future injury' are not sufficient.'" *Id.* (cleaned up). Even an "objectively reasonable likelihood" of future injury is insufficient to confer standing because it is inconsistent with the requirement that "threatened injury must be certainly impending to constitute injury in fact." *Id.* at 410 (internal quotation marks omitted). Rather, Plaintiffs must show a "substantial risk that they will suffer the potential future injury absent the requested relief." *Stringer v. Whitley*, 942 F.3d 715, 721 (5th Cir. 2019).

But here, Plaintiffs' standing depends on heat conditions that have not come to pass, are speculative, and are entirely contingent on possible future facts. While Tiede specifically has alleged various health concerns that he claims makes him sensitive to heat, the organizational Plaintiffs simply claim to represent the entire TDCJ inmate population without a showing of how hundreds of thousands of inmates are particularly susceptible to heat related illness—many of whom are healthy, able-bodied individuals with no history of heat stress. Notably, Tiede is currently housed in air conditioning. An anticipated injury is nothing more than uncertain potentiality, and standing cannot be based on a predicted harm that "depend[s] on the occurrence of numerous uncertain future events." *Prestage Farms, Inc. v. Bd. of Supervisors of Noxubee Cnty.*, 205 F.3d 265, 268 (5th Cir. 2000); *see also Am. Fid. & Cas. Co. v. Penn. Threshermen & Farmers' Mut. Cas. Ins. Co.*, 280 F.2d 453, 461 (5th Cir. 1960) ("It is not the function of a United States District Court to sit in judgment on these nice and intriguing questions which today may readily be imagined, but may never come to pass."). In a decision on this topic, the Supreme Court re-emphasized:

> Under Article III, federal courts do not adjudicate hypothetical or abstract disputes. Federal courts do not possess a roving commission to publicly opine on every legal question. Federal courts do not exercise general legal oversight of the Legislative and Executive Branches, or of private entities. And federal courts do not issue advisory opinions.

*TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203, 2210 (2021) (holding that class members who could be harmed in the future but had yet to be harmed lacked standing).

Even when injunctive and declaratory relief is sought, a plaintiff must still establish a threatened future injury that "like all injuries supporting Article III standing, must be an injury in fact." *Stringer*, 942 F.3d at 720. "For a threatened future injury to satisfy the imminence requirement, there must be at least a 'substantial risk' that the injury will occur." *Id.* at 721. Yet, a "mere risk of future harm, standing alone, cannot qualify as a concrete harm" absent a showing that the plaintiff was "harmed by their exposure to the risk [of harm] itself." *TransUnion,* 141 S. Ct. at 2211. Additionally, when the alleged injury is dependent on certain contingencies, "[e]ach link in the chain of contingencies must be 'certainly impending' to confer standing." *Glass v. Paxton*, 900 F.3d 233, 239 (5th Cir. 2018). Because Plaintiffs' claims depend on speculative future injuries, Plaintiffs do not have standing to sue Collier.

III.   **The Organizational Plaintiffs Do Not Have Associational Standing to Assert a Representational Claim on Behalf of their "Constituents" or "Members."**

The Organizational Plaintiffs' lack of associational standing bars their claims as well. Although an association may have standing in its own right to seek judicial relief from injury to itself,[1] the Organizational Plaintiffs purport to assert injury only on behalf of their constituents and members. *Ass'n of Am. Physicians & Surgeons v. Tex. Med. Bd.*, 627 F.3d 547, 550 (5th Cir. 2010). For an association to have standing to bring suit on behalf of its members, the association must show that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; *and* (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Id.* (emphasis added; citation and internal quotation marks omitted) (noting that the first two components of associational standing are constitutional requirements, while the third is prudential). "The possibility of such representational

---

[1] The Organizational Plaintiffs correctly do not attempt to pursue a claim on their own behalf, because they have not, and cannot, identify any legal interest of their own that Collier has allegedly infringed. *See D.C. Operating, L.L.C. v. Paxton*, Case No. 3:22-CV-10, 2024 WL 2013610, *1 (5th Cir. 2024) (citing *Warth*, 422 U.S. at 499). Plaintiffs do not assert any harm that would confer organizational standing.

standing, however, does not eliminate or attenuate the constitutional requirement of a case or controversy." *Warth*, 422 U.S. at 511 (citing *Sierra Club v. Morton*, 405 U.S. 727 (1972)).

While the Organizational Plaintiffs may have interests that are germane to their respective purposes, they have failed to meet both the first and third prongs of the associational standing test and they therefore lack associational standing. After all, "[t]he Supreme Court has repeatedly held that generalized grievances shared by the public at large do not provide individual plaintiffs with standing," and "the right to have the government act in accordance with the law [is] insufficient, by itself, to support standing." *Public Interest Research Grp. Of N.J., Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 120 (3d Cir. 1997) (citing *Valley Forge,* 454 U.S. 464, 475 (1982); *Warth*, 422 U.S. at 500).

