**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| BERNHARDT TIEDE, II; TEXAS PRISONS COMMUNITY ADVOCATES; DISABILITY RIGHTS TEXAS; BUILD UP, INC. a/k/a LIONESS: JUSTICE IMPACTED WOMEN'S ALLIANCE; and COALITION FOR TEXANS WITH DISABILITIES, | § § § § § § § § | |
| Plaintiffs, | § | Civil Action No.: 1:23-cv-01004-RP |
| v. | § § | |
| BRYAN COLLIER, in his official capacity as Executive Director of Texas Department of Criminal Justice, | § § § § | |
| Defendant. | § § § § | |

**PLAINTIFFS' RESPONSE TO DEFENDANT COLLIER'S AMENDED 12(b)(1)**
**MOTION TO DISMISS**

**SUMMARY OF THE ARGUMENT**

Defendant Collier's amended 12(b)(1) motion to dismiss Plaintiffs' complaint should be denied for four reasons.

First, it is well-established that state officials are not entitled to sovereign immunity under *Ex parte Young* where Plaintiffs seek only prospective relief from ongoing violations of constitutional law, as is the case here. Sovereign immunity thus does not apply.

Second, Plaintiffs have sufficiently alleged associational standing for the Organizational Plaintiffs and continued standing for Plaintiff Tiede. (Organizational standing is also proven by evidence in Plaintiffs' reply in support of the preliminary injunction.) The Organizational Plaintiffs have members or constituents with standing to sue, the suit is germane to the organizations' purposes (a point Mr. Collier admits), and individual participation is not required. Nor are Mr.

1

Tiede's claims moot, given Plaintiffs' allegations that TDCJ can subject him to extreme heat at any time, if this Court's injunction is lifted.

Third, the Prison Litigation Reform Act (PLRA) does not bar the suit by Organizational Plaintiffs, as they are not persons subject to the exhaustion requirements of the Act.

Fourth, Plaintiffs' injuries are ripe and their need for relief is imminent under the blazing Texas summer sun. Plaintiffs face current, real, and substantial risks of serious harm from extreme heat, if this Court does not enjoin Mr. Collier to maintain safe indoor temperatures in all TDCJ facilities.

## LEGAL STANDARD

The standard for a Rule 12(b)(1) motion depends upon whether the motion asserts a "facial attack" on the pleadings or a "factual attack" supported by evidence. Here, Mr. Collier's "attack is facial because [defendant] has not filed any supporting affidavits, testimony, or other evidentiary materials." *Braatz, L.L.C. v. Red Mango FC, L.L.C.*, 642 Fed. App'x 406, 409 (5th Cir. 2016) *citing Irwin v. Veterans Admin.*, 874 F.2d 1092, 1096 (5th Cir. 1989). Accordingly, similar to a Rule 12(b)(6) motion, the Court looks to the complaint and presumes its allegations are true to determine jurisdiction. *See id.*; *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). "[A] motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

## ARGUMENT

I.    **THE COURT HAS JURISDICTION OVER PLAINTIFFS' CLAIMS UNDER *EX PARTE YOUNG*.**

Mr. Collier is not entitled to sovereign immunity, as Plaintiffs seek only prospective relief from an ongoing constitutional violation. ECF No. 57, p. 58. Under *Ex parte Young,* 209 U.S. 123 (1908), Eleventh Amendment sovereign immunity can be "overcome when a suit 'seeks

prospective…relief from a state actor, in [his] official capacity, based on an alleged ongoing violation of the federal constitution' or other federal law." *Portee v. Morath*, 683 F. Supp. 3d 628, 635 (W.D. Tex. 2023) (Pitman, J.) (quoting *K.P. v. LeBlanc*, 729 F.3d 427, 439 (5th Cir. 2013);[1] citing *McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 413–14 (5th Cir. 2004)). The *Ex parte Young* fiction allows suits against state officials in their official capacities, "because a sovereign state cannot commit an unconstitutional act, a state official enforcing an unconstitutional act is not acting for the sovereign state and therefore is not protected by the Eleventh Amendment." *Okpalobi v. Foster*, 244 F.3d 405, 411 (5th Cir. 2001). "In determining whether the *Ex parte Young* doctrine avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry' into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Portee*, 683 F. Supp. 3d at 635-36 (quoting *Verizon Md., Inc. v. Public Serv. Com'n of Md.*, 535 U.S. 635, 645 (2002)). Plaintiffs' amended complaint satisfies both requirements.

First, Plaintiffs' amended complaint alleges ongoing violations of federal law. Plaintiffs allege that Mr. Collier is violating the rights of Plaintiff Tiede and all TDCJ prisoners (including members of the Organizational Plaintiffs), who are exposed to extreme heat in uncooled prisons to be free from cruel and unusual punishment. ECF No. 57, pp. 53–58, ¶¶ 198–222. Specifically, Plaintiffs identify that the "Eighth Amendment guarantees inmates a right to be free from exposure to extremely dangerous temperatures without adequate remedial measures" and allege that Mr. Collier nonetheless and with deliberate indifference exposes them to extreme heat despite being

---

[1] *K.P.* was a case brought, like Plaintiffs' case here, under 42 U.S.C. § 1983, yet the Fifth Circuit found that the Eleventh Amendment did not bar the suit under *Ex parte Young*. 729 F.3d at 433, 440. While Plaintiffs do not seek damages, to the extent Mr. Collier argues their claims are barred by virtue of being brought under 42 U.S.C. § 1983, he is incorrect. *See* ECF No. 76, p. 4.

