IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| BERNHARDT TIEDE, II; TEXAS PRISONS COMMUNITY ADVOCATES; BUILD UP, INC. *a/k/a* JUSTICE IMPACTED WOMEN'S ALLIANCE; TEXAS CITIZENS UNITED FOR REHABILITATION OF ERRANTS; and COALITION FOR TEXANS WITH DISABILITIES, <br><br> Plaintiffs, <br><br> v. <br><br> BRYAN COLLIER, *in his official capacity as Executive Director of Texas Department of Criminal Justice*, <br><br> Defendant. | § § § § § § § § § § § § § § § § § § § § | 1:23-CV-1004-RP |

## ORDER

Before the Court are Defendant Bryan Collier's ("Collier") Amended Motion To Dismiss Plaintiff's Amended Complaint Pursuant To Rule 12(b)(1), (Dkt. 76); and Amended Motion To Dismiss Plaintiff's Amended Complaint Pursuant To Rule 12(b)(6), (Dkt. 77). Plaintiffs Texas Prisons Community Advocates ("TPCA"); Build Up, Inc. *a/k/a* Justice Impacted Women's Alliance ("Lioness"); Texas Citizens United for Rehabilitation of Errants ("TX CURE"); and Coalition for Texans with Disabilities ("CTD") (collectively, "Organizational Plaintiffs"), as well as Plaintiff Bernhardt Tiede, II ("Tiede") filed responses in opposition to the motions to dismiss. (Dkts. 87, 88). Collier filed replies. (Dkts. 91, 92). Having considered the parties' briefs, the record, and the relevant law, the Court finds that the motions to dismiss should be denied.

## I. BACKGROUND

Tiede originally filed suit on August 24, 2023. (Compl., Dkt. 1). He initially sued Collier, the Texas Department of Criminal Justice, Kenneth Paxton, and the Texas Office of Attorney General

(collectively, "Original Defendants"). Tiede is currently incarcerated at the Texas Department of Criminal Justice ("TDCJ") Estelle Unit in Huntsville, Texas. (Am. Compl., Dkt. 57, at 5). Tiede is 65 years old and suffers from multiple conditions, including diabetes, hypertension, and COPD. (Compl., Dkt. 1, at 7–8; *see also* Am. Compl., Dkt. 57, at 39).[1] In August 2023, he reported that while housed in a cell without air conditioning, he suffered from stroke symptoms that were exacerbated by heat and necessitated transportation by ambulance to an emergency room. (Compl., Dkt. 1, at 1; *see also* Am. Compl., Dkt. 57, at 40). He asserted that fans and periodic deliveries of ice water and cold cloths were insufficient to provide relief from temperatures that exceed 110 degrees Fahrenheit in cells. (Compl., Dkt. 1, at 1). Following his stroke, TDCJ moved Tiede to an airconditioned cell on August 9, 2023, but returned him to unairconditioned housing only eight days later. (2d Mot. TRO, Dkt. 7, at 5).

On August 28, 2023, following his return to an unairconditioned cell, Tiede moved for a temporary restraining order requesting that Original Defendants move him to an air-conditioned housing unit. (2d TRO Mot., Dkt. 7). United States Magistrate Judge Mark Lane granted the motion on September 13, 2023. (Dkt. 17). On September 14, 2023, this Court entered an Amended Temporary Restraining Order (the "Amended TRO") ordering the Original Defendants to return Tiede to air-conditioned housing for 14 days, (Dkt. 19), which the Court then extended an additional 30 days. (Dkt. 27).

On April 22, 2024, Tiede moved to amend his complaint, (Dkt. 48), and on April 25, 2024, he filed a Motion for Preliminary Injunction, (Dkt. 50),[2] based on the updated facts included in his proposed amended complaint. The Court granted the motion to amend on May 7, 2024. (Dkt. 56).

