**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| BERNHARDT TIEDE, II;<br>TEXAS PRISONS COMMUNITY<br>ADVOCATES;<br>DISABILITY RIGHTS TEXAS;<br>BUILD UP, INC. a/k/a LIONESS: JUSTICE<br>IMPACTED WOMEN'S ALLIANCE; and<br>COALITION FOR TEXANS WITH<br>DISABILITIES,<br><br>                Plaintiffs,<br>v.<br><br>BRYAN COLLIER, in his official capacity as<br>Executive Director of Texas Department of<br>Criminal Justice,<br><br>              Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No.: 1:23-cv-01004-RP |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR**
**WRITS OF HABEAS CORPUS AD TESTIFICANDUM FOR**
**ANTHONY HANBY AND MELISSA MENDEZ**

Plaintiffs' Motion for *writs of habeas corpus ad testificandum* for Anthony Hanby and Melissa Mendez should be granted. (ECF No. 142.) Mr. Collier's arguments in opposition to Plaintiffs' motion fail, for three reasons.

First, Mr. Collier claims that Plaintiffs' motion is untimely, but that is false. Mr. Collier's counsel agreed to a July 26, 2024, deadline to disclose witnesses for the preliminary injunction hearing. Plaintiffs disclosed these witnesses several days before that deadline. Nor is it true that Mr. Collier lacks sufficient time to prepare to question these witnesses, as their testimony is straightforward and will be focused on what they saw, felt, and heard while housed in unairconditioned facilities. And Mr. Collier has ample time to secure travel arrangements for Mr. Hanby and Ms. Mendez, and he has offered no evidence to the contrary.

1

Second, the testimony of Mr. Hanby and Ms. Mendez is critical to Plaintiffs' case. This is a case about extreme heat in TDCJ's unairconditioned prisons. These inmates will testify about their personal experiences suffering through that heat, and the inadequacy of TDCJ's heat mitigation measures in their facilities.

Third, the necessity of Mr. Hanby and Ms. Mendez's testimony outweighs any hypothetical safety risks and the cost of their transportation. Mr. Collier has presented no individualized evidence as to why these witnesses pose a unique safety risk, let alone one that outweighs their importance to Plaintiffs' case.

Finally, because Mr. Collier himself admits that TDCJ is not able to guarantee the remote testimony of either Mr. Hanby or Ms. Mendez, writs are necessary to obtain their testimony in-person.

## <u>ARGUMENT</u>

## I.    **PLAINTIFFS' MOTION IS TIMELY.**

Mr. Collier argues Plaintiffs' motion is untimely. (ECF. No. 144 at 2–3.) Not so. Plaintiffs' motion requests Mr. Hanby and Ms. Mendez's presence beginning on July 31, 2024, which is still a week away. Both Mr. Hanby and Ms. Mendez are incarcerated in Texas and only a three hour drive, or less, from Austin, Texas, where the preliminary injunction hearing will be held. TDCJ will have ample time to arrange for Mr. Hanby and Ms. Mendez to be driven to Austin in time for the hearing. As discussed more fully below, Mr. Collier offers no evidence to the contrary.

Mr. Collier next argues he will be "unfairly prejudice[ed]" by Mr. Hanby and Ms. Mendez's testimony, because they are "individuals who Collier has never been on notice of." (*Id.* at 2.) No such notice was required. Mr. Collier agreed to a deadline of July 26 for the parties to disclose their witnesses for the preliminary injunction hearing, and Plaintiffs disclosed these witnesses several days in advance of that deadline. If he thought more time was necessary to

prepare, he should have said so at that point, rather than agreeing to a disclosure deadline of July 26. Indeed, Mr. Collier has more time to prepare for these witnesses than Plaintiffs will have to prepare for any witnesses who Mr. Collier chooses to disclose on July 26.

In addition, counsel for Plaintiffs have had a very difficult time setting up calls with TDCJ inmates over the last two months—which contributed to the delay in filing this request. Counsel attempted for the last month to set a call with Ms. Mendez, but TDCJ has repeatedly blocked their access. The Hobby Unit have refused to respond to such requests, finally set a call for two weeks ago, and then cancelled the call on the day it was set. TDCJ then cancelled a call was set for today, July 25, 2024, saying there was not any staff available to allow for such call.

