UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| BERNHARDT TIEDE, II; et al., <br><br> Plaintiffs, <br><br> v. <br><br> BRYAN COLLIER, in his official capacity as Executive Director of Texas Department of Criminal Justice, <br><br> Defendant. | § § § § § § § § § § § § § <br><br> Civil Action No.: 1:23-cv-01004-RP |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR EMERGENCY MOTION TO EXCLUDE TESTIMONY AND EVIDENCE PURSUANT TO RULE 37 AND TO COMPEL 30(B)(6) DEPOSITION**

# Exhibit 7

# Excerpt from Rough Transcript of Testimony of Dr. Jane Leonardson (August 1, 2024)

|  |  |
|---|---|
| | 1    **(CAUTION)** |
| | 2    **THE FOLLOWING IS A ROUGH DRAFT OF THE REQUESTED** |
| | 3    **PROCEEDINGS AND, THEREFORE, MAY NOT BE UTILIZED AS A** |
| | 4    **CERTIFIED RECORD FOR TEXT-CITING PURPOSES.  AS SUCH,** |
| | 5    **DISCREPANCIES WILL APPEAR IN THIS UNEDITED AND** |
| | 6    **UN-PROOFREAD FORM.  PLEASE NOTE THE PAGINATION ORDER WILL** |
| | 7    **MOST LIKELY DIFFER FROM THE COMPLETED AND CERTIFIED** |
| | 8    **TRANSCRIPT.  THANK YOU FOR YOUR ADHERENCE TO THIS** |
| 08:17:58 | 9    **ADMONITION.**  August 1, 2024 |
| 08:59:57 | 10               THE COURT:  And good morning. |
| 08:59:59 | 11               MR. HOMIAK:  Good morning. |
| 09:00:00 | 12               THE COURT:  Anything we need to cover before we |
| 09:00:02 | 13   begin today?  Any housekeeping issues? |
| 09:00:08 | 14               MS. ELLIS:  No, your Honor. |
| 09:00:09 | 15               THE COURT:  Okay. |
| 09:00:10 | 16               MR. HOMIAK:  Nothing for the plaintiffs we have |
| 09:00:13 | 17   some exhibits to admit though.  We're good, your Honor. |
| 09:00:20 | 18   Thank you. |
| 09:00:20 | 19               THE COURT:  All right. |
| 09:00:24 | 20               MR. RHINES:  Your Honor, I don't see her here in |
| 09:00:27 | 21   the courtroom today but we would like to attempt to call |
| 09:00:30 | 22   Ms. Jennifer tune as our first witness.  She was here |
| 09:00:37 | 23   yesterday and the day before.  She is a member of the |
| 09:00:40 | 24   plaintiff organization Lioness. |
| 09:00:43 | 25               THE COURT:  Is she here? |

*LILY I. REZNIK, CERTIFIED REALTIME/REGISTERED MERIT REPORTER*
*U.S. DISTRICT COURT, WESTERN DISTRICT OF TEXAS (AUSTIN)*

```
10:39:48   1   it all comes from medical professionals essentially?
10:39:51   2   A.   That's correct.
10:39:51   3   Q.   Okay.  And when TDCJ becomes aware that an
10:39:56   4   individual has a heat score, what do they do?
10:39:59   5   A.   They move that individual into a air conditioned bed
10:40:03   6   if they're on a facility that does not have one available
10:40:06   7   transport them to a facility that does.
10:40:08   8   Q.   Okay.  Were you hear yesterday when Dr. Uribe
10:40:13   9   testified?
10:40:13  10   A.   Yes.
10:40:14  11   Q.   Okay.  Do you recall that he conceded that some of
10:40:19  12   the conditions that led to death would have happened
10:40:24  13   regardless of heat?
10:40:25  14   A.   Yes.
10:40:25  15   Q.   Thank you.  No further questions.
10:40:30  16             THE COURT:  Anything further?
10:40:34  17             MR. DUKE:  No further questions.
10:40:35  18             THE COURT:  Thank you, Mr. Lumpkin, you may step
10:40:39  19   down.
10:40:39  20             THE WITNESS:  Thank you.
10:40:40  21             THE COURT:  Your next witness.
10:40:42  22             MS. CARTER:  Mr. Collier calls Dr. Jane
10:40:45  23   Leonardson to testify.  She'll appear via Zoom.
10:41:48  24             THE COURT:  Good morning, doctor.  This is Judge
10:41:50  25   Pitman.  Can you hear me okay?  Good morning, doctor this
```

