UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| BERNHARDT TIEDE, II; TEXAS PRISONS COMMUNITY ADVOCATES; BUILD UP, INC. a/k/a LIONESS: JUSTICE IMPACTED WOMEN'S ALLIANCE; COALITION FOR TEXANS WITH DISABILITIES; TEXAS CITIZENS UNITED FOR REHABILITATION OF ERRANTS,<br><br>Plaintiffs,<br><br>v.<br><br>BRYAN COLLIER, in his official capacity as Executive Director of Texas Department of Criminal Justice,<br><br>Defendant. | Civil Action No.: 1:23-cv-01004-RP |

**PLAINTIFFS' MOTION FOR AN ORDER TO SHOW CAUSE REGARDING DEFENDANT'S FAILURE TO NOTIFY THE COURT OF FALSIFIED EVIDENCE**

## I.   INTRODUCTION

During Defendant Bryan Collier's direct examination at last summer's preliminary injunction hearing, his counsel introduced into evidence Defendant's Exhibit 76—which purported to list the outside air temperature, humidity, and heat index at the Mark W. Stiles Unit in July 2022. Defendant's Exhibit 76 indicated that (1) the temperature on July 12, 2022, stayed at a consistent 79° from 12:30 a.m. to 4:30 p.m., and (2) the heat index that day never exceeded 85°.[1] Mr. Collier's counsel introduced the exhibit to rebut testimony from one of Plaintiffs' witnesses that the heat index had reached 136° at the Stiles Unit that day.[2]

---

[1] Def.'s Hearing Ex. 76; Hearing Tr. (Aug. 2, 2024) at 196:25-197:1.

[2] Pls.' Hearing Ex. 269 at 3; Hearing Tr. (Aug. 2, 2024) at 193:4-8, 196:23-197:1.

1

After consulting an authoritative source on the matter, the Court took judicial notice that the temperature in Beaumont (where the Stiles Unit is located) actually reached a high of 96° that day, contrary to the information contained in Defendant's Exhibit 76.[3] The Court also noted that the entries on the July 12 log appeared to be in the same handwriting, despite having purportedly been written by different people.[4] Because of these discrepancies, the Court determined that the temperature log for July 12, 2022 was "fabricated."[5] Mr. Collier's counsel nevertheless repeatedly insisted that the logs were nothing more than a "mistake"—not an intentional fabrication.[6] At the conclusion of the hearing, the Court ordered Mr. Collier to get to the bottom of the issues with the log and report the results of that investigation to the Court.[7] Mr. Collier promised to do so.[8]

Seven months have passed, and neither Mr. Collier nor his counsel have given the Court any update about whether the logs were fabricated. Plaintiffs recently learned, however, that Mr. Collier completed the Court-ordered investigation last fall and confirmed as early as September 20, 2024, exactly what the Court suspected: The July 12 temperature logs were "obviously and clearly false," and other logs from the Stiles Unit showed similar evidence of fabrication.[9] That investigation also revealed that the logs were fabricated in response to open records requests during the summer of 2022 in order "to avoid reporting missing temperature logs" and likely

---

[3] Hearing Tr. (Aug. 2, 2024) at 196:6-11, 276:25-277:8.

[4] Def's Hearing Ex. 76.

[5] Hearing Tr. (Aug. 2, 2024) at 278:22-23.

[6] *Id.* at 278:11-19.

[7] *Id*. at 280:20-25, 283:6-9.

[8] *Id.* at 287:3-10.

[9] Ex. 1, Email from C. Cirrito to B. Collier (Sept. 20, 2024) at TIEDE_DEF0168374.

with the "knowledge and/or consent of unit administrators."[10] Rather than produce the investigative report as required by the Court's order, however, Mr. Collier and his counsel did nothing. They did not even bother to correct his counsel's repeated false statements that that the Stiles Unit employee simply "made a mistake this day."[11]

Instead, they sat on the report for four months until producing it to Plaintiffs on February 24, 2025, in response to Plaintiffs' discovery requests. Even then—and even though Plaintiffs' preliminary injunction motion is still pending and summer is fast approaching—Mr. Collier chose not to file the report to correct the record or his attorney's misrepresentations to the Court. This is a clear violation of the Court's order, and may also constitute a violation of Mr. Collier's counsel's duty of candor. Rather than asking the Court to issue sanctions now, Plaintiffs request that the Court issue an order to show cause as to why sanctions should not be issued and hold an evidentiary hearing as to why Mr. Collier and his counsel never informed the Court of the results of his investigation—in direct violation of the Court's order. At that hearing, the Court can also determine who is responsible for the non-disclosure, and whether any sanction is appropriate.