### A. The Organizational Plaintiffs do not establish that they have "members" who would otherwise have standing to sue in their own right.

To establish associational standing, "[t]he first prong requires that at least one member of the association have standing to sue in his or her own right." *Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185, 191 (5th Cir. 2012) (citing *Tex. Democratic Party v. Benkiser*, 459 F.3d 582, 587–88 (5th Cir. 2006)); *see also Warth*, 422 U.S. at 511 ("The association must allege that its members, or any one of them, are suffering immediate or threatened injury . . ."). The Organizational Plaintiffs must "make specific allegations establishing that at least one identified member had suffered or would suffer harm." *Summers,* 555 U.S. at 498; *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 563 (1992) (holding "that the organization lacked standing because it failed to 'submit affidavits . . . showing, through specific facts . . . that one or more of [its] members would . . . be 'directly' affected" by the allegedly illegal activity).

The Organizational Plaintiffs ask the Court to consider their representational claim collectively, but only one of them—Build Up, Inc., or "Lioness"—even purports to be a traditional membership organization. ECF 57, ¶¶ 18-22. Meanwhile, TCPA, TX C.U.R.E., and CTD assert associational standing on behalf of prisoners who are only "constituents" of these entities. *Id.* These

entities do not even attempt to establish they are traditional membership organizations. Even so, none of the Organizational Plaintiffs plead sufficient facts establishing that they are valid organizations comprised of "members" who would otherwise have standing to sue in their own right, or that *most* TDCJ prisoners are able to participate in and guide these organizations' efforts. *See Ass'n for Retarded Citizens of Dall. v. Dall. Cnty. Mental Health & Mental Retardation Ctr. Bd. of Trs.,* 19 F.3d 241, 244 (5th Cir. 1994) (concluding that a plaintiff organization could not assert associational standing because it bears "no relationship to [a] traditional membership group[ ], because most of its 'clients'— handicapped and disabled people—are unable to participate in and guide the organization's efforts").

Nor do the Organizational Plaintiffs plead facts from which the Court could conclude that the unnamed individuals on whose behalf they purport to sue possess the "'indicia of membership' in their organizations." *Friends of the Earth, Inc. v. Chevron Chemical Co.,* 129 F.3d 826, 829 (5th Cir. 1997) (citation omitted); *see also Hunt v. Washington State Apple Advertising Com'n,* 432 U.S. 333, 344–45 (1977) (holding that an organization with no formal members may still have associational standing if it is the functional equivalent of a traditional membership organization through "indicia of membership"). To this end, under the indicia-of-membership test, the Fifth Circuit considers "whether an organization's purported 'members' (1) elect the organization's leaders, (2) serve in the organization's leadership, (3) finance the organization's activities, (4) associate voluntarily with the organization, and (5) provide sworn testimony of membership." *Students for Fair Admissions, Inc. v. University of Texas at Austin,* 37 F.4th 1078, 1084 n.7 (5th Cir. 2022) (citing *Hunt,* 432 U.S. at 344–45; *Funeral Consumers All., Inc. v. Service Corp. Intern.,* 695 F.3d 330, 344 n.9 (5th Cir. 2012)).[2]

But here, none of the Organizational Plaintiffs plead facts that support a finding that the individuals on whose behalf they purport to sue possess the indicia of membership in these

---

[2] The *Hunt* Court also looked to the existence of a "financial nexus" between the interests of the plaintiff organization and its individual members in the litigation. 432 U.S. at 345.

organizations. TCPA, TX C.U.R.E., and CTD do not outline their organizational structures other than mentioning that each comprises a nonprofit corporation.  ECF 57 at ¶¶ 18–22. The Organizational Plaintiffs do not show that any current TDCJ prisoner serves in a leadership position, finances their activities, voluntarily associates with them, or whether their fortunes would be affected *at all* by the outcome of this litigation. *See generally* ECF. 57, ¶¶ 18-22. And although Lioness states that "its leadership is composed of currently and previously incarcerated women," and that "[its] members guide its priorities," Lioness does not claim that any current TDCJ prisoner directly influences its priorities (or how), or that it receives funding from any current TDCJ prisoners. *Id.* ¶ 19.