"aware that extreme heat in TDCJ facilities' housing areas poses a substantial risk of serious injury to inmates." *Id.* at pp. 54-58, ¶¶ 201, 203-206, 211-212, 215-220 (quoting *Yates v. Collier*, 868 F.3d 354, 360 (5th Cir. 2017); *Hinojosa v. Livingston*, 807 F.3d 657, 669 (5th Cir. 2015)). This violation of Mr. Tiede's rights and the rights all TDCJ prisoners in uncooled housing is ongoing: Mr. Tiede and other TDCJ prisoners like him housed in cooled areas but subject to being rehoused in unairconditioned facilities remain at substantial risk of exposure to extreme and injurious heat absent the prayed-for injunction while TDCJ prisoners currently housed in uncooled facilities are at this very moment being exposed to the extreme and steadily rising Texas summer heat and will continue to be unless this Court enjoins Mr. Collier from failing to maintain safe indoor temperatures in all TDCJ facilities. ECF No. 57, pp. 54–58, ¶¶ 202, 204, 206, 209, 212–214, 216, 218, 219, 221–222; *see also id.* at pp. 5, 15, 40, 46, 49, 52, ¶¶ 17, 54, 137, 164, 180, 196.

Second, Plaintiffs' amended complaint unquestionably seeks only prospective relief against Mr. Collier in his official capacity. Specifically, Plaintiffs ask the Court to "remedy ongoing violations of law," declare TDCJ's *current* Heat Policy and housing conditions to be unconstitutional, and enjoin Mr. Collier to maintain safe indoor temperatures in all TDCJ facilities moving forward. *Id.* at pp. 58, ¶¶ A–D. This is precisely the prospective relief *Ex parte Young* authorizes. *See Williams on Behalf of J.E. v. Reeves*, 954 F.3d 729, 738 (5th Cir. 2020) (finding that a declaratory judgment that a section of the Mississippi constitution "is violating" federal law is prospective relief available under *Ex parte Young*.).

As the Amended Complaint fits squarely within the scope of relief against a state actor that is consistently permitted under *Ex parte Young* and its progeny, Mr. Collier is not entitled to sovereign immunity, and this Court has jurisdiction.

## II.    THE ORGANIZATIONAL PLAINTIFFS HAVE SUFFICIENTLY ALLEGED STANDING.

The Organizational Plaintiffs have standing.

An association has standing to bring suit on behalf of its members when: (1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *Assn. of Am. Physicians & Surgeons, Inc. v. Texas Med. Bd.*, 627 F.3d 547, 550 (5th Cir. 2010) (quoting *Hunt v. Wash. St. Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977)). Traditional membership organizations are not required to allege any more than these three elements to establish standing, though non-traditional membership organizations can additionally be required to allege their constituents have "indicia of membership." *See Hunt*, 432 U.S. at 343-44; *La Union del Pueblo Entero v. Abbott,* 614 F. Supp. 3d 509, 526 (W.D. Tex. 2022) (Rodriguez, J.).

The presence of just one organizational plaintiff with standing to sue satisfies Article III's case-or-controversy requirement. *Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*, 547 U.S. 47, 52 n.2 (2006); *see also La Unión del Pueblo Entero v. Abbott*, -- F. Supp. 3d --, No. 5:21-cv-0844-XR, 2023 WL 8263348, *12 n.17 (W.D. Tex. Nov. 29, 2023) (Rodriguez, J.).

A.    **The Organizational Plaintiffs are sufficient membership organizations for associational standing.**

1.    *Build Up, Inc., a.k.a. Lioness, is a traditional membership organization.*

It is undisputed that Plaintiff Lioness alleges it is a traditional membership organization. *See* ECF No. 57, p. 6, ¶ 19; ECF No. 76, p. 8. Though Mr. Collier insists that Plaintiffs must also allege specific, additional "indicia of membership," ECF No. 76, pp. 9-11, "[d]emonstration of indicia of membership . . . is only required when the plaintiff association is not 'a traditional voluntary organization.'" *La Union del Pueblo Entero*, 614 F. Supp. 3d at 526; *see also Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 201 (2023) (where an organization has "identified members and represents them in good faith, our cases do

not require further scrutiny into how the organization operates."). None of the cases cited by Mr. Collier hold otherwise.[2] Thus, as long as Plaintiff Lioness has sufficiently alleged facts to satisfy the three-part test for associational standing, which it has as discussed below, the Court is not required to find any of the remaining organizations have sufficient indicia of membership.

> 2.    *The remaining Organizational Plaintiffs have sufficient "indicia of membership."*

In any event, Plaintiffs have alleged sufficient facts to show Organizational Plaintiffs Texas Prison Community Advocates ("TPCA"), Texas Citizens United for Rehabilitation of Errants, Inc. ("TX C.U.R.E."), and the Coalition for Texans with Disabilities ("CTD") have standing to bring claims on behalf of their members. Courts evaluating associational standing first evaluate whether the organization represents a "specialized segment" of the population who is  the "primary beneficiary of its activities." *Hunt*, 432 U.S. at 344. This "specialized segment" can specifically include constituents whose interests are protected by the organization but who did not join voluntarily, as in a traditional membership organization. *See id*. at 345 (organization had associational standing even where its members were compelled to join); *Doe v. Stincer*, 175 F.3d