---

[1] The Court previously took judicial notice of Tiede's age and date of birth. (Am. TRO, Dkt. 19, at 4 n.4 (indicating that Tiede is 65 years old with a date of birth of August 2, 1958).
[2] The motion for preliminary injunction, (Dkt. 50), is now fully briefed, (*see* Dkts. 52, 90), and the Court will hold a preliminary injunction hearing on July 8, 2024, (*see* Dkt. 82).

2

The first amended complaint removed four of the five defendants (leaving only Collier, the executive director of TDCJ), dropped three of his four legal arguments (leaving only an Eighth Amendment conditions of confinement argument), and added the four Organizational Plaintiffs. (Am. Compl., Dkt. 57). Tiede and the Organizational Plaintiffs bring Section 1983 claims under the Eighth Amendment against Collier in his official capacity, seeking declaratory and injunctive relief on behalf of the entire TDCJ inmate population. (*Id.* at 53–59).

On May 29, 2024, Collier filed his Amended Motion To Dismiss Plaintiff's Amended Complaint Pursuant To Rule 12(b)(1), (Dkt. 76), and Amended Motion To Dismiss Plaintiff's Amended Complaint Pursuant To Rule 12(b)(6), (Dkt. 77). Plaintiffs filed responses in opposition to the motions to dismiss, (Dkts. 87, 88), and Collier filed replies, (Dkts. 91, 92).

## II. LEGAL STANDARD

### A. Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert lack of subject matter jurisdiction as a defense to suit. Fed. R. Civ. P. 12(b)(1). Federal district courts are courts of limited jurisdiction and may only exercise such jurisdiction as is expressly conferred by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A federal court properly dismisses a case for lack of subject matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied*, 536 U.S. 960 (2002). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* In ruling on a Rule 12(b)(1) motion, the court may consider any one of the following: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in

3

the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

### B. Rule 12(b)(6)

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). A court may also consider documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th

4

Cir. 2004). But because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint. *Dorsey,* 540 F.3d at 338. "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

### III. DISCUSSION

### A. Subject Matter Jurisdiction

The Court first considers whether it has subject matter jurisdiction over Plaintiffs' claims against Collier. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) ("When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. This requirement prevents a court without jurisdiction from prematurely dismissing a case with prejudice.") (citation omitted). Because Collier has not attached any supporting materials to his motion, he has made a facial attack.[3] Therefore, the Court will "look and see if plaintiff[s] ha[ve] sufficiently alleged a basis of subject matter jurisdiction, and the allegations in [the] complaint are taken as true for the purposes of the motion." *Cell Sci. Sys. Corp. v. Louisiana Health Serv.*, 804 F. App'x. 260, 263 (5th Cir. 2020) (quoting *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)).

---

[3] The difference between a facial and a factual attack is as follows: "if the defense merely files a Rule 12(b)(1) motion, the trial court is required merely to look to the sufficiency of the allegations in the complaint because they are presumed to be true. If those jurisdictional allegations are sufficient the complaint stands. If a defendant makes a 'factual attack' upon the court's subject matter jurisdiction over the lawsuit, the defendant submits affidavits, testimony, or other evidentiary materials. In the latter case a plaintiff is also required to submit facts through some evidentiary method and has the burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction." *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981)

1. Standing

Collier argues that Plaintiffs' claims fail because they have not established an injury-in-fact. (12(b)(1) Mot., Dkt. 76, at 5–7). In response, Plaintiffs argue that "[t]he threat of injury to these incarcerated constituents and members is real and immediate as summer approaches and they remain in TDCJ facilities that lack air conditioning." (Resp. 12(b)(1) Mot., Dkt. 87, at 10–12).

Generally, to have Article III standing, "'a plaintiff must demonstrate (1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief.'" *Texas Democratic Party v. Abbott*, 961 F.3d 389, 399 (5th Cir. 2020) (quoting *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1618 (2020)).