It is equally untrue that Mr. Collier cannot "effectively . . . prepare for the cross-examination of Hanby and Mendez in one-weeks' time." (*Id.*) As a general matter, one week is ample time for the half-dozen attorneys who represent Mr. Collier to draft cross examinations of two witnesses. This is especially true, given that these witnesses' testimony will not be complicated; they will testify about their experiences suffering in extreme heat in TDCJ's unairconditioned facilities. Minimal preparation is necessary to draft a cross-examination about what fact witnesses saw, heard, and felt, when they lived in unairconditioned units. This is especially true, given that Mr. Collier can easily access and obtain both witnesses' TDCJ inmate files, grievances, and medical records.

None of this should come as a surprise. This is the risk that Mr. Collier took when he agreed to a July 26 witness disclosure deadline. Having done so, he cannot now cry foul about Plaintiffs' disclosure of witnesses for the first time several days *before* that agreed-upon deadline. Plaintiffs took the same risk and will have even less time to prepare to cross-examine Mr. Collier's witnesses after they are disclosed on July 26.

**II.    THE PRESENCE OF MR. HANBY AND MS. MENDEZ WILL SUBSTANTIALLY FURTHER THE RESOLUTION OF THIS CASE.**

**A.    Mr. Hanby and Ms. Mendez's testimony about the central issue of the case will necessarily further its resolution.**

Mr. Collier argues that Plaintiffs' statement that "[b]oth individuals will testify to TDCJ's failure to mitigate the extreme summer temperatures and the effects of that failure on themselves and their fellow inmates" does "not show that Hanby or Mendez's presence will substantially further the resolution of the case." (ECF No. 144 at 4.) This is confusing, given that the key issue in this case is how extreme heat in TDCJ's prisons (and TDCJ's failure to mitigate it) has harmed the people it incarcerates. Indeed, Mr. Collier previously argued that Plaintiffs' claims should be dismissed because they had purportedly failed to show that any of their members or constituents are "suffering from a concrete and particularized injury." (ECF 76 at 10.) Mr. Collier went so far as to call Plaintiffs' allegations about extreme heat and the effects of the same "speculative," an "uncertain potentiality," and "entirely contingent on possible future facts." (*Id.* at 6.)

Mr. Hanby and Ms. Mendez are currently incarcerated in TDCJ facilities. Mr. Hanby is a constituent of Texas Prisons Community Advocates ("TPCA") and Ms. Mendez is a member of Lioness: Justice Impacted Women's Alliance ("Lioness")—two of the Organizational Plaintiffs in this case. Far from offering "speculative" testimony that's "entirely contingent on possible future facts," these witnesses will testify about how TDCJ's failure to act in the face of extreme heat is causing them a real, "concrete," and "particularized injury." (ECF 76 at 10.) This testimony not only goes to the heart of Plaintiffs' Eighth Amendment claims, but directly rebuts Mr. Collier's standing arguments. Indeed, it would be hard to imagine testimony that could possibly be more relevant to this case—which asks the Court to order that TDCJ prisons be kept at safe temperatures—than testimony from individuals currently incarcerated in TDCJ facilities about how extreme heat in their unairconditioned prisons is affecting them.

Mr. Collier cites to *Latiolais v. Whitley*, but that case is inapposite. There, the trial court denied the plaintiff's *writ of habeas corpus ad testificandum* because it held the trial could be "conducted entirely on deposition testimony"—something not available in this case for Mr. Hanby or Ms. Mendez, because of the expedited timeline. 93 F.3d 205, 208 (5th Cir. 1996). Moreover, in *Latiolais*, the Fifth Circuit vacated the trial court, holding that denial of plaintiff's writ was one of several errors that "violated notions of fundamental fairness." *Id*. at 210.

**B.    Mr. Hanby and Ms. Mendez are the only TDCJ inmates currently incarcerated without air-conditioning that will testify at the hearing.**

Mr. Collier also argues that Mr. Hanby and Ms. Mendez's testimony is "unnecessary" because it is "repetitious." (ECF No. 144 at 5.) Again, this is false.

First, Mr. Collier argues that "Plaintiffs have supported their Motion for Preliminary Injunction with sworn testimony of ten (10) individuals who will testify at the preliminary injunction hearing to [the] exact subject-matter" that Mr. Hanby and Ms. Mendez will testify to. This is wrong. The sworn declarations attached to Plaintiffs' Motion for Preliminary Injunction (ECF No. 50), include testimony from climatologists, physicians, statisticians, pathologists, and corrections experts, as well as representatives from the Organizational Plaintiffs. There are no declarations from currently incarcerated TDCJ inmates who lack air-conditioning.