| | | |
|---|---|---|
| 10:42:05 | 1 | is Judge Pitman.  Can you hear me? |
| 10:42:07 | 2 | THE WITNESS:  I can.  Thank you, can you hear me. |
| 10:42:10 | 3 | THE COURT:  Yes, we can.  We just ask you if you |
| 10:42:12 | 4 | wouldn't mind speaking as closely as you can to the |
| 10:42:16 | 5 | microphone and if you have any difficulty hearing anyone |
| 10:42:20 | 6 | on this end, if you could just let us know that would with |
| 10:42:23 | 7 | great. |
| 10:42:23 | 8 | THE WITNESS:  All right.  Thank you. |
| 10:42:24 | 9 | THE COURT:  And before we begin, could I get you |
| 10:42:26 | 10 | to raise your right hand and be worn, please. |
| 10:42:29 | 11 | THE CLERK:  You do solemnly swear or affirm that |
| 10:42:29 | 12 | the testimony which you may give in the case now before |
| 10:42:29 | 13 | the Court shall be the truth, the whole truth, and nothing |
| 10:42:37 | 14 | but the truth? |
| 10:42:37 | 15 | THE WITNESS:  I had a hard time hearing that. |
| 10:42:45 | 16 | THE CLERK:  You do solemnly swear or affirm that |
| 10:42:45 | 17 | the testimony which you may give in the case now before |
| 10:42:45 | 18 | the Court shall be the truth, the whole truth, and nothing |
| 10:42:50 | 19 | but the truth? |
| 10:42:50 | 20 | THE WITNESS:  Yes. |
| 10:42:51 | 21 | THE COURT:  Thank you. |
| 10:42:51 | 22 | JANE LEONARDSON, called by the Defendant, duly sworn via |
| 10:43:40 | 23 | videoconference. |
| 10:43:40 | 24 | DIRECT EXAMINATION |
| 10:43:41 | 25 | BY MS. CARTER: |

```
11:48:15   1   their health status?
11:48:19   2   A.  Well, that's an unusual question.  Everyone gets
11:48:22   3   their health status looked at and we're not asking the
11:48:27   4   provider to say does this person need a cool bed.  We're
11:48:32   5   asking them to document the patient's health status
11:48:34   6   properly and treat them properly as we're all trying to do
11:48:39   7   and then those decisions result in a heat score.
11:48:46   8   Q.  So the heat score isn't talking big groups of people
11:48:51   9   and assigning scores, is it?
11:48:57  10   A.  Well, no.  It looks at every single person who's
11:49:01  11   incarcerated and their medical record to look for new of
11:49:06  12   these criteria that gives them a point.  Each and every
11:49:11  13   one.  Several time times a day, thank you, Dr. Leonardson.
11:49:18  14   Nothing further right now.
11:49:22  15            MR. EDWARDS:  May I inquire, your Honor this.
11:49:23  16            THE COURT:  You may.
11:49:25  17                      CROSS-EXAMINATION
11:49:26  18   BY MR. EDWARDS:
11:49:26  19   Q.  Good morning Dr. Leonardson.  My name is Jeff
11:49:32  20   Edwards.  I'm a lawyer --
11:49:33  21            THE COURT:  If you could get they're a
11:49:36  22   microphone.
11:49:39  23            MR. EDWARDS:  Your Honor, if I could just have a
11:49:41  24   minute for my colleague to log on.
11:49:43  25            THE COURT:  Sure.  If you were at the podium she
```

```
11:49:47   1   could see you.  That might be --
11:53:26   2   Q.  (BY MR. EDWARDS) Did I understand you correctly, Dr.
11:53:30   3   Leonardson, this heat sensitivity score was designed by
11:53:37   4   TDCJ as part of a settlement agreement with some prisoner
11:53:42   5   and some lawyers?
11:53:44   6           MS. CARTER:  Objection, your Honor, that
11:53:45   7   misstates her testimony.
11:53:45   8           THE COURT:  He's asking her.
11:53:49   9   Q.  (BY MR. EDWARDS) Did I understand you correctly,
11:53:51  10   doctor?
11:53:52  11   A.  Could you say that again, please.
11:53:55  12   Q.  Sure.  Do I understand you correctly that the TDCJ
11:54:03  13   heat sensitivity score was designed by the Texas
11:54:06  14   department of criminal justice facing a class action
11:54:09  15   lawsuit some prisoners who were the plaintiffs in that