## II.    BACKGROUND

**A.    Mr. Collier's Counsel Offers into Evidence Falsified Temperature Logs, and the Court Orders Further Investigation of the Issue.**

On the fourth and final day of the preliminary injunction hearing, Mr. Collier attempted to rebut earlier testimony that the heat index at the Stiles Unit had reached 136° on July 12, 2022.[12] Mr. Collier attempted to rebut this evidence by introducing Defendant's Exhibit 76—

---

[10] Ex. 2, TDCJ Report at TIEDE_DEF0168226–27.

[11] Hearing Tr. (Aug. 2, 2024) at 278:13, 18-19.

[12] *Compare* Hearing Tr. (July 31, 2024) at 238:7-240:9 (Mr. Williams' testimony regarding the inmate grievance noting a heat index of 136°), *with* Hearing Tr. (Aug. 2, 2024) at 193:4-13 (Mr. Collier's testimony attempting to rebut Mr. Williams' testimony).

3

which purported to list the outside air temperature, humidity, and heat index at the Stiles Unit in July 2022.[13] At Mr. Collier's request, the Court admitted Defendant's Exhibit 76 into evidence.[14] Mr. Collier then testified that he did not see "anywhere on [Defendant's Exhibit 76] that says [the heat index was] 130 percent" at the Stiles Unit on July 12.[15]

On Defendant's Exhibit 76, the outside temperature on July 12 never exceeded 87°, and the heat index never exceeded 85°[16]:

**TEXAS DEPARTMENT OF CRIMINAL JUSTICE**
**Temperature Log**
**UNIT: MARK W. STILES**

| DATE: 7/12/22 | Outside Air Temperature | Humidity or Wind Speed | Heat Index or Wind Chill* | Person Recording |
|---|---|---|---|---|
| 12:30 a.m. | 79 | 97% | 70 | Jones |
| 1:30 a.m. | 79 | 97% | 75 | Jones |
| 2:30 a.m. | 79 | 97% | 70 | Jones |
| 3:30 a.m. | 79 | 97% | 75 | Jones |
| 4:30 a.m. | 79 | 97% | 75 | Jones |
| 5:30 a.m. | 79 | 97% | 79 | Jones |
| 6:30 a.m. | 79 | 97% | 79 | Jones |
| 7:30 a.m. | 79 | 97% | 79 | Jones |
| 8:30 a.m. | 79 | 99% | 80 | Jones |
| 9:30 a.m. | 79 | 99% | 80 | Jones |
| 10:30 a.m. | 79 | 94% | 80 | Jones |
| 11:30 a.m. | 79 | 99% | 82 | Jones |
| 12:30 p.m. | 79 | 97% | 82 | Jones |
| 1:30 p.m. | 79 | 97% | 83 | Jones |
| 2:30 p.m. | 79 | 97% | 83 | Jones |
| 3:30 p.m. | 79 | 114 | 83 | Jones |
| 4:30 p.m. | 79 | 97 | 83 | Jones |
| 5:30 p.m. | 87 | 71 | 85 | Jones |
| 6:30 p.m. | 87 | 79 | 84 | Jones |
| 7:30 p.m. | 85 | 84 | 84 | Jones |
| 8:30 p.m. | 82 | 84 | 84 | Jones |
| 9:30 p.m. | 80 | 86 | 83 | Jones |
| 10:30 p.m. | 78 | 86 | 82 | Jones |
| 11:30 p.m. | 77 | 86 | 83 | Jones |

* Temperatures between 51 and 79 degrees Fahrenheit (°F) are not represented on the Wind Chill Index (Attachment A) or the Heat and Humidity Index (Attachment B). Indicate (N/A) in these fields when applicable.