It is also of no help to Lioness that it claims many of its members are confined to Texas prisons, because Lioness does not specifically contend that any of its members are housed in a TDCJ facility that exposes that member to a substantial risk of serious harm by virtue of the absence of air-conditioning. *Id.* In fact, none of the Organizational Plaintiffs contend that even one of their "members" is at risk, and instead rely on the vague suggestion that surely all prisoners are subject to allegedly inhumane prison conditions. *See generally id.* Although the Organizational Plaintiffs are not required to "name names" at the pleading stage, they still must contend that one of their members is suffering from a concrete and particularized injury that meets the constitutional minimum for invoking this Court's jurisdiction. *Hancock County Bd. Of Sup'rs v. Ruhr*, 487 F. App'x. 189, 198 (5th Cir. 2012) (finding that by alleging that "some of its members were voters from overpopulated an under-represented district, the NAACP branches adequately alleged that some of its members were suffering a concrete, particularized injury" and thus that each NAACP branch adequately pleaded the elements of associational standing).

The Organizational Plaintiffs also cannot avoid this constitutional prerequisite through conjecture or statistical projection about the possibility that some of their members surely are exposed to prison heat conditions without air-conditioning. *See Funeral Consumers All., Inc. v. Service Corp. Intern.,*

695 F.3d 330, 344 (5th Cir. 2012) ("The Supreme Court has rejected the contention that standing can be established by 'accepting the organization's self-description of the activities of its members' and determining that 'there is a statistical probability that some of those members are threatened with concrete injury.") (quoting *Summers*, 555 U.S. at 497). After all, even if the Court were to assume that none of TDCJ's facilities provided air-conditioning within the housing areas of its prisons, that point alone could not establish a concrete injury of any individual member, without more, because the Fifth Circuit has "not suggest[ed] that air conditioning is mandatory to meet the requirements of the Eighth Amendment." *Blackmon v. Garza*, 484 Fed. App'x 866, 872 n.6 (5th Cir. 2012). Instead, as described below, any Eighth Amendment analysis takes into account the precise conditions at the specific prison in question and any unique health conditions suffered by the specific plaintiff.

In sum, because the Organizational Plaintiffs have "not alleged any information that would allow the Court to find that [they] ha[ve] the kind of leadership and financial structure that is closely tied to those of [their] members or that [their] members exert any control over the direction of the organization[s]," none of these entities have associational standing. *Heap v. Carter*, 112 F.Supp.3d 402, 418–19 (E.D. Va. 2015); *accord Viasat, Inc. v. F.C.C.*, 47 F.4th 769, 781–82 (D.C.C. 2022) (holding that because the plaintiff entity provided no basis to determine whether it had the indicia of a traditional membership association, it failed to meet its burden of proof of establishing standing); *Disability Advocates, Inc. v. New York Coalition for Quality Assisted Living, Inc.*, 675 F.3d 149, 158–59 (2d Cir. 2012) (explaining that "there is scant evidence in the record that the individuals with mental illness whom DAI purports to represent have the power to elect its directors, make budget decisions, or influence DAI's activities or litigation strategies," and thus holding that plaintiff entity failed to establish associational standing).

### B. The Organizational Plaintiffs' Eighth Amendment claim requires the participation of their individual "members" in the lawsuit.

"To satisfy the third prong, a party must show that 'the nature of the case does not require the

participation of the individual affected members as plaintiffs to resolve the claims or prayers for relief at issue.'" *Prison Just. League v. Bailey,* 697 F. App'x 362, 363 (5th Cir. 2017) (quoting *Friends for Am. Free Enter. Ass'n v. Wal–Mart Stores,* 284 F.3d 575, 577–78 (5th Cir. 2002)). "In particular, a party satisfies the third prong if its 'claims can be proven by evidence from representative injured members, without a fact-intensive-individual inquiry.' " *Id.* (quoting *Ass'n of Am. Physicians,* 627 F.3d at 552). However, "the general prohibition on a litigant's raising another person's legal rights is a judicially self-imposed limit on the exercise of federal jurisdiction, not a constitutional mandate." *Ass'n of Am. Physicians,* 627 F.3d at 551 (quoting *United Food & Commercial Workers' Union Local 751 v. Brown Grp., Inc.,* 517 U.S. 544, 557 (1996)) (internal citations, quotations, and brackets omitted). This inquiry therefore focuses on whether sufficient reasons exist to justify departing from the "background presumption . . . that litigants may not assert the rights of absent third parties." *Brown Grp.,* 517 U.S. at 556–57; *see, e.g., Friends for Am. Free Enter. Ass'n v. Wal–Mart Stores, Inc.,* 284 F.3d 575, 577 (5th Cir.2002) (rejecting associational standing because plaintiff's common law tortious interference claims were fact-specific to individual members).[3]