---

[2] *See* ECF No. 76, pp. 9, 11 (citing *Ass'n for Retarded Citizens of Dall. v. Dall. Cnty. Mental Health & Mental Retardation Ctr. Bd. of Trs.*, 19 F.3d 241, 244 (5th Cir. 1994) (federally funded program with clients, as opposed to traditional members, required to show indicia of membership); *Disability Advocates, Inc. v. New York Coal. for Qual. Assisted Living, Inc.*, 675 F.3d 149, 153 (2d Cir. 2012) (same); *Students for Fair Admissions, Inc. v. Univ. of Texas at Austin*, 37 F.4th 1078, 1084 (5th Cir. 2022) (traditional membership organization); *Hunt*, 432 U.S. at 344–45 (same); *Funeral Consumers Alliance, Inc. v. Service Corp. Intern.*, 695 F.3d 330, 344 n.9 (5th Cir. 2012) (nontraditional membership organization required to show indicia of membership); *Friends of the Earth, Inc. v. Chevron Chemical Co.*, 129 F.3d 826, 827–28 (5th Cir. 1997) (organization with bylaws requiring formal membership criteria be established but none had been required to show indicia of membership for its purported members); *Heap v. Carter*, 112 F. Supp. 3d 402, 419 (E.D. Va. 2015) (organization did not even allege who its members were for court to identify whether it was a traditional membership organization); *Viasat, Inc. v. F.C.C.*, 47 F.4th 769, 781–82 (D.D.C. 2022) (non-traditional membership association did not meet indicia of membership where court could not even tell how organization related to purported members)).

879, 886 (11th Cir. 1999) (organization protecting and enforcing the rights of "individuals with mental illness" had associational standing); *Or. Adv. Cntr. v. Mink*, 322 F.3d 1101, 1111 (9th Cir. 2003) (organization had associational standing to represent all "incapacitated criminal defendants" confined in Oregon jails); *Adv. Cntr. for Elderly & Disabled v. Louisiana Dept. of Health & Hosps.*, 731 F. Supp. 2d 583, 596 (E.D. La. 2010) (organization that advocated for rights of all persons with mental illness in the state of Louisiana had associational standing to assert claim on behalf of mentally ill jail detainees).

Next, courts generally look to whether an organization's purported members have "indicia of membership," considering things like whether they "(1) elect the organization's leaders, (2) serve in the organization's leadership, (3) finance the organization's activities, (4) associate voluntarily with the organization, [or] (5) provide sworn testimony of membership,"[3] though an organization need not satisfy all five elements to have associational standing. *Univ. of Texas at Austin*, 37 F.4th at 1084 n.7 (citing *Hunt*, 432 U.S. at 344–45; *Funeral Consumers All., Inc.*, 695 F.3d at 344 n.9). Instead, an organization need only have enough of these indicia "to satisfy the purposes that undergird the concept of associational standing: that the organization be sufficiently identified with and subject to the influence of those it seeks to represent as to have a 'personal stake in the outcome of the controversy.'" *Mink*, 322 F.3d at 1111 (quoting *Vill. Of Arlington Heights v. Metro. Hous. Dev. Corp.,* 429 U.S. 252, 261 (1977); *see also Doe*, 175 F.3d at 886 (finding sufficient indicia of membership for organization whose members did not elect its leaders or finance its activities but "possess the means to influence the priorities and activities the

---

[3] At the motion to dismiss stage, sworn testimony is not required. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 563 (1992). Even so, evidence is submitted with Plaintiffs' reply supporting the preliminary injunction.

[organization] undertakes" such that organization "provides the means by which [the members] express their collective views and protect their collective interests.").

Here, each of the remaining Organizational Plaintiffs meet this standard. First, TPCA represents "people incarcerated in TDCJ's custody" and their families and its "constituents consist of the roughly 130,000 people incarcerated in the Texas state prison system, including every person incarcerated in every TDCJ facility that lacks appropriate temperature control." ECF No. 57, p. 5, ¶ 18. This specialized segment of the population benefits from TPCA's work connecting them and their families to resources, spreading awareness of confinement conditions, and advocacy for humane conditions in Texas prisons, including their advocacy with state legislators and work to "promote policies that improve their incarcerated constituents' quality of life." *Id*. TPCA's constituents have indicia of membership, as TPCA maintains "constant communication with its incarcerated constituents" and those constituents and voluntary "team members" "drive the policy goals of the organization." *Id*.

Second, TX C.U.R.E. serves "incarcerated individuals and their families" in Texas by "provid[ing] those who are incarcerated with resources they need in and out of prison," connecting them to resources, spreading awareness of confinement conditions, and advocating for the advancement of human conditions in Texas prisons. *Id*. at pp. 6–7, ¶ 20. Its constituents who benefit from its activities "consist of the roughly 130,000 people incarcerated in the Texas state prison system, including almost 8,000 Veterans, and every person incarcerated in every TDCJ facility that lacks appropriate temperature control." *Id.* Its indicia of membership are apparent in the membership of its Board and its ongoing and constant communication with constituents currently incarcerated in Texas prisons. Specifically, TX C.U.R.E.'s Board of Directors includes formerly incarcerated members as well as currently incarcerated constituents' family members. *Id*.

Its staff "engages in constant direct and indirect communication with its incarcerated constituents throughout all of Texas prisons, as well as their family members seeking help with horrendous living conditions in TDCJ facilities." *Id*. These communicated constituent needs "drive the policy goals" of TX C.U.R.E., including its advocacy regarding unconstitutional health conditions. *Id*.