Collier does not argue that Plaintiffs have not shown that the injury is fairly traceable or likely to be redressed by a favorable decision. (*See* 12(b)(1) Mot., Dkt. 76). Accordingly, the Court will only address the question of whether Plaintiffs' claims are sufficiently concrete for adjudication, though the Court notes that Plaintiffs have briefed the other two elements. (*See* Resp. 12(b)(1) Mot., Dkt. 87, at 12–13). "Federal courts consistently deny standing when claimed anticipated injury has not been shown to be more than uncertain potentiality." *Prestage Farms, Inc. v. Bd. of Sup'rs of Noxubee Cnty., Miss.*, 205 F.3d 265, 268 (5th Cir. 2000) (citing *Amer. Fidelity & Cas. Co. v. Pennsylvania Threshermen & Farmers' Mut. Casualty Ins.*, 280 F.2d 453, 461 (5th Cir. 1960)). Plaintiffs have detailed in their amended complaint how approximately 85,000 TDCJ prisoners suffer from and are at risk of suffering from a number of heat-induced illnesses—including heat stroke, heat exhaustion, heat rash, nausea, and vomiting—due to unit temperatures that routinely exceed 100° Fahrenheit in the summer. (Am. Compl., Dkt. 57, at 1–2, 8–15, 31–39, 58).[4] TDCJ prisoners are at risk of developing

---

[4] The Court previously took judicial notice of the extreme heat and media reporting that temperatures in Texas prison cells can exceed 100 degrees Fahrenheit. (Am. TRO, Dkt. 19, at 2 n.2); *see also Julius v. Luxury Inn*

a number of heat-induced illnesses and potentially even dying due to excessive heat inside the units. Further, while Tiede is currently housed in an air-conditioned cell, (Am. Compl., Dkt. 57, at 41), this voluntary cessation does not moot his request for relief, as it is not "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Sossamon v. Texas*, 560 F.3d 316, 325 (5th Cir. 2009) (cleaned up), *aff'd*, 563 U.S. 277 (2011).

It is not seriously in dispute that summer temperatures in Texas regularly exceed 100 degrees. Hot temperatures have already begun for the season, and it is sufficiently certain that those temperatures will increase as Texas's summer intensifies. The risk of intense, extreme summer heat is "imminent and substantial," and therefore presents an injury that is sufficiently concrete for Article III standing. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). Accordingly, the Court finds that Plaintiffs have established an injury in fact.

2. Associational Standing

Collier then argues that the Organizational Plaintiffs lack associational standing. (12(b)(1) Mot., Dkt. 76, at 7–18). In response, Plaintiffs argue that the Organizational Plaintiffs have established associational standing. (Resp. 12(b)(1) Mot., Dkt. 87, at 5–17).

As the Organizational Plaintiffs bring suit on behalf of their members, the Organizational Plaintiffs must establish associational standing on behalf of these members. To do so, the Organizational Plaintiffs must show: "'(a) [their] members would otherwise have standing to sue in their own right; (b) the interests [they] seek[] to protect are germane to the organization[s'] purpose; and (c) neither the claim[s] asserted nor the relief requested requires the participation of individual members in the lawsuit.'" *United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*, 517 U.S. 544, 553 (1996) (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)).

---

*& Suites, LLC*, 535 F. Supp. 3d 600, 606 (S.D. Miss. 2021) (noting that courts may take judicial notice of weather records).

Collier does not contest that "the Organizational Plaintiffs may have interests that are germane to their respective purposes." (12(b)(1) Mot., Dkt. 76, at 8; *see also* Resp. 12(b)(1) Mot., Dkt. 87, at 13). Accordingly, the Court will only address prongs one and three of the associational standing analysis: (1) whether at least one member of the Organizational Plaintiffs would have individual standing, and (3) whether individual members are required to participate in the lawsuit.