Second, Mr. Collier argues that Mr. Hanby and Ms. Mendez's testimony will be repetitive of the planned testimony of individuals from TPCA, Lioness, and T.X. C.U.R.E. Again, Mr. Collier is wrong. True, Plaintiffs plan to call representatives from the Organizational Plaintiffs who will testify to the suffering their constituents have endured as a result of the unmitigated temperatures. But this is not the same as having currently incarcerated inmates testify about their first-hand experiences suffering in unairconditioned prisons. As noted above, Mr. Hanby and Ms. Mendez are the only inmates currently incarcerated without air-conditioning that Plaintiffs plan to

call at the preliminary injunction hearing. Obviously, all of Plaintiffs' witnesses will testify about the effects of the extreme heat—as that is the crux of this lawsuit—but only Mr. Hanby and Ms. Mendez can provide <u>first-hand</u> accounts of how much TDCJ inmates are currently suffering due to TDCJ's failure to mitigate the heat. As such, their testimony is necessary and not duplicative.

## III.   THE NECESSITY OF MR. HANBY AND MS. MENDEZ'S TESTIMONY OUTWEIGHS THE POTENTIAL RISK AND EXPENSE OF TRANSPORTING THEM.

### A.   Mr. Collier identifies no real safety-risk in transporting Mr. Hanby and Ms. Mendez.

Mr. Collier argues that Mr. Hanby and Ms. Mendez pose a security risk for transportation simply because they are "incarcerated felons." (ECF No. 144 at 5–6.) The very case Mr. Collier quotes to support this argument, *Jackson v. Collins*, involved a plaintiff who was an "incarcerated felon," but the court held that plaintiff's incarceration merely rendered the safety risk inquiry "inconclusive." 2007 WL 1671729, at *2 (E.D. Tex. June 8, 2007). *Jackson*, therefore, does not stand for the proposition that a person's status as an "incarcerated felon" means they pose an untransportable safety risk. If anything, *Jackson* suggests that an individual's status as a felon—without more—is not sufficient grounds to deny a writ. *Id.* ("There is no evidence that Jackson is a greater security risk than other prisoners[.]").

"[S]ecurity and cost concerns are always at issue in the transfer of a prisoner." *Conwill v. Greenberg Traurig, L.L.P.*, No. CIV.A. 11-0938, 2012 WL 5288749, at *1 (E.D. La. Oct. 24, 2012). What matters is whether those concerns outweigh the necessity of the prisoner's testimony. *See Ballard v. Spradley*, 557 F.2d 476, 481 (5th Cir. 1977) (stating that the focus of the inquiry is "the need for the prisoner's testimony vis-à-vis the difficulties attendant to securing it"). Here, they do not.

Outside of the fact the Mr. Hanby and Ms. Mendez are incarcerated felons, Mr. Collier identifies no reason to believe their presence would pose a security risk—he identifies no violations committed during their incarceration, no write-ups, no disciplinary violations, and no other facts to suggest that they will pose an undue or unique security risk beyond that of any other inmate. As such, Mr. Collier has provided no bases for why safety concerns should outweigh the necessity of having Mr. Hanby and Ms. Mendez testify at the hearing.

**B.    Mr. Collier's concerns about transportation costs are outweighed by the necessity of the testimony.**

Next, Mr. Collier argues that the logistics and cost of transporting Mr. Hanby and Ms. Mendez "without sufficient advance notice" is "certainly not minimal." (ECF No. 144 at 6.) Again, logistical concerns "are always present when considering a Writ of Habeas Corpus Ad Testificandum." *Waste Mgt. of Louisiana, LLC v. River Birch, Inc.*, No. CV 11-2405, 2017 WL 1383710, at *4 (E.D. La. Apr. 18, 2017). Mr. Hanby is only three hours from Austin, and Ms. Mendez is less than two. Courts in this Circuit have previously granted writs that involved much higher transportation costs. In *Waste Mgt. of Louisiana*, the court granted a writ requesting that a prisoner incarcerated in Texarkana, Texas be brought to the Courthouse for the Eastern District of Louisiana in New Orleans—roughly a six hour drive away. *Id.* Again, Mr. Collier presents no *evidence* that transporting these individuals to court imposes any unique logistics or cost burdens.