11:54:12  16   case and some lawyers?
11:54:16  17   A.  I don't think it's accurate to say it was designed by
11:54:19  18   TDCJ.  TDCJ -- there was a settlement and I honestly can't
11:54:25  19   tell you who the other side of the settlement was.  TDCJ
11:54:30  20   asked us, the people that understand the electronics
11:54:36  21   health record how they could comply with the settlement
11:54:41  22   needing the information that we have to comply and asked
11:54:45  23   us for help in interpreting that settlement so that we
11:54:50  24   could get that information out of the electronic health
11:54:53  25   record, which is managed by UTMB but owned by TDCJ.
```

```
11:54:58   1   Q.   Sure.   They gave you categories and you used your
11:55:03   2   expertise to design a method, an algorithm, if you will,
11:55:08   3   to get that information out to give people heat scores,
11:55:13   4   right?
11:55:14   5   A.   They didn't give us the categories.   They handed us
11:55:18   6   the settlement.
11:55:19   7   Q.   The settlement had categories in it.   I thought what
11:55:23   8   was your testimony, right?
11:55:25   9   A.   Right.   They didn't give us the categories, they gave
11:55:29  10   us the settlement.
11:55:30  11   Q.   You'd acknowledge that the TDCJ people that gave you
11:55:34  12   the categories in the settlement are not doctors, right?
11:55:39  13   A.   I don't know how the settlement was arrived at.
11:55:43  14   There was a finalized settlement and it had a lot of
11:55:47  15   information about who they thought needed a cool bed and
11:55:51  16   that's what we got and TDCJ said help us to know who these
11:55:55  17   people are.   I don't know how the settlement came to be.
11:56:02  18   Q.   That's one of the two of us but that's neither here
11:56:05  19   nor there.   TDCJ gave you the categories to use, correct?
11:56:11  20           MS. CARTER:   Objection, she's already said that's
11:56:13  21   not what she said, must characteristic her testimony.
11:56:16  22           THE COURT:   She can clarify if she needs to.
11:56:19  23   A.   They handed us the settlement document and asked us
11:56:24  24   to help.   They did to the make a list of categories and
11:56:29  25   disease and drugs and things like that and hand it to us.
```

```
11:56:32   1   Q.   (BY MR. EDWARDS) The parameters for the algorithm
11:56:36   2   that wave been talking about that calm directly out of a
11:56:38   3   settlement, right, a peace of paper, a summary judgment?
11:56:42   4   A.   They did.
11:56:43   5   Q.   Okay.  And the people that sent you that settlement,
11:56:47   6   was it Texas department of criminal justice, Mr. Collier
11:56:50   7   in particular, right?
11:56:54   8   A.   You know, I don't know.
11:56:57   9   Q.   Okay.
11:56:58  10   A.   I'm quite certain I'd per received an e-mail from Mr.
11:57:02  11   Collier.  But you know it came from someone that direction
11:57:09  12   and was handed to me to say please help us you know talk
11:57:17  13   care of.
11:57:18  14   Q.   Would you agree that non doctors should be designing
11:57:21  15   systems, you know, that can protect people from dangerous
11:57:31  16   conditions, medical issues?
11:57:32  17   A.   Yes.
11:57:37  18   Q.   Now I have to say I'm a little confused.  Not the
11:57:41  19   first time but are you telling me in no uncertain terms
11:57:51  20   that a 90 year old doesn't get a heat sensitivity score if
11:57:58  21   he's just 90 with hypertension?
11:58:07  22   A.   Hyper tension plus result in target organ damage if
11:58:12  23   he has result target organ damage he or she would get a
11:58:17  24   point but without -- with just hypertension and no target
11:58:22  25   organ damage, that's correct unless the provider thought
```