---

[13] Hearing Tr. (Aug. 2, 2024) at 194:17-195:1; Def's Hearing Ex. 76.

[14] Hearing Tr. (Aug. 2, 2024) at 195:12-15.

[15] *Id.* at 196:2-197:1.

[16] Def.'s Hearing Ex. 76.

4

The Court immediately recognized there was "something wrong with this document."[17] As the Court later noted (after consulting a reliable source), the temperature in Beaumont that day had reached 96°.[18] Mr. Collier nevertheless insisted that he had no reason to believe that TDCJ employees were falsifying temperature logs or misrepresent temperatures to the Texas Legislature.[19]

After Plaintiffs' cross-examination, the Court returned to the issue of the outdoor temperature logs, because it "want[ed] to talk to [Mr. Collier's counsel] about whether this is any indication of [] how records are kept" at TDCJ.[20] The Court noted that, in addition to the discrepancy between the recorded and actual temperatures, there were two other obvious issues with the temperature log: (1) the heat index was sometimes recorded as less than the absolute temperature, and (2) all of the entries were written in the same handwriting even though they had purportedly been made by different people.[21]

In response to the Court's questioning, Mr. Collier's counsel repeatedly insisted that the document was simply "a mistake"—not an intentional fabrication[22]:

> Yes, your Honor. And I will represent that, unfortunately for me, *this is a mistake*. It looks like *there was a mistake by the unit* and I was attempting to impeach the grievance with what was actually reported to the l[o]g, which would be indoor

---

[17] Hearing Tr. (Aug. 2, 2024) at 196:6-11.

[18] *Id.* at 276:25-277:8.

[19] *Id.* at 197:3-5, 198:11-15.

[20] *Id.* at 275:8-276:10.

[21] *See id.* at 277:9-19. The logs for several other days in Defendant's Exhibit 76 have similar discrepancies—including July 1 & 2, 2022 ("Wheeler" is in different handwriting, despite purportedly being entered by the same person); July 6, 2022 (similar handwriting for entries purportedly by different people); July 7, 2022 (similar handwriting and pen for entries purportedly by different people); July 13, 2022 (similar handwriting and pen for entries purportedly by different people); and July 14, 2022 (same).

[22] *Id.* at 278:11-19 (emphasis added).

temps and that was in the report, I mistakenly thought that the logs were also indoor temperatures. They're outdoor temperatures. *And unfortunately for me, the attorney, it looks like the unit employee made a mistake this day.*

The Court disagreed, noting: "It's not a mistake," and it was instead "a fabricated document."[23] And the Court expressed concern that the fabricated document had been used to suggest one of Plaintiffs' witnesses was not telling the truth.[24] The Court ordered that "somebody needs to look into this about how this happened, [and] why it happened."[25] And the Court said: "I want to get to the bottom of this and I believe [Mr. Collier and his attorneys] probably do, too."[26]

Plaintiffs requested a specific deadline for Mr. Collier to provide an explanation to the Court regarding whether Defendant's Exhibit 76 was fabricated.[27] The Court denied that request, noting that such a deadline was unnecessary, because the Court was confident Mr. Collier would "get right on [it]."[28] Mr. Collier's counsel confirmed that he would do just that.[29]

### B. Investigation Shows that the Temperature Logs Were, in Fact, Fabricated, but Defendant Did Not Share the Results of that Investigation with the Court.

Despite assuring the Court and Plaintiffs that he would "get on it," Mr. Collier never informed the Court what occurred with Defendant's Exhibit 76 or why. In the more than seven

---

[23] *Id.* at 278:20-25.

[24] *Id.* at 278:3-10, 278:20-279:2, 279:13-20. During this discussion, the Court incorrectly assumed the temperature log had not been admitted into evidence by Mr. Collier—when, in fact, it was. (*Compare id.* at 275:13-18, 279:18-20, *with id.* at 195:12-15.)