The Eighth Amendment's prohibition of cruel and unusual punishment "does not mandate comfortable prisons, but neither does it permit inhumane ones." *Ball v. LeBlanc,* 792 F.3d 584, 592 (5th Cir. 2015) (quoting *Farmer v. Brennan,* 511 U.S. 825, 832 (1994)). To plead an Eighth Amendment violation based on the conditions of an inmate's confinement, a plaintiff must allege conditions that "pos[e] a substantial risk of serious harm." *Farmer,* 511 U.S. at 834. The plaintiff must also allege that the defendant prison officials were deliberately indifferent to the inmate's health or safety. *Id.* A prison official acts with deliberate indifference when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn

---

[3] *See also Kan. Health Care Ass'n, Inc. v. Kan. Dept. of Soc. and Rehab. Services,* 958 F.2d 1018 (10th Cir. 1992) (distinguishing claims that could be adjudicated with "a cursory review" by the Court or "with minimal participation from individual [plaintiffs]" from those where a court would have to "undertake a detailed evaluation" of individual involvement).

that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Here, the possible claims of the Organizational Plaintiffs' "members" are not suitable to review *en masse* because they depend on fact-intensive inquiries on a case-by-case basis. *See, e.g., Ball v. LeBlanc*, 792 F.3d 584, 594 n.6 (5th Cir. 2015) ("[E]mphasiz[ing] . . . that the finding of substantial risk regarding a heat-related injury is tied to the *individual health conditions of these inmates*") (emphasis added); *see also Gates v. Cook*, 376 F.3d 323, 329 (5th Cir. 2004) (observing that the conditions at state prison systems are "factually intensive").

Regarding the objective component of the Organizational Plaintiffs' Eighth Amendment claim, their "members" are not all housed in the same TDCJ facility and therefore do not experience the same conditions of confinement or temperatures.[4] The Organizational Plaintiffs have not pled facts showing that all prisons provide the same remedial measures to address the risks of high heat. *See, e.g., Blackmon v. Garza*, 484 Fed. App'x 866, 872 (5th Cir. 2012) (distinguishing the conditions of Blackmon's dorm from the conditions of confinement at issue in *Gates* and emphasizing that the provision of water to Blackmon created a fact issue regarding whether remedial measures were adequate). Similarly, while some prisoners may be vulnerable to heat, others are young and healthy and are much less susceptible (as Plaintiffs concede). ECF 57, ¶¶ 43, 46–47, 53.[5] These various considerations frequently guide courts' analysis of prisoners' claims under the Eighth Amendment. Nevertheless, the Organizational Plaintiffs ask the Court to ignore any differences in the actual conditions of confinement and prisoner susceptibility to harm and urge that the absence of air-

---

[4] *See Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995) (affirming district court's grant of defendants' motion for summary judgment on plaintiff's Eighth Amendment claim, emphasizing: "[plaintiff] failed to present medical evidence of any significance nor has he identified a basic human need that the prison has failed to meet. While the temperature in extended lockdown may be uncomfortable, that alone cannot support a finding that the plaintiff was subjected to cruel and unusual punishment in violation of the Eighth Amendment").

[5] *See Blackmon*, 484 F. App'x. at 872 ("[E]ven though we conclude that the evidence presented at trial could potentially support a verdict in Blackmon's favor, we do not suggest that the remedial measures required by the *Gates* court are insufficient to address the risks of high heat and humidity, particularly with regard to prisons who are younger and healthier than Blackmon.").

conditioning, without more, supports their claim.

For example, in *Hinojosa v. Livingston*, the Fifth Circuit stressed the different variables that require individualized assessment when evaluating the objective component of an Eighth Amendment violation. 807 F.3d 657 (5th Cir. 2015). There, the Court began its analysis by emphasizing the condition of the plaintiff: "Defendants subjected Hinojosa to dangerous heat conditions in conscious disregard of the serious risk that the heat posed for prisoners who, like Hinojosa, suffered from certain medical conditions, took certain medications, and had recently been transferred from air-conditioned jails to non-climate-controlled facilities." *Id.* at 666. Next, the Court underscored the localized temperatures present in the plaintiff's unit and the defendant's policies: "[a]s to conditions posing a substantial risk of serious harm, the complaint alleges that temperatures in the Garza West Unit routinely exceeded 90°F, and even 100°F, and that Defendants' policies subjected inmates to these dangerous temperatures." *Id.* Lastly, the Court noted the defendant's policies: "The complaint also alleges that inmates are provided 'grossly inadequate amounts of water' to cope with the heat." *Id.* Although the Court found that the plaintiff's allegations "set forth conditions constituting a substantial risk of serious harm," it did so only as "*to inmates with medical conditions and prescriptions like Hinojosa's.*" *Id.* (emphasis added; citations omitted). The Organizational Plaintiffs' claim ignores each of these distinctions.