Finally, and as several courts have already determined, CTD has associational standing to represent Texans with disabilities. *See id*. at pp. 7–8, ¶ 21; *Steward v. Abbott*, 189 F. Supp. 3d 620, 631-32 (W.D. Tex. 2016) (Garcia, J.) (CTD had associational standing to bring suit against State of Texas on behalf of Medicaid beneficiaries with intellectual disabilities); *Richardson v. Tex. Sec'y of State*, No. SA-19-cv-000963-OLG, 2019 WL 10945422, *6 (W.D. Tex. Dec. 23, 2019) (Garcia, J.) (CTD had associational standing to bring claim on behalf of disabled Texas voters); *Coalition of Texans with Disabilities v. Smith*, No. 03-99-000640-CV, 1999 WL 816734 (Tex. App.—Austin Oct. 14, 1999) (unpub.) (CTD had associational standing to assert claim on behalf of Texans with mobility impairments prevented from accessing religious buildings.). Plaintiffs allege that approximately 52,000 Texas prisoners, including those kept in uncooled areas and subject to extreme heat, have disabilities, making them constituents of CTD. ECF No. 57, pp. 7–8, ¶ 21. CTD's "governmental advocacy, public awareness activities," "statewide initiatives that affect the disability community," advocacy "for policies that protect the well-being, health, and safety," and promotion of "policies related to mitigating the extreme heat in Texas prisons" benefit "Texans with disabilities…including those currently incarcerated in TDCJ facilities." *Id.*. CTD's indicia of membership includes its bBard, which is selected from its members, and its members' financial support of the organization. *Id*.

**B.    Individual members of each Organizational Plaintiff satisfy the three-part test for standing.**

As Mr. Collier correctly identifies, the Organizational Plaintiffs are not required to "name names" and identify specific members by name at this stage of proceedings to have standing. ECF No. 76, p. 10 (citing *Hancock Cnty. Bd. of Sup'rs v. Ruhr*, 487 F. App'x 189, 198 (5th Cir. 2012) (unpub.)). Instead, they must simply allege that one of their members would have standing to sue in their own right. *Id*. Each has done so.

Each Organizational Plaintiff identifies that it represents numerous TDCJ prisoners currently exposed to extreme heat in TDCJ's unairconditioned prison housing, as well as those at risk of being moved into unairconditioned housing at any time. ECF No. 57, pp. 5–8, 56, ¶¶ 18–21, 213. Plaintiffs' Amended Complaint details how TDCJ prisoners, including past members of their organizations, have suffered harm from extreme heat,[4] and how every member of these organizations currently housed in an unairconditioned TDCJ facility is at risk of heat-induced injury or death from extreme heat. *Id*. at pp. 8–18, ¶¶ 24–65. These individuals satisfy the tripartite test for Article III standing: that (1) they have suffered an injury in fact, (2) that is traceable to Mr. Collier's conduct, (3) that will be redressed by a favorable decision. *See E.T. v. Paxton*, 41 F.4th 709, 714 (5th Cir. 2022) (citing *Lujan*, 504 U.S. at 560–61).

*1.    Plaintiffs allege an injury in fact.*

To satisfy injury in fact, Plaintiffs must allege an injury that is "concrete, particularized, and actual or imminent." *Crawford v. Hinds Cnty. Bd. of Supervisors*, 1 F.4th 371, 375–376 (5th

---

[4] *See, e.g.*, ECF No. 57, p. 19, ¶ 69 (identifying 22 prisoners by name who were constituents, at minimum, of TX C.U.R.E., and at least half of them were disabled, making them CTD constituents); *Id*. at p. 27, ¶ 101 (describing the death of the son of Tona Southards-Naranjo, a constituent of, at minimum, TCPA and TX C.U.R.E.); *Id*. at p. 32, ¶¶ 120, 123 (describing the extreme suffering experienced by Marcie Marie Simmons, a member of Lioness).

Cir. 2021) (finding the possibility that plaintiff would be called for and excluded from jury service in the future was sufficient to establish standing, as plaintiff had been previously called for jury duty twice). "For a threatened future injury to satisfy the imminence requirement, there must be at least a 'substantial risk' that the injury will occur." *Id*. Here, the Amended Complaint alleges that temperatures inside Texas prisons are dangerously high each summer.[5] *See* ECF No. 57, pp. 8–15, 31–39, ¶¶ 24–54, 115–130. "[A]pproximately 85,000 of the roughly 130,000 TDCJ inmates currently lack air conditioning in their living areas." *Id*. at p. 2, ¶ 3. During the summer months, "those units routinely reach 100 Fahrenheit or higher" and the problem is only getting worse, with temperatures inside TDCJ units last summer reaching 149 Fahrenheit. *Id.* at ¶ 4. In Texas prisons without air conditioning, "a one-degree increase above 85 Fahrenheit corresponds to a 0.7% increase in the risk of mortality." *Id.* at p. 29, ¶ 89. And an "extreme heat day"—defined as a day above the 90th percentile heat index for the prison location—"spikes that number up to a 15.1% increase in the risk of mortality." *Id*. at p. 25, ¶ 90.

Because "[t]he overwhelming majority of prisons (roughly 70%) in the Texas Department of Criminal Justice system lack air conditioning in the inmate housing units," *Id*. at p. 2, ¶ 3, *"[a]ll* prisoners are similarly subjected to TDCJ's policy and practice of failing to regulate high apparent indoor temperatures in the majority of indoor housing areas"—where any prisoner may "be moved to at any time under TDCJ policy."[6] *Id*. at p. 56, ¶ 213 (emphasis added). The incarcerated members

---

[5] Of course, Mr. Collier and TDCJ know this. *See* ECF No. 57, pp. 19–31, ¶¶ 66–114.