To establish associational standing, Organizational Plaintiffs first must show that "at least one member of the association [has] standing to sue in his or her own right." *Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185, 191 (5th Cir. 2012) (cleaned up) (abrogated on other grounds). Organizational Plaintiffs include TPCA, whose "constituents consist of the roughly 130,000 people incarcerated in the Texas state prison system, including every person incarcerated in every TDCJ facility that lacks appropriate temperature control;" Lioness, with "roughly 700 members . . . composed of currently and previously incarcerated women;" TX CURE, whose "constituents consist of the roughly 130,000 people incarcerated in the Texas state prison system, including almost 8,000 Veterans, and every person incarcerated in every TDCJ facility that lacks appropriate temperature control;" and CTD, whose "constituents encompass roughly 52,000 of the 130,000 people incarcerated in Texas prisons, including every person with a disability in every TDCJ facility that lacks appropriate temperature control." (Am. Compl., Dkt. 57, at 5–8). While Collier contests whether the Organizational Plaintiffs have members of the sort that would confer associational standing to them, (12(b)(1) Mot., Dkt. 76, at 8–11), at least one of the Organizational Plaintiffs, Lioness, is a traditional membership organization with hundreds of members who are TDCJ prisoners, (Am. Compl., Dkt. 57, at 6; *see also* Resp. 12(b)(1) Mot., Dkt. 87, at 5–6), so the Court finds that at least one of the Organizational Plaintiffs' members has individual standing for the same reasons in the preceding section. *See La Union del Pueblo Entero v. Abbott*, 614 F. Supp. 3d 509, 526 (W.D. Tex. 2022) ("Demonstration of indicia of membership, however, is only required

when the plaintiff association is not "a traditional voluntary membership organization.") (cleaned up). While some members will have access to air conditioning and therefore not have standing, that does not moot an organization's standing as a whole, because other members will not have access to air conditioning—statistically, nearly two-thirds of them will have standing, as Plaintiffs have alleged that approximately 85,000 out of 130,000 TDCJ prisoners lack air conditioning. (Am. Compl., Dkt. 57, at 2). Therefore, the Court finds that Plaintiffs meet prong one of the associational standing analysis because at least one Organizational Plaintiff has individual standing to sue. *See La Union del Pueblo Entero v. Abbott*, No. 5:21-CV-0844-XR, 2023 WL 8263348, at *12 (W.D. Tex. Nov. 29, 2023) ("[T]he Court concludes that at least one of the [Organizational Plaintiffs] has established associational standing.").

The other contested prong of the associational standing analysis asks whether "the claim asserted [or] the relief requested requires the participation of individual members in the lawsuit." *United Food*, 517 U.S. at 553. Collier argues that the claims in the case "depend on fact-intensive inquiries on a case-by-case basis." (12(b)(1) Mot., Dkt. 76, at 13). Plaintiffs contend that "TDCJ prisoners are not required to have all of the same circumstances to be represented by Organizational Plaintiffs; rather, it is enough that they are all put at substantial risk of serious harm by extreme heat in Texas prisons." (Resp. 12(b)(1) Mot., Dkt. 77, at 14). The Court agrees with Plaintiffs. While TDCJ prisoners have varying sensitivity to extreme heat, there is sufficient commonality between their experiences because their injuries stem from the TDCJ's failure to provide adequate air conditioning for approximately 85,000 prisoners, and they seek the same relief—that is, the implementation of air conditioning in TDCJ units. The individual participation of the Organizational Plaintiffs' members is not required to establish these claims. *See United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 546 (1996) ("individual participation is not normally necessary when an association seeks prospective or injunctive relief for its members")

(cleaned up). Thus, the Court finds that the Organizational Plaintiffs' members are not required to participate in this lawsuit individually. Accordingly, Plaintiffs meet the requirements of associational standing.

### 3. Ripeness

Collier also argues that Plaintiffs' claims are not ripe. (12(b)(1) Mot., Dkt. 76, at 18–19). In response, Plaintiffs argue that their claims are ripe because the dangers TDCJ prisoners face are not speculative. (Resp. 12(b)(1) Mot., Dkt. 87, at 18–20).