Indeed, the Fifth Circuit has held that "[o]nce the district court has determined that the prisoner's presence is essential, the possibility that a lack of transportation funds or personnel will develop is no justification for refusing to issue the writ." *Ballard*, 557 F.2d at 481; *see also Williams v. Beauregard Parish*, No. 08-355, 2014 WL 1030042 at *1-2 (W.D. La. Mar. 17, 2014). Given the importance of Mr. Hanby and Ms. Mendez's testimony at the preliminary injunction

hearing (*supra* II), Mr. Collier's concern that the cost of transportation is "not minimal" does not justify denial of the writ.

## IV.   IN-PERSON APPEARANCE IS NECESSARY BECAUSE OF MR. COLLIER'S INABILITY TO GUARANTEE REMOTE TESTIMONY.

Plaintiffs previously offered, in the alternative, to have Mr. Hanby and Ms. Mendez testify remotely. (*See* ECF No. 142.) Mr. Collier admits that he cannot guarantee that Mr. Hanby or Ms. Mendez will be able to attend the hearing by Zoom. (ECF 144 at 8–10.) Zoom is only available to Ms. Mendez "on a first come first serve basis," and she apparently can only use that platform in the Law Library if "nothing else is scheduled at that time." (*Id.* at 8.) Mr. Hanby's situation is even more questionable, as only one computer in his law library is Zoom-capable, and he would have to use the law library's phone to "dial in as audio." (*Id.* at 9.) Mr. Collier also suggests that he will be unable—even with a court order—to receive the necessary approvals from the regional supervisors for either witness to use their respective prison's Zoom-capable computers. (*Id.*)

Mr. Collier's hedging about the feasibility of these witnesses appearing remotely raises the specter of the preliminary injunction proceedings being unnecessarily delayed due to technical difficulties or unavailability of their Zoom-capable computers. Indeed, if each unit only has one computer with Zoom, it is expected that inmates with criminal proceedings at those times would take precedence over inmates appearing as witnesses in a civil lawsuit against Mr. Collier. (ECF 144 at 8–10.)

Due to TDCJ's inability to guarantee Mr. Hanby or Ms. Mendez's remote appearances, "requiring [their] presence [at the hearing] is the most efficient way to secure that testimony." *Waste Mgt. of Louisiana, LLC*, 2017 WL 1383710, at *4. Plaintiffs are, likewise, willing to specify a single day on which each witnesses will need to be made available, so that Mr. Collier does not need to secure their attendance for "an incredibly long period of time." (ECF 144 at 8.)

## **CONCLUSION**

For the foregoing reasons, Plaintiffs Motion for *Writs of Habeas Corpus Ad Testificandum* for Anthony Hanby and Melissa Mendez should be granted, and Mr. Collier should be ordered to produce Mr. Hanby and Ms. Mendez for in-person testimony at the preliminary injunction hearing.

DATED this 25th day of July, 2024.          Respectfully submitted,

*/s/ Kevin D. Homiak*
Thomas A. Olsen (admitted *pro hac vice*)
Kevin D. Homiak (admitted *pro hac vice*)
Ellen R. Blatt (admitted *pro hac vice*)
WHEELER TRIGG O'DONNELL LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202-5647
Telephone:     303.244.1800
Facsimile:     303.244.1879
Email:    olsen@wtotrial.com
              homiak@wtotrial.com
              blatt@wtotrial.com

Erica Grossman (admitted *pro hac vice*)
HOLLAND, HOLLAND EDWARDS & GROSSMAN, LLC
1437 High Street
Denver, CO 80218
Telephone:     303.860.1331
Email:    erica@hheglaw.com

Jodi Cole
Texas Bar No. 24045602
LAW OFFICE OF JODI COLE, PLLC
203 East Murphy Street
Alpine, TX 79830
Telephone:     432.837.4266
Facsimile:     512.692.2575
Email:    jcole@jodicole.com

Jeff Edwards
Texas Bar No. 24014406
David Anthony James
Texas Bar No. 24092572
Lisa Snead
Texas Bar No. 24062204
Paul Samuel
Texas Bar No. 24124463
Edwards Law
603 W. 17th Street
Austin, TX 78701
Telephone:     512.623.7727
Facsimile:     512.623.7729
Email:   jeff@edwards-law.com
            david@edwards-law.com
            lisa@edwards-law.com
            paul@edwards-law.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE (CM/ECF)**

     I HEREBY CERTIFY that on July 25, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

                                        */s/ Kevin D. Homiak*
                                        Kevin D. Homiak