[25] *Id.* at 280:15-18; *see also id.* at 283:4-9 (repeating same sentiment).

[26] *See id.* at 280:20-25.

[27] *See id.* at 287:3-6.

[28] *Id.* at 287:7-8.

[29] *Id.* at 287:3-10.

6

months since the preliminary injunction hearing has concluded, Mr. Collier and his counsel have remained silent. As a result, Plaintiffs served written discovery on January 24 2025, which sought all materials related to Mr. Collier's investigation. Mr. Collier responded to those requests on February 24. Those responses revealed—for the first time—that Mr. Collier had ordered and completed an investigation which confirmed the Court's suspicions: The July 12, 2022 log on Defendant's Exhibit 76 was "falsified."[30]

Emails produced by Mr. Collier demonstrate that the investigation was started shortly after the hearing concluded. By September 20, 2024 (seven weeks after the hearing), the investigator informed Mr. Collier that the log was "obviously and clearly false."[31] Less than a week later, the investigator noted he was "confident in [his] conclusion" and had a "documentation trail, which is likely more than enough to satisfy the judge."[32]

The final report was dated November 8, 2024, and concluded that Defendant's Exhibit 76 was, in fact, falsified—not to deceive this Court, but to deceive the public in response to open records requests. Among the conclusions reached by the investigator[33]:

- Logs were falsified in response to an agency-wide effort to collect temperature logs in response to open records requests in the summer of 2022[34];

- The July 12, 2022 log was falsified twice, by two different people, with one uploaded to a shared drive and the other maintained in the unit file[35];

---

[30] Ex. 2, TDCJ Report at TIEDE_DEF0168226.

[31] Ex. 1, TIEDE_DEF168374.

[32] Ex. 3, Email from B. Collier to C. Cirrito (Sept. 26, 2024) at TIEDE_DEF0169071.

[33] Ex. 2, TDCJ Report at TIEDE_DEF0168225.

[34] *Id.* at TIEDE_DEF0168226.

[35] *Id.*

7

- Shift rosters show that the officers who purportedly made the temperature entries on the July 12, 2022 were not assigned to positions in which they could have done so[36];

- "Numerous" logs for other dates have indicators of falsification, including logs that showed temperature irregularities[37]; and

- It was likely that employees "recreated" missing logs with the knowledge or consent of their unit administrators.[38]

More than seven months passed since the Court expressed the need to "get to the bottom" of the fabricated logs, and more than four months passed since Mr. Collier received the final report demonstrating that the problem was not limited to the July 12, 2022 log. This forced Plaintiffs to seek the results of the investigation in discovery.

Yesterday afternoon, undersigned counsel conferred with counsel for Mr. Collier about this Motion. In an attempt to preempt it, Mr. Collier filed an "Advisory to the Court" today. The Advisory states that "the OAG did not construe the Court's comment [at the preliminary injunction hearing] as an order to produce the results of the investigation to the Court." (ECF 199 at 2.) Tellingly, however, the Advisory says nothing about how *Mr. Collier* interpreted the Court's comments at the hearing, it says nothing about the email to Mr. Collier in which the investigator confirmed that the purpose of the investigation was "to satisfy the judge"[39] (i.e., comply with the Court's order), and it says nothing about the remainder of the Court's comments during the hearing—which clearly establish that the Court ordered Mr. Collier to investigate the fabricated temperature logs and inform the Court "how this happened, [and] why it happened."[40]

---

[36] *Id.*

[37] *Id.*

[38] *Id.*

[39] Ex. 3, Email from B. Collier to C. Cirrito (Sept. 26, 2024) at TIEDE_DEF0169071.

[40] *Id.* at 280:15-18; *see also id.* at 283:4-9 (repeating same sentiment).

8

In fact, Mr. Collier *still* has not submitted the investigative report to the Court. And, while the Advisory correctly notes that the "investigation revealed the outdoor temperature log was created in 2022, before the initiation of this lawsuit," rather than to deceive the Court (ECF 199 at 2), it fails to mention the investigator's key finding that the July 12, 2022 temperature log submitted to the Court was "falsified"—not a mistake.[41]

These omissions from the Advisory further underscore why an order to show cause (and an evidentiary hearing) is necessary to determine (1) why Mr. Collier and his counsel did not provide the investigative report to the Court (or otherwise apprise the Court of the investigation's findings), (2) who is responsible for this violation of the Court's order, and (3) whether sanctions are warranted.