As to the subjective prong of an Eighth Amendment claim, it is not enough that Plaintiffs say Collier is aware of the risks that heat poses to prisoners. ECF 57, ¶¶ 205, 216. To assert a claim under the Eighth Amendment, Plaintiffs must show that Collier "subjectively believe[s] the measures they are taking are inadequate." *Valentine v. Collier*, 956 F.3d 797, 802 (5th Cir. 2020). Although Plaintiffs contend that the conditions across all TDCJ facilities are inadequate to the extent they do not provide air-conditioning to prisoners at all times during months when temperatures rise past 85 degrees Fahrenheit, ECF 57, ¶¶ 13, 90, 186, 197, they cannot contend that Collier is subjectively aware that

the condition at all TDCJ facilities and associated remedial measures are inadequate in any real sense without the participation of the individual "members" of the Organizational Plaintiffs.

Indeed, although it is well-established in the Fifth Circuit "that the Eighth Amendment guarantees inmates a right to be free from exposure to extremely dangerous temperatures without adequate remedial measures," *Hinojosa*, 807 F.3d at 669, air-conditioning is not a mandatory amenity. *Blackmon v. Garza*, 484 Fed. App'x 866, 872 n.6 (5th Cir. 2012) ("We also note that, like the *Gates* court, we do not suggest that air conditioning is mandatory to meet the requirements of the Eighth Amendment.").[6]  The Fifth Circuit has repeatedly rejected the notion that the Eighth Amendment requires air-conditioned prisons. Moreover, the Court repeatedly declined to establish any maximum temperate levels or requirements. *See Ball*, 792 F.3d at 599 (holding that a district court's injunction ordering air conditioning violated the PLRA because it "was unnecessary to correct the Eighth Amendment violation," as plaintiff's are not entitled to the most effective available remedy.); *Gates,* 376 F.3d at 339; *Hardwick v. Bowman*, No. 6:21CV201, 2023 WL 4056050, at *7 (E.D. Tex. Apr. 26, 2023), *report and recommendation adopted,* No. 6:21-CV-00201, 2023 WL 4054687 (E.D. Tex. June 16, 2023).

Thus, even to the extent Collier is generally aware that not all TDCJ prisons have air-conditioning during instances of high heat, that fact alone does not support the Organizational Plaintiffs' claim that Collier is subjectively aware of and has disregarded "an excessive risk to inmate health or safety," *Farmer,* 511 U.S. at 837, across all prisons and for all individual prisoners. Nor would the absence of air-conditioning from some TDCJ prisons support the Organizational Plaintiffs' allegation that Collier is subjectively aware that the remedial conditions across all TDCJ prisons are inadequate.

---

[6] *See also Ball,* 792 F.3d at 599 (approving remedies short of air-conditioning such as the diversion of cool air from prison staff areas into inmate areas, allowing inmates to access air conditioning during specified times, and the provision of cool daily showers, cold ice water, personal ice containers and fans).

Additionally, it is undisputed that these organizations are made up of some non-incarcerated persons. Even if the organizations had established they were made up of members representing merely currently-incarcerated "constituents", those individuals are bound by the Prison Litigation Reform Act ("PLRA"). Plaintiffs seek to bring an Eighth Amendment Conditions of Confinement claim against Collier on behalf of, "TDCJ prisoners who are being housed in inhumane conditions." ECF 48-1 at 5-7. Under the PLRA, Plaintiffs must exhaust their administrative remedies before filing suit. 42 U.S.C. § 1997e(a). And as the Second Circuit has held, the exhaustion requirement cannot be avoided merely by naming an organization as the plaintiff. *Green Haven Prison Preparative Meeting of Religious Soc'y of Friends v. New York State Dep't of Corr. & Cmty. Supervision*, 16 F.4th 67, 82 (2d Cir. 2021). Here, the claim and relief that the organizational plaintiffs request does in fact require participation of individual members. Moreover, individual member participation will require exhaustion of administrative remedies under the PLRA.

To the extent the Organizational Plaintiffs may attempt to analogize their associational standing claim to *Cole v. Collier* (previously *Yates v. Collier)*, in which the Fifth Circuit affirmed the district court's class certification for prisoners at the Wallace Pack Unit, such a comparison is inadequate to establish standing. 868 F.3d 354, 358 (5th Cir. 2017). There, the district court certified three classes of prisoners from among the Pack Unit's 1,400 inmates: (1) a general class, (2) a heat-sensitive subclass, and (3) a disability subclass. *Id.* 358–59. Class certification bears some similarities to associational standing in the sense that the claims of putative class members "must depend upon a common contention" that "must be of such a nature that is capable of class-wide resolution." *Wal-Mart Stores, Inc. v.* Dukes, 564 U.S. 338, 350 (2011).