[6] This case is thus distinguishable from *Summers v. Earth Island Institute et al*, 555 U.S. 488, 497 (2009), which is cited by Mr. Collier. ECF No. 76, p. 11. There, the Sierra Club asserted one of its' members *might* decide *one day* to go to a particular area of land managed by the United States Forest Service where they *might* have their interest in viewing flora and fauna injured. *Summers*, 555 U.S. at 494. As it was "no more than conjecture" that any member would find themselves in one of the limited areas of land affected by the Forest Service's plan, those plaintiffs

*(Footnote cont'd on next page)*

and constituents are injured and at risk every summer by the extreme temperatures and TDCJ's refusal to mitigate the heat, as many of them suffer from heat-induced illnesses, such as heat stroke, heat exhaustion, heat rash, nausea, and vomiting—just to name a few. *Id.* at pp. 1–2, 31–39, 58, ¶¶ 1–4, 115–130, 222. The threat of injury to these incarcerated constituents and members is real and immediate as summer approaches and they remain in TDCJ facilities that lack air conditioning.

2.    *Plaintiffs' alleged injury is traceable to Mr. Collier's conduct.*

Plaintiffs' injuries are traceable to Mr. Collier, and he does not argue otherwise. *See* ECF No. 76, pp. 8–11. As the Executive Director for TDCJ, Mr. Collier "is responsible for all TDCJ policies, and is the commanding officer of all correctional officers, guards, and TDCJ employees and contractors." ECF No. 57, p. 8, ¶ 23. By law, he "is responsible for protecting the constitutional rights of all persons held in TDCJ custody." *Id.* Mr. Collier "know[s] that the extreme heat will continue to torture, injure, and kill people, but steadfastly refuse to cool [TDCJ] prisons." *Id.* at p. 43, ¶ 152. He has nevertheless refused "to provide safe housing areas that protect inmates from exposure to extreme heat, which annually causes deaths and injuries." *Id.* at p. 57, ¶ 218. His deliberate indifference "puts prisoners at substantial risk of serious bodily injury including, but not limited to, heat stroke, heat cramps, and heat exhaustion, as well as the myriad symptoms associated with these conditions." *Id.* at p. 57, ¶ 219. Without injunctive relief, Mr. Collier "will continue the same perilous practices and conduct, disregarding the Constitution, and endangering the lives and the welfare of current and future prisoners, causing every person in hot prison units

---

did not establish an injury. *Id.* Here, Plaintiffs are *already experiencing* extreme heat or are housed in TDCJ facilities where they could be moved out of airconditioning at any time under TDCJ policies. ECF No. 57, p. 56, ¶ 213. As Mr. Tiede's experience demonstrates, under TDCJ's current policies, even prisoners who suffer serious injury can be placed back into uncooled housing and find themselves again exposed to injurious and torturous heat. *See, e.g., id.* at p. 40, ¶ 135.

to suffer each summer." *Id*. at p. 58, ¶ 222.

### 3.    *Plaintiffs' injury will be redressed by a favorable decision.*

Plaintiffs' injuries will be redressed by a favorable decision in this case. This action seeks injunctive and declaratory relief that would require TDCJ to maintain its housing units and occupied areas at temperatures between 65° to 85° Fahrenheit. *Id*. at p. 58, ¶ 223(C). Maintaining these temperatures via air-conditioning would redress the Organizational Plaintiffs' incarcerated members and constituents' injuries. *Id*. at pp. 48–53, ¶¶ 177–197. Indeed, as Dean Williams, the former Executive Director of the Colorado Department of Corrections, has stated: "Cooling prisons to safe temperatures . . . is the *only* long term solution that does not compromise the safety and lives of prisoners and staff," and no other measures "can adequately protect people from these extreme temperatures." *Id*. at pp. 50–51, ¶ 186 (emphasis added).

As Plaintiffs' individual members have standing, so too do their representative organizations.

### C.    The Interest in Protecting Texas Prisoners From Extreme Temperatures is Germane to Each Organizational Plaintiffs' Purpose

Mr. Collier concedes that this suit is germane to the Organizational Plaintiffs' purposes (which it clearly is).  ECF No. 76, p. 8; ECF No. 57, pp. 5–8, ¶¶ 18–21. Plaintiffs have therefore satisfied the second requirement for associational standing.

### D.    The Individual Participation of the Organizational Plaintiffs' Members and Constituents is Not Necessary to Resolve This Suit

Finally, resolving Plaintiffs' claims  does not require the participation of the Organizational Plaintiffs' members and constituents, as Plaintiffs seek only declaratory and injunctive relief. *See Assn. of Am. Physicians & Surgeons, Inc.*, 627 F.3d at 551; *see also United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 546 (1996) ("[I]ndividual

participation is not normally necessary when an association seeks prospective or injunctive relief for its members….") (quoting *Hunt*, 432 U.S. at 343, internal quotations omitted).

Here, the claims alleged "can be proven by evidence from representative injured members, without a fact-intensive-individual inquiry" and thus associational standing is appropriate. *See La Union del Pueblo Entero,* 614 F. Supp. 3d at 526–27 (internal quotations omitted). Organizational Plaintiffs' allege the extreme temperatures inside uncooled Texas prisons place *all* TDCJ prisoners at risk of serious heat-related injuries or death. *See* ECF No. 57, pp. 14-15, ¶ 47 ("Medical disorders resulting directly from heat also affect all people, even young, healthy people like many of the inmates in TDCJ facilities."); ¶ 53 ("Thus all people, including young healthy people, are at substantial risk of suffering serious medical disorders and death resulting directly from heat…"). Likewise, Plaintiffs plead that *all* mitigation measures short of controlling the climate in the prisons are inadequate to protect prisons from extreme heat and the substantial risk of serious harm that accompanies it. *Id.* at pp. 46–50, ¶¶ 167–171, 177, 181, 184, 186.