"The standing question . . . bears close affinity to [the] question of ripeness—whether the harm asserted has matured sufficiently to warrant judicial intervention." *Warth v. Seldin*, 422 U.S. 490, 499 n.10 (1975). Ripeness is "a constitutional prerequisite to the exercise of jurisdiction," and it may be raised at any time by a party or the court. *Shields v. Norton*, 289 F. 3d 832, 835 (5th Cir. 2002). "A case is generally ripe if any remaining questions are purely legal ones; conversely, a case is not ripe if further factual development is required." *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 833 F.2d 583, 586 (5th Cir. 1987) ("*NOPSI*").

The Court finds that Plaintiffs' claims are ripe. This case is not "abstract or hypothetical." *NOPSI*, 833 F.2d at 586; *see also United Transp. Union v. Forster*, 205 F.3d 851, 857 (5th Cir. 2000) ("Ripeness separates those matters that are premature because the injury is speculative and may never occur from those that are appropriate for judicial review."). As noted above, TDCJ prisoners are at risk of developing a number of heat-induced illnesses and potentially even dying due to excessive heat inside the units. This injury is not speculative; heat-related custodial deaths have been recorded in a number of autopsies of TDCJ prisoners, and there is no serious suggestion that the Texas summer heat will abate this year. (Am. Compl., Dkt. 57, at 21–24, 26). Hot temperatures are here and are certain to worsen as the summer intensifies—the mere fact that the exact degree of summer heat is unknown does not make Plaintiffs' injuries speculative. Accordingly, this case is ripe.

### 4. Sovereign Immunity

Collier also argues that Plaintiffs' claims for damages and equitable relief are barred by sovereign immunity. (12(b)(1) Mot., Dkt. 76, at 4–5). Collier also argues that the *Ex Parte Young* exception to sovereign immunity does not apply. (12(b)(1) Mot., Dkt. 76, at 19–22).[5] In response, Plaintiffs argue that Collier is not immune to suit because *Ex Parte Young* applies. (Resp. 12(b)(1) Mot., Dkt. 87, at 2–4). Thus, the key inquiry is whether Plaintiffs' suit falls within the *Ex Parte Young* exception to sovereign immunity.

Collier is sued in his official capacity as Executive Director of TDCJ—in other words, he is sued as an arm of the State of Texas. States are immune from suit under the Eleventh Amendment. *Moore v. La. Bd. of Elementary and Secondary Educ.*, 743 F.3d 959, 963 (5th Cir. 2014) ("Federal courts are without jurisdiction over suits against a state, a state agency, or a state official in his official capacity unless that state has waived its sovereign immunity or Congress has clearly abrogated it."). Texas has not consented by statute, and Section 1983 does not waive state sovereign immunity. *Quern v. Jordan*, 440 U.S. 332, 338 n.7 (1979). Despite this bar, a court may grant prospective injunctive relief based on an ongoing violation of the federal constitution under *Ex Parte Young*, 209 U.S. 123 (1908). This exception "is based on the legal fiction that a sovereign state cannot authorize an agent to act unconstitutionally." *K.P. v. LeBlanc*, 729 F.3d 427, 439 (5th Cir. 2013) (cleaned up). In determining whether a complaint falls within the *Ex Parte Young* exception, a court conducts a "straightforward inquiry" into whether the complaint alleges an ongoing violation of federal law and seeks prospective relief. *Verizon Md., Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002).

Plaintiffs' complaint meets these requirements. As to the first prong, Plaintiffs allege that Collier is violating the Eighth Amendment; as to the second prong, Plaintiffs seek prospective

---

[5] While Collier has styled this as a separate argument, the Court finds it more appropriate to consider the *Ex Parte Young* exception to sovereign immunity in its analysis of sovereign immunity.