### III. ARGUMENT

#### A. Both Mr. Collier and his Counsel violated the Court's Order by Failing to Notify the Court of the Results of the Investigation.

The Court's order was clear: Mr. Collier must determine whether Defendant's Exhibit 76 was falsified and provide an explanation to the Court. This was an enforceable order. *See Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 578 (5th Cir. 2000) (to be enforceable, order must be "definite and specific" but "need not anticipate every action to be taken in response to its order, nor spell out in detail the means in which its order must be effectuated"). A party must take "all the reasonable steps within their power to insure compliance with the orders." *Alberti v. Klevenhagen*, 610 F. Supp. 138, 141 (S.D. Tex. 1985). A party's failure to do so can lead to a finding of civil contempt. *See Sec. & Exch. Comm'n v. First Fin. Grp. of Texas, Inc.*, 659 F.2d 660, 669 (5th Cir. 1981); Fed. R. Civ. Pro. 70(e); *see also* 18 U.S.C. § 401. "The contemptuous

---

[41] Ex. 2, Ex. 2, TDCJ Report at TIEDE_DEF0168226.

9

actions need not be willful," so long as "the contemnor actually failed to comply with the court's order." *Am. Airlines*, 228 F.3d at 581. The defendant's intent, for good or ill, is simply "not an element of civil contempt." *Alberti*, 610 F. Supp. at 141 (citing *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949). To be held in contempt, the offending party needs only to fail "to accomplish what was ordered in meaningful respects." *Ruiz v. McCotter*, 661 F. Supp. 112, 117 (S.D. Tex. 1986) (Justice, J.) (holding TDCJ's predecessor agency in contempt).[42]

Here, the Court made explicit its directive that Mr. Collier investigate the fabricated temperature logs and inform the Court "how this happened, [and] why it happened."[43] The Court then removed any doubt that it was expecting a prompt explanation, when it declined to set a specific deadline "for the state to provide an explanation," and instead confirmed that Mr. Collier and his attorneys were "going to get right on that."[44] Mr. Collier's post-hearing communications with the investigator also confirm that the purpose of the investigation was "to satisfy the judge"[45]—i.e., to comply with the Court's order. Yet, seven months have passed, and no explanation was provided to the Court. Mr. Collier and his counsel now stand in blatant violation of the Court's order.

The Court's order aside, Mr. Collier's counsel also had an ethical obligation to correct the record after she offered the falsified temperature logs into evidence. Texas attorneys owe a duty

---

[42] The Court also has the power to "conduct an independent investigation in order to determine whether it has been the victim of fraud." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991).

[43] Hearing Tr. (Aug. 2, 2024) at 280:15-18 ("[S]omebody needs to look into this about how this happened, why it happened . . . ."); *id.* at 280:20-25 ("I want to get to the bottom of this and I believe you probably do, too.").

[44] *Id.* at 287:3-8.

[45] Ex. 2, TIEDE_DEF0169071.

of candor to the Court, so that it is not "misled by false statements." *In re Ethics Investigation of Allegations Raised by UDF*, No. 4:22-MC-01-O, 2023 WL 3327251, *24 (N.D. Tex. Feb. 6, 2023), *report and recommendation adopted*, No. 4:22-MC-01-O, 2023 WL 3322586 (N.D. Tex. May 9, 2023) (citations and quotations omitted)). This duty did not end with the hearing. Mr. Collier's counsel was obligated to correct the record even if she only later learned of the temperature log's falsity. *See* Tex. Disciplinary Rule of Prof. Cond. 3.03 (requiring attorney who learns of evidence's falsity to make a good faith effort to persuade client to correct or withdraw evidence and, if those efforts are unsuccessful, to take "reasonable remedial measures"); *see also Coleman v. United States*, No. SA-16-CA-00817-DAE, 2017 WL 9360840, at *2 (W.D. Tex. Aug. 16, 2017) (applying Disciplinary Rule 3.03 to proceedings in this District). She did not do so, despite now knowing full-well (and for several months) that the July 12, 2022 log on Defendant's Exhibit 76 was fabricated.

### B. TDCJ has a History of Falsifying Documents and Making Misrepresentations to Avoid Discovery of Dangerous Conditions.

This is not an isolated incident for the TDCJ. In *Cole v. Collier*, Judge Ellison granted Plaintiff's motion for sanctions for TDCJ and Mr. Collier violating the terms of the settlement agreement. *See Cole v. Collier*, No. 4:14-CV-1698, 2019 WL 6733002, at *2-3 (S.D. Tex. Dec. 11, 2019). Mr. Collier and TDCJ admitted to the Court "that they failed to maintain indoor heat index temperatures below 88°F in both the Stiles and LeBlanc Units, failed to notify Class Counsel when temperatures exceeded 88°F, and transported class members on non-air-conditioned buses on at least one occasion." *Id.* at *3. And they admitted that they "previously made *several serious misrepresentations to both Class Counsel and this Court*" about their compliance with the settlement agreement. *See id.* Judge Ellison noted that the TDCJ and Mr. Collier's **"**failure to stymie these violations over two years after the Court's initial preliminary

injunction and over one year after the Court approved the settlement agreement is of particular concern to the Court," and their "promises that they will do better without intervention by this Court fall flat." *Id.* To investigate the severity and extent of the defendants' misconduct, Judge Ellison awarded additional discovery and attorney's fees. *See id.* at *4. He determined that the plaintiffs could "take up to five depositions of TDCJ officials of their choosing," and "may also serve written discovery requests" relating to violations of the settlement agreement and Defendants "ensuing misrepresentations made to Class Counsel and th[e] Court." *Id.*

Evidence presented at the preliminary injunction hearing also demonstrated other, more recent TDCJ practices that have almost certainly led to heat-related deaths being undercounted and underreported:

- TDCJ does not consistently take the core body temperatures of deceased inmates found in high ambient temperatures, and it has no policy requiring temperatures be taken in those circumstances[46];

- TDCJ only considers a death "heat-related" if the autopsy report lists hyperthermia as the *sole* cause of death[47]; and

- TDCJ often waits several days to perform autopsies, despite the standard of care requiring that an autopsy be performed within 48 hours of an individual's death.[48]

In addition, TDCJ reported to the Texas Legislature that only 17 TDCJ inmates developed heat-related illnesses in all of 2023,[49] while at least one report from UTMB identified

---

[46] ECF 155, TDCJ 30(b)(6), 245:17-246:4. Notably, recently disclosed autopsies and death investigations from the hundreds of people who died during last summer show that this critical piece of information is still not being obtained.

[47] *Id.* at 244:25-245:12.

[48] Hearing Tr. (July 31, 2024) at 292:14-293:1.

[49] Pls.' Hearing Ex. 102 at 5.

37 TDCJ inmates with heat-related illnesses *in a single month* (June 2023).[50] Mr. Collier acknowledged at the preliminary injunction hearing that he was aware of UTMB's June 2023 heat-related illness report, but claimed (without further explanation) that the data UTMB reported to TDCJ contained "significant inaccuracies."[51] When combined with the inaccurate temperature logs, the discrepancies between TDCJ's report to the Legislature and UTMB's report to the TDCJ, and TDCJ's practices and policies governing autopsies present a clear pattern of poor—and perhaps intentionally false—recordkeeping that raises significant questions about the veracity and reliability of the other documents Mr. Collier presented at the hearing regarding TDCJ's compliance with its own heat-mitigation policies. And, as in the *Cole* case, TDCJ's attempts to prevent the "discovery of these dangerous conditions," continues to put inmates "lives in danger," and has "serious consequences for individuals in TDCJ's custody." 2019 WL 6733002, at *2-3.

    **C.    The Court Should Issue an Order to Show Cause and hold an Evidentiary Hearing.**

By not providing the Court with the investigative report confirming that the July 12, 2022 temperature log in Defendant's Exhibit 76 was falsified, Mr. Collier and his counsel violated the Court's order, and counsel may have breached her duty of candor to the Court. Either may expose them to sanctions. *See, e.g.*, *Johnson v. Lumpkin*, 76 F.4th 1037, 1038 (5th Cir. 2023) (recognizing courts' discretion to impose sanction for counsel's lack of candor); *Am. Airlines*, 228 F.3d at 578 (contempt sanctions for violation of order). Yet on this record, it is not entirely

---

[50] Pls.' Hearing Exs. 84 & 85.

[51] Hearing Tr. (Aug. 2, 2024) at 227:20-228:24.

clear where the fault for the report's non-disclosure lies, or why the report was never submitted to the Court.

Given these open questions, Plaintiffs are reluctant to ask the Court to issue a specific sanction at this time. Instead, Plaintiffs request that the Court issue an order to show cause and hold an evidentiary hearing to determine why the investigative report was not provided to the Court (or the Court was not otherwise apprised of the results of the investigation), and who is responsible for that nondisclosure.

## IV.     CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court issue an order to show cause as to why Defendants and his counsel should not be sanctioned for failure to update the Court on the results of their investigation into falsified temperature logs and to hold an evidentiary hearing to determine why those results were not timely provided to the Court, and who is responsible for the violation of this Court's order.

DATED: March 18, 2025

Respectfully submitted,

/s/ Kevin D. Homiak

Brandon Duke
Texas Bar No. 24094476
O'MELVENY & MYERS LLP
700 Louisiana St., Suite 2900
Houston, Texas 77002
Telephone: (832) 254-1500
Facsimile: (832) 254-1501
Email: bduke@omm.com

Jeff Edwards
Texas Bar No. 24014406
David Anthony James
Texas Bar No. 24092572
Lisa Snead
Texas Bar No. 24062204
Paul Samuel
Texas Bar No. 24124463
Michael Singley
Texas Bar No. 794642
EDWARDS LAW
603 W. 17th Street
Austin, Texas 78701
Telephone: 512.623.7727
Facsimile: 512.623.7729
Email: jeff@edwards-law.com
david@edwards-law.com
lisa@edwards-law.com
paul@edwards-law.com

Thomas A. Olsen (admitted *pro hac vice*)
Kevin D. Homiak (admitted *pro hac vice*)
Ellen R. Blatt (admitted *pro hac vice*)
WHEELER TRIGG O'DONNELL LLP
370 Seventeenth Street, Suite 4500
Denver, Colorado 80202-5647
Telephone: 303.244.1800
Facsimile: 303.244.1879
Email: olsen@wtotrial.com
homiak@wtotrial.com
blatt@wtotrial.com

Erica Grossman (admitted *pro hac vice*)
HOLLAND, HOLLAND EDWARDS & GROSSMAN, LLC
1437 High Street
Denver, Colorado 80218
Telephone: 303.860.1331
Email: erica@hheglaw.com

Jodi Cole
Texas Bar No. 24045602
LAW OFFICE OF JODI COLE, PLLC
203 East Murphy Street
Alpine, Texas 79830
Telephone: 432.837.4266
Facsimile: 512.692.2575
Email: jcole@jodicole.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE (CM/ECF)

      I HEREBY CERTIFY that on March 18, 2025, I electronically filed the foregoing **PLAINTIFFS' MOTION FOR AN ORDER TO SHOW CAUSE REGARDING DEFENDANTS' FAILURE TO NOTIFY THE COURT OF FALSIFIED EVIDENCE** with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

                                                          */s/Kevin D. Homiak*
                                                          Kevin D. Homiak

## CERTIFICATE OF CONFERRAL

      By my signature above, I certify that Plaintiffs' counsel conferred with counsel for Defendant by email on the afternoon of March 17, 2025, and Defendant's counsel stated Defendant opposes to the relief requested in this motion.

                                                          */s/Kevin D. Homiak*
                                                          Kevin D. Homiak