In *Cole*, the defendants did not contest that the class members were all exposed to the same temperatures, that those temperatures were at times extreme in the summer months, or that absent mitigation measures inmates in the Pack Unit could be subject to a substantial risk of serious harm.

868 F.3d at 362. Instead, the defendants contested the courts' ability to decide the substantial-risk-of-harm question in one broad stroke of the proverbial brush, in light of the heat mitigation measures TDCJ provided and the age and health of each particular prisoner. *Id.* at 362–63. The Court nonetheless affirmed the district court's class certification on review of the lower court's fact-finding on a clearly erroneous standard "that even the youngest, healthiest, and most acclimatized inmates face a substantial threat of serious harm *despite* TDCJ's existing heat-mitigation measures." *Id.* at 363–64 (emphasis in original). As with commonality, the Court also affirmed the district court's finding that the general class and both subclasses met the standard for certification under Federal Rule of Civil Procedure 23(b)(2) because "[a]ll inmates, regardless of age or health, are subject to the *same* policy on climate control . . . , all have the *same* heat-mitigation measures available to them . . . , and all are (allegedly) harmed in essentially the *same* way . . . ." *Yates*, 868 F.3d at 368.

If *Cole* says anything that this Court can apply here, it is that the uniform conduct and conditions supporting class certification in *Cole* are not present here. Nonetheless, the Organizational Plaintiffs make the harder pitch that the Court should grant them associational standing even where it could not certify a class under Federal Rule of Civil Procedure 23(b)(2). The Organizational Plaintiffs' claim here elides each of these important variables to present a simple, though baseless, legal proposition: if air-conditioning is unavailable for some prisoners, some of the time, then the Organizational Plaintiffs may present the claims of those unnamed individual prisoners—regardless of whether the claim requires individualized fact-finding. However, while the prison conditions, facility policies, remedial measures, and prisoner susceptibility may support a claim in one instance, Plaintiffs' broad assertion that the absence of air-conditioning supports an Eighth Amendment claim, without more, is unsupported by the law of this circuit. *See supra Blackmon*, 484 F. App'x at 872 n.6; *Ball*, 792 F.3d at 599; *Gates,* 376 F.3d at 339; *Hardwick,* 2023 WL 4056050, at *7. Because the claims that the Organizational Plaintiffs seek to raise are not suitable for consideration without the

participation of the individuals on whose behalf they purport to bring them, the Court therefore should find that they lack associational standing.

## IV.    Plaintiffs' Claims are Not Ripe.

Plaintiffs' claims are likewise jurisdictionally defective because they are not ripe. Plaintiffs' preemptive challenge to the possible future conditions of state prisons is not ripe for adjudication. Ripeness is "a constitutional prerequisite to the exercise of jurisdiction." *Shields v. Norton*, 289 F.3d 832, 835 (5th Cir. 2002).  "A court should dismiss a case for lack of 'ripeness' when the case is abstract or hypothetical." *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 833 F.2d 583, 586 (5th Cir. 1987). "The key considerations are 'the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" *Id.* (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49 (1967).

Like standing, the doctrine of ripeness "separates those matters that are premature because the injury is speculative and may never occur from those that are appropriate for judicial review." *United Transp. Union v. Forster*, 205 F.3d 851, 857 (5th Cir. 2000). "A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. United States*, 523 U.S. 296, 300 (1998) (citation omitted). In determining whether an injury contingent upon future events "is sufficiently likely to happen to justify judicial intervention" in the form of declaratory or injunctive relief, the court must consider "the likelihood that these contingencies will occur." *Orix Credit Alliance v. Wolfe*, 212 F.3d 891, 897 (5th Cir. 2000). The ripeness inquiry "focuses on whether an injury that has not yet occurred is sufficiently likely to happen to justify judicial intervention." *Id.* (citing *Chevron U.S.A., Inc. v. Traillour Oil Co.,* 987 F.2d 1138, 1153 (5th Cir.1993)).

Ripeness is particularly important when constitutional questions are at stake because courts should avoid ruling on constitutional matters unless it is absolutely necessary to confront them.

*Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 346–48 (1936) (Brandeis, J., concurring); *Poe v. Ullman*, 367 U.S. 497, 503 (1961); *Ruiz v. Estelle*, 679 F.2d 1115, 1158 (5th Cir. 1982). Plaintiffs' claims are not ripe for the same reasons Plaintiffs lack standing outlined above: their anticipated injury is too hypothetical and speculative, and relies on too many contingencies for an unknown, unparticularized inmate population. Therefore, Plaintiffs' Amended Complaint should be dismissed under Fed. R. Civ. P. 12(b)(1) because the case is not ripe for adjudication.

## V.     Plaintiffs Fail to State Claims upon which Relief Can be Granted.

Plaintiffs each have asserted separate § 1983 claims against Collier—one by Tiede and one by the Organizational Plaintiffs. From the face of the pleadings, these claims are deficient as a matter of law and should be dismissed because Plaintiffs fail to identify a deprivation of a federal right. *Phelan v Norville*, 460 F. Appx. 376, 381 (5th Cir. 2012).

Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss for failure to state a claim upon which relief can be granted. To avoid dismissal, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While courts must accept all factual allegations as true, they "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.,* 407 F.3d 690, 696 (5th Cir. 2005).

As outlined above, to plead an Eighth Amendment violation based on the conditions of an inmate's confinement, a plaintiff must allege both that he has been subjected to conditions of confinement that "pos[e] a substantial risk of serious harm," *Farmer,* 511 U.S. at 834, and that defendant prison officials were deliberately indifferent to the inmate's health or safety. *Id.*

An organization can bring suit to seek relief for itself. *Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*, 627 F.3d 547, 550 (5th Cir. 2010). That same organization can also seek equitable relief on behalf of its members, subject to certain constraints (discussed *supra*). *Id.* Here, Organizational Plaintiffs attempt to do the latter. ECF 57, ¶¶ 210–223. Specifically, they contend, *inter alia*, that "As a proximate result of Mr. Collier's unconstitutional policies, practices, acts, and omissions, people in prison have suffered and will continue to suffer immediate and irreparable injury, including physical injury, risk of physical injury, and risk of death." ECF 57, ¶ 221. In essence, the Organizational Plaintiffs purport to represent ***all*** TDCJ inmates. ECF 57, ¶¶ 18–22.

To state a claim for relief based on prison conditions, the Organizational Plaintiffs must plead facts that, if true, show both that their members are at a substantial risk of serious harm *and* that Collier was deliberately indifferent to their health and safety. *Farmer,* 511 U.S. at 834. Organizational Plaintiffs have shown neither. Instead, the Organizational Plaintiffs attempt to piggyback off Tiede's claims and bypass the class certification process so that they might institute systemic change to the state's prisons, despite not having a valid claim themselves.

The harm that both Tiede and the Organizational Plaintiffs allege is that *some* TDCJ prison housing units can reach temperatures that *could* pose a risk to the health and safety of inmates. *See, for example*, ECF 57, ¶ 43 ("While some people who have medical conditions or take certain medications may be less able to compensate for excessive environmental heat through vasodilation, even young healthy people are vulnerable to heat related illness and death."). But while Tiede has alleged specific facts about his experience in TDCJ prisons and how heat has allegedly harmed his physical health, ECF 57, ¶¶ 131–141, the Organizational Plaintiffs have done no such thing. Instead, they rely on generalized statements referring to a general risk of harm posed to all prisoners by "high apparent temperatures." ECF 57, at ¶¶ 211, 213. Generalized and vague assertions do not support a claim

because the question of whether prison conditions pose a "substantial risk" to an individual is a fact-intensive one. *See Ball*, 792 F.3d at 594 n.6; *see also Gates*, 376 F.3d at 329.

For example, in *Ball v. LeBlanc*, 792 F.3d 584 (5th Cir. 2015), the Fifth Circuit affirmed a district court's finding that the heat within a prison housing area posed a substantial risk of serious harm to inmates, where the heat index ranged from 81.5° Fahrenheit to 107.79° Fahrenheit and surpassed 100° Fahrenheit on five or more days during a roughly two-week period. 792 F.3d at 590–91, 592–94. To reach this conclusion, however, the Court had actual evidence pertaining to how specific individuals had been affected by the heat in conjunction with prison heat-remediation policies; it did not rely on vague statements alleging generalized harm.

But the Organizational Plaintiffs have failed to allege any facts regarding the conditions to which their individual "members" are exposed, instead citing general statistics about heat in Texas prisons and how it has affected some prisoners in the past. ECF 57, ¶¶ 24–54, 115–130. They do not state how any current individual prisoners have been affected by the heat, or how prison staff have attempted to remediate those instances of alleged high heat. It is entirely plausible that each of the Organizational Plaintiffs' "members" receive proper mitigating and remedial care when exposed to high-heat conditions. But it is impossible for the Court to make any such determination because the Organizational Plaintiffs have not pled facts which show that their members are at a substantial risk of harm.

Moreover, to plead a § 1983 claim for violation of the Eighth Amendment based on prison conditions, the Organizational plaintiffs must plead facts to show that Collier knew of and subsequently disregarded excessive risks to an inmate's health and well-being. *Farmer,* 511 U.S. at 834. While they have pled that Collier is "aware that extreme heat in the facilities' housing areas poses substantial risk of serious injury to prisoners", ECF 57, ¶ 216, they have not pled facts or otherwise

made any allegation that Collier is aware that overarching TDCJ policies regarding heat mitigation are inadequate and that he deliberately disregards this fact. *See id.*

Plaintiffs avoid addressing the high threshold they must prove to succeed on a deliberate indifference claim. Instead, Plaintiffs focus almost entirely on the risk of heat-related illness or injury caused by high temperatures as an emotional plea for sweeping reform, arguing that because someone might suffer a heat-related injury, Collier is deliberately indifferent unless he immediately implements the most effective solution. But the deliberate indifference standard does not turn on results. If it did, then any prison with a heat-related illness could be guilty of deliberate indifference. That certainly is not the standard. *See Shepherd v. Dallas County*, 591 F.3d 445, 454 (5th Cir. 2009) ("[I]solated examples of illness, injury, or even death, standing alone, cannot prove that conditions of confinement are constitutionally inadequate."). This is "an extremely high standard to meet," *Domino v. TDCJ*, 239 F.3d 752, 756 (5th Cir. 2001), and it "exists wholly independent of an optimal standard of care." *Gobert v. Caldwell*, 463 F.3d 339, 349 (5th Cir. 2006).

A prison official's failure to avoid harm or eliminate a risk does not violate the Eighth Amendment. To be liable for deliberate indifference, the official must "*know of* and *disregard* an excessive risk to inmate health and safety." *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999) (quoting *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976)) (emphasis added). "[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. Actions and decisions that are merely inept, ineffective, or negligent do not constitute deliberate indifference. *Thompson v. Upshur Cty.,* 245 F.3d 447, 458-59 (5th Cir. 2001) ("[D]eliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm."). And complaints that policies or practices were inadequate to prevent harm—even if true—are not

sufficient for liability. *See, e.g.*, *Brumfield v. Hollins*, 551 F.3d 322, 328 (5th Cir. 2008) (while jail's policies "lacked the specific directives Brumfield would have preferred to have been in place, policies nonetheless existed"); *Delaughter v. Woodall*, 909 F.3d 130, 136 (5th Cir. 2018) ("mere disagreement with one's medical treatment is insufficient to show deliberate indifference"). Even if the threatened harm is not averted, "prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause." *Farmer*, 511 U.S. at 845; *see also David v. Hill*, 401 F. Supp. 2d 749, 759 (S.D. Tex. 2005); *Baughman v. Bowman*, No. 6:20cv560, 2024 U.S. Dist. LEXIS 53386, at *27-28 (E.D. Tex. Feb. 7, 2024) (citing *Hernandez ex rel. Hernandez v. Tex. Dep't of Protective & Regulatory Servs.*, 380 F.3d 872, 883 (5th Cir. 2004) (internal quotation marks omitted).

Here, Plaintiffs fall woefully short of demonstrating a likelihood of proving that Collier has acted with the requisite wanton and reckless disregard. The Organizational Plaintiffs were required to show that specific individuals at TDCJ's prisons have been harmed by prison conditions, that inadequate remedial measures were taken, and that Collier was aware of and disregarded policies that led to this alleged harm. They did not do so. The Organizational Plaintiffs' allegations are therefore conclusory, which is not enough to survive a motion under Rule 12(b)(6) and the Court should dismiss their claims. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) ("To avoid a dismissal for failure to state a claim, a plaintiff must plead specific facts, not mere conclusory allegations.").

## Conclusion and Prayer

For the foregoing reasons, the Court should grant Collier's motion to dismiss and dismiss Plaintiffs' claims against him.

Respectfully submitted,

**Ken Paxton**
Attorney General of Texas

**Brent Webster**
First Assistant Attorney General

23

**James Lloyd**
Deputy Attorney General for Civil Litigation

**Shanna E. Molinare**
Assistant Attorney General
Chief, Law Enforcement Defense Division

*/s/ Abigail K. Carter*
**Abigail K. Carter**
Assistant Attorney General
Texas State Bar No. 24126376
Abigail.Carter@oag.texas.gov
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711-2548
(512) 463-2080 / Fax (512) 370-9814

**ATTORNEYS FOR DEFENDANT**

**Certificate of Service**

I, Abigail K. Carter, Assistant Attorney General of Texas, certify that a correct copy of the foregoing has been served on all counsel of record on May 23, 2024, using the Court's electronic filing system.

*/s/ Abigail K. Carter*
**Abigail K. Carter**
Assistant Attorney General

24