TDCJ prisoners are not required to have all of the same circumstances to be represented by Organizational Plaintiffs; rather, it is enough that they are all put at substantial risk of serious harm by extreme heat in Texas prisons. *See La Union del Pueblo Entero*, 614 F. Supp. 3d at 527 (third prong of associational standing satisfied where Plaintiffs' claim was "not premised upon a specific individual's asserted disability," but rather rested on the allegation that "all eligible voters" were affected."); *Texas Assn. for Rights of Unemployed v. Serna*, 663 F. Supp. 3d 703, 711 (W.D. Tex. 2023) (Ezra, J.) (finding that while plaintiffs might have different, individual fact patterns, their harms were all caused by the same systemic policies and practices, satisfying the third prong for associational standing); *see also Yates*, 868 F.3d at 366 (finding sufficient commonality for prison-

wide class certification based on finding that "TDCJ's heat mitigation measures are not effective to bring the risk of serious harm below the constitutional baseline for any Pack Unit inmate").

Mr. Collier's reliance on *Hinojosa* is misplaced. *See* ECF No. 76, p. 14. That case involved an individual suit for damages based on the death of Albert Hinojosa from extreme heat. Fatal to Mr. Collier's analogy is the fact that, in denying qualified immunity (a defense notably not appliable here), the Fifth Circuit was evaluating an Eighth Amendment damages claim based on several individual defendants' deliberate indifference to Hinojosa. *Hinojosa*, 807 F.3d at 663. Critically, though, in cherry picking phrases from the opinion, Mr. Collier neglects to quote from the portion of the opinion more relevant to his own deliberate indifference: the portion addressed to higher ranking officials—including his predecessor, Brad Livingston:

> Defendants argue that the complaint fails to plead deliberate indifference because it does not allege that they were aware of Hinojosa's specific medical history and needs. However, their lack of knowledge of Hinojosa's individual susceptibility to heat-related dangers cannot defeat an Eighth Amendment claim. The complaint alleges that Defendants were aware of the risk to recently transferred inmates with conditions and medications like Hinojosa's and yet took no action. ***Prison officials cannot escape liability in a conditions-of-confinement case like this one by arguing that, while they allegedly were aware of and consciously disregarded a substantial risk of serious harm to a discrete class of vulnerable inmates, they were not aware that the particular inmate involved in the case belonged to that class.*** *See Farmer* [*v. Brennan*], 511 U.S. [825,] 843, 114 S.Ct. 1970 [(1994)] (in a case alleging prison conditions that created a risk of violence, holding that "it does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces an excessive risk of attack for reasons personal to him *or because all prisoners in his situation face such a risk* ") (emphasis added).

*Hinojosa*, 807 F.3d at 667–68 (emphasis added). Furthermore, the decision also specifically recognizes that the dangerous condition of extreme heat can pose an unconstitutional risk of serious harm to the entire population, directly refuting Mr. Collier's suggestion that an individualized analysis of every inmate is always required:

Furthermore, even assuming *arguendo* that Defendants' ignorance of Hinojosa's medical history could be relevant, the complaint alleges dangerous conditions that we have previously held to be unconstitutional for general inmate populations.

*Hinojosa*, 807 F.3d at 668 (citing *Gates v. Cook*, 376 F.3d 323, 339 (5th Cir. 2004)).

Mr. Collier's citations to other Texas prison heat cases fare no better. *Blackmon*, *Gates*, and *Ball* are all premised on those courts determining that some combination of lesser mitigation factors like fans, ice, and extra showers were remedies that could end those constitutional violations for specific plaintiffs, hence those elements being part of those injunctions. *Blackmon*, 484 Fed. App'x 866, 872 (5th Cir. 2012); *Gates*, 376 F.3d at 336; *Ball v. LeBlanc*, 792 F.3d 584, 599 (5th Cir. 2015). In contrast, Plaintiffs here allege that *no* mitigation factors short of climate-controlled housing in *all* TDCJ facilities will remedy the constitutional violation and, at this stage of proceedings, the Court must take all of Plaintiffs' well-pleaded facts as true. *Braatz, L.L.C.*, 642 Fed. App'x at 409.[7]

Plaintiffs allege TDCJ system-wide violations and policies with corresponding system-wide exposure of all TDCJ prisoners to substantial risk of serious harm. Accordingly, Plaintiffs' seek system-wide declaratory and injunctive relief. Individualized participation of their members and constituents is thus unnecessary, as such relief can be sought by the Organizational Plaintiffs.

Unsurprisingly, when individual plaintiffs bring injunctive lawsuits to maintain the prisons at safe temperatures, TDCJ argues they do not have standing to seek relief on behalf of other prisoners. *See, e.g., Yates*, 868 F.3d at 367. When advocacy organizations bring lawsuits on behalf of its members, TDCJ maintains the lawsuit must be brought by the individual members

---

[7] *Cf. Yates*, 868 F.3d at 368 ("It seems that Defendants take issue with the district court's failure to explain how air-conditioning as a possible remedy could provide class-wide relief from injuries caused by excessive heat. The answer, of course, is self-evident, and the district court did not abuse its discretion in declining to state the obvious.").

themselves. Allowing TDCJ to continue its relentless catch-22 strategy will effectively preclude any injunction claim to house prisoners in safe, livable, and humane conditions. It's time for Mr. Collier to be told that the law of the land applies to TDCJ, just as it does to the people in its custody.

### III.  MR. TIEDE CONTINUES TO HAVE STANDING.

Mr. Tiede alleges that TDCJ can transfer him out of airconditioned housing at any time; therefore, he remains at substantial risk of serious harm. ECF No. 57, p. 41, ¶ 140. At this stage, this is all that is required for his standing to continue to litigate this case. It is well-recognized that "the voluntary cessation of a complained-of activity by a defendant ordinarily does not moot a case." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 324 (5th Cir. 2009). "A case may (but not must) become moot by voluntary cessation if (1) it is 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur', and (2) any 'interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'" *Amawi v. Pflugerville Indep. Sch. Dist.*, No. 1:18-CV-1091-RP, 2019 WL 4980454, at *4 (W.D. Tex. July 23, 2019) (Pitman, J.) (quoting *Los Angeles Cnty. v. Davis*, 440 U.S. 625, 631 (1979)).

Here, it is reasonable to fear that TDCJ will move Mr. Tiede from his air-conditioned unit to a non-airconditioned one. Last summer, Mr. Tiede was housed in an uncooled cell that regularly reached 110 Fahrenheit. ECF No. 57, p. 39, ¶ 133. Even after he suffered a heat-related medical crisis from which he still has not recovered, TDCJ put him back in an uncooled cell. *Id*. at ¶¶ 134-135. Indeed, he was only transferred to an air-conditioned cell because this Court granted a temporary injunction requiring TDCJ to do so. *See* ECF No. 19. TDCJ opposed both Mr. Tiede's motion for that temporary injunction, and his motion for its extension. ECF Nos. 13, 26. Given TDCJ's continued efforts to dispense with Mr. Tiede's protective injunction, it is hard to characterize Mr. Collier's actions as "cessation," rather than "currently enjoined." Regardless, as

neither TDCJ nor Mr. Collier has stipulated that it intends to permanently keep Mr. Tiede in an air-conditioned unit, even with the extreme summer temperatures arriving, Mr. Tiede continues to face an ongoing and substantial risk of injury—which TCDJ's current cessation of efforts to move him to an unairconditioned cell does not moot.

## IV.    THE PLRA DOES NOT APPLY TO ORGANIZATIONS.

Nor does the PLRA's exhaustion requirement apply to any Organizational Plaintiffs, as they are not prisoners. *See* 42 U.S.C. § 1997e(h) (limiting the exhaustion requirements to "prisoner[s]"); *see also Wormley v. United States*, 601 F. Supp. 2d 27, 46 (D.D.C. 2009) (finding the PLRA applies only to a "prisoner" who is "any person incarcerated or detained in any facility" and does not require exhaustion by non-prisoners even for claims related to their earlier detention ). The Organizational Plaintiffs are not "persons" capable of being confined, and so are not required to exhaust under the PLRA. *Dunn v. Dunn*, 219 F. Supp. 3d 1163, 1176 (M.D. Ala. 2016); *Alabama Disabilities Advoc. Pgm. v. Wood*, 584 F. Supp. 2d 1314, 1316 (M.D. Ala. 2008). Further, given that the Organizational Plaintiffs "need not identify any particular prisoner by name" to demonstrate standing, they certainly "cannot be expected to exhaust a particular prisoner's administrative remedies prior to filing suit." *Dunn*, 219 F. Supp. 3d at 1177.[8]

## V.    PLAINTIFFS' SUIT IS RIPE AS THE DANGERS TEXAS PRISONERS FACE ARE NOT SPECULATIVE.

"A case is ripe for adjudication where it is not 'abstract or hypothetical.'" *Americas Ins. Co. v. Schlumberger Ltd.*, No. 96-20906, 111 F.3d 893, 1997 WL 156867, at *1 (5th Cir. Mar. 24,

---

[8] *Green Haven Prison Preparative Meeting of the Religious Soc'y of Friends v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 16 F.4th 67, 82 (2d Cir. 2021), relied upon by Mr. Collier, is easily distinguished. *See* ECF No. 76, p. 16. There, eight people who were in prison tried to avoid the exhaustion requirement by forming an unincorporated prison group, a fact pattern hardly at play here, where Plaintiffs are not prisoners but rather, incorporated non-profit organizations that have existed for years before this suit was filed.

1997) (unpub.) (citing *New Orleans Public Serv. Inc. v. Council of City of New Orleans,* 833 F.2d 583, 586 (5th Cir. 1987)). Contrary to Mr. Collier's argument, ECF No. 76, p. 18, there is nothing abstract, hypothetical, or speculative about Plaintiffs' claims for two reasons.

First, Mr. Collier's attack is factually wrong. As the summer of 2024 descends upon Texas, thousands of prisoners are unquestionably put at substantial risk of serious harm of injury, serious suffering, and death—harm which is highly preventable but sadly inevitable absent this Court's intervention. As Plaintiffs allege, "[b]oth the NWS and TDCJ charts show that prisoners living in uncooled units are exposed to indoor heat indexes that put inmates at risk of heat, exhaustion, heat cramps, and heat stroke almost every day of the summer." ECF No. 57, p. 13, ¶ 40. "Every summer for more than 20 years, TDCJ has had a front-row seat to thousands of inmates and correctional officers falling ill and needlessly suffering from heat-related causes." *Id.* at p. 11, ¶ 33. Summer is already here and extreme temperatures threaten TDCJ inmates, including the Organizational Plaintiffs' members and constituents and Mr. Tiede. Just last week, the National Weather Service "urgently" issued multiple alerts for various parts of Texas, warning that they are at risk of hitting "dangerously hot conditions with heat index values up to 114."[9] Mr. Collier's ongoing constitutional violations, and the imminence of the resulting substantial risk extreme heat poses to all TDCJ inmates make this case ripe for adjudication.[10]

---

[9] Jordan King, *Texas Heat Map as 'Urgent' Warning Issued*, NEWSWEEK (May 27, 2024) *available at* https://www.newsweek.com/texas-map-heat-warning-extreme-weather-1904986.

[10] Heat-related custodial deaths—documented in TCDJ's *own* autopsy reports—hardly amount to speculative injury. While Mr. Collier cites *TransUnion LLC v. Ramirez,* 594 U.S. 413, 431 (2021), the injuries (and risk of injury) to nearly a hundred thousand inmates in TDCJ prisons from suffocating heat, is surely at least as palpable as the injuries to the plaintiffs in *TranUnion*, whose credit report data was compromised. "A person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring, at least so long as the risk of harm is sufficiently imminent and substantial." *Id.* at 435. Mr. Collier cannot reasonably assert

*(Footnote cont'd on next page)*

Second, Mr. Collier's argument about the injury being "speculative" fails to state a proper jurisdictional attack. Mr. Collier does not dispute that Mr. Tiede actually is in prison and the prison policy is to move him out of air conditioning if his "heat sensitivity score" is exceeded by another inmate who also needs Mr. Tiede's airconditioned housing. Every organizational member is also being exposed either to the substantial risk of harm from extreme heat or to the risk Mr. Tiede experiences of being moved into extreme and injurious heat under the same policy. Thus, all TDCJ prisoners and the Organizational Plaintiffs representing them here have an actual, ripe interest in changing that policy and the conditions of TDCJ prisons which undisputedly apply to everyone.

While Mr. Collier argues that Plaintiffs' Amended Complaint does not allege a risk of harm that states a sufficient injury, this is not a standing argument but an attack on the merits. "[W]hen a defendant's challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action, the proper procedure for the district court is to find that jurisdiction exists and to deal with the objection as a direct attack on the merits of the plaintiff's case." *Daniel v. Ferguson*, 839 F.2d 1124, 1127 (5th Cir. 1988) (citations omitted). As the thrust of Mr. Collier's charge of "speculative" risk is to argue that Plaintiffs may survive the dangerous summer, his argument should not be evaluated under Rule 12(b)(1).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant Collier's amended 12(b)(1) motion to dismiss.

---

that the risk from triple digit temperatures in Texas prison this summer is anything but "sufficiently imminent and substantial." *Id.*

Dated June 6, 2024.                          Respectfully submitted,


                                             */s/ Kevin D. Homiak*
                                             Thomas A. Olsen (*admitted pro hac vice*)
                                             Kevin D. Homiak (*admitted pro hac vice*)
                                             Ellen R. Blatt (*admitted pro hac vice*)
                                             Wheeler Trigg O'Donnell LLP
                                             370 Seventeenth Street, Suite 4500
                                             Denver, CO 80202-5647
                                             Telephone:    303.244.1800
                                             Facsimile:    303.244.1879
                                             Email:    olsen@wtotrial.com
                                                       homiak@wtotrial.com
                                                       blatt@wtotrial.com

                                             Erica Grossman (*admitted pro hac vice*)
                                             Holland, Holland Edwards & Grossman, LLC
                                             1437 High Street
                                             Denver, CO 80218
                                             Telephone:    303.860.1331
                                             Email:    erica@hheglaw.com

                                             Jodi Cole
                                             Texas Bar No. 24045602
                                             Law Office of Jodi Cole, PLLC
                                             203 East Murphy Street
                                             Alpine, TX 79830
                                             Telephone:    432.837.4266
                                             Facsimile:    512.692.2575
                                             Email:    jcole@jodicole.com

Jeff Edwards
Texas Bar No. 24014406
Mike Singley
Texas Bar No. 00794642
David Anthony James
Texas Bar No. 24092572
Lisa Snead
Texas Bar No. 24062204
Paul Samuel
Texas Bar No. 24124463
Edwards Law
603 W. 17th Street
Austin, TX 78701
Telephone:    512.623.7727
Facsimile:    512.623.7729
Email:    jeff@edwards-law.com
          mike@edwards-law.com
          david@edwards-law.com
          lisa@edwards-law.com
          paul@edwards-law.com

Brandon Duke
Caitlin Gernert
WINSTON & STRAWN, LLP
800 Capitol Street, Suite 2400
Houston, TX 77002
Telephone:    713-651-2600
Email:    bduke@winston.com
Email:    cgernert@winston.com

*Attorneys for Plaintiffs Bernhardt Tiede, II
Texas Prisons Community Advocates, Disability
Rights Texas, Build Up, Inc. a/k/a Lioness,
Justice Impacted Women's Alliance, and
Coalition for Texans with Disabilities*

**CERTIFICATE OF SERVICE (CM/ECF)**

I HEREBY CERTIFY that on June 6, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which served this pleading on all counsel of record.

*/s/ Kevin D. Homiak*
Kevin D. Homiak