11

(declaratory and injunctive) relief. (Am. Compl., Dkt. 57, at 53–59). While Collier argues that "there is no significant possibility of future harm" and thus that Plaintiffs cannot establish the requisite connection-to-enforcement requirement, (12(b)(1) Mot., Dkt. 76, at 21), for the same reasons that Plaintiffs have a sufficiently concrete injury that is imminent, there is a significant possibility of future harm to Plaintiffs and a requisite connection to Collier's enforcement role at TDCJ, as he could require all TDCJ units to have adequate air conditioning to maintain safe indoor temperatures. *See City of Austin v. Paxton*, 943 F.3d 993, 1002 (5th Cir. 2019) ("[I]t may be the case that an official's connection to enforcement is satisfied when standing has been established. At the minimum, our caselaw shows that a finding of standing tends toward a finding that the *Young* exception applies to the state official(s) in question.") (cleaned up). Therefore, Plaintiffs have met the requirements of the *Ex Parte Young* exception to sovereign immunity. Collier is not immune from suit, and the Court will proceed to analyze his Rule 12(b)(6) argument.

### B. Failure to State a Claim

Collier also argues that "Plaintiffs fail to identify a deprivation of a federal right." (12(b)(6) Mot., Dkt. 77, at 2–6). In response, Plaintiffs argue that they have "sufficiently alleged that extreme heat in TDCJ's uncooled prisons is a well-established substantial risk of serious harm that constitutes cruel and unusual punishment." (Resp. 12(b)(6) Mot., Dkt. 88, at 5).

The Eighth Amendment to the United States Constitution prohibits "cruel and unusual punishment." U.S. Const. amend. XII. The Constitution "does not mandate comfortable prisons." *Blackmon v. Garza*, 484 F. App'x 866, 868–69 (5th Cir. 2012) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349, (1981)); (*see also* Resp. 12(b)(6) Mot., Dkt. 88, at 1 ("This case is not and has never been about being comfortable.")). However, "prison officials must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates." *Blackmon*,

484 F. App'x at 868–69 (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994), & *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)) (internal quotations omitted).

"It is well-established in [the Fifth Circuit] 'that the Eighth Amendment guarantees inmates a right to be free from exposure to extremely dangerous temperatures without adequate remedial measures.'" *Yates v. Collier*, 868 F.3d 354, 359 (5th Cir. 2017) (quoting *Hinojosa v. Livingston*, 807 F.3d 657, 669 (5th Cir. 2015)). Indeed, the Fifth Circuit has "repeatedly recognized the serious risk of harm that excessive heat can pose in the prison context absent adequate mitigating measures, and [it has] consistently found evidence sufficient in these cases to support an Eighth Amendment violation, even when certain mitigating measures were available." *Id.* at 361.

At the 12(b)(6) stage, all Plaintiffs must do is plausibly state a claim for relief. The Court finds that they have done so. Plaintiffs have alleged that approximately 85,000 TDCJ prisoners suffer from and are at risk of suffering from a number of heat-induced illnesses—including heat stroke, heat exhaustion, heat rash, nausea, and vomiting—due to unit temperatures that routinely exceed 100° Fahrenheit in the summer. (Am. Compl., Dkt. 57, at 1–2, 8–15, 31–39, 58). Because of the extreme heat in TDCJ prisons, prisoners housed in un-air-conditioned units face an ongoing, enhanced risk of injury or death from extreme heat. The Fifth Circuit has repeatedly recognized that excessive heat in prisons constitutes cruel and unusual punishment under the Eighth Amendment. *See, e.g., Yates*, 868 F.3d 354. Plaintiffs have alleged that Collier is violating the Eighth Amendment because TDCJ prisoners face a substantial risk of serious harm from the extreme heat in their units—and several TDCJ prisoners have already fell ill and/or died due to excessive temperatures. (Am. Compl., Dkt. 57, at 19–24, 26–31, 66–88). Accordingly, Plaintiffs have adequately stated a claim for relief under the Eighth Amendment, and the Court will deny Collier's motion to dismiss under Rule 12(b)(6).

## IV. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Collier's Amended Motion To Dismiss Plaintiff's Amended Complaint Pursuant To Rule 12(b)(1), (Dkt. 76), and Amended Motion To Dismiss Plaintiff's Amended Complaint Pursuant To Rule 12(b)(6), (Dkt. 77), are **DENIED**.

**SIGNED** on June 14, 2024.

_____

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE