IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| BERNHARDT TIEDE, II, et al., | § § § | |
| Plaintiffs, | § § | |
| v. | § | 1:23-CV-1004-RP |
| BOBBY LUMPKIN, | § § § | |
| Defendant. | § § | |

## ORDER

Before the Court is Plaintiffs'[1] motion to maintain "attorneys' eyes only" designation for six spreadsheets identifying the membership of CTD, TX C.U.R.E., Lioness, and TCPA (together, "Organizational Plaintiffs"), (Dkt. 236). Defendant Bobby Lumpkin[2] filed a response in opposition, (Dkt. 241), to which Plaintiffs replied, (Dkt. 242). Having reviewed the record, the parties' briefing, and the relevant law, the Court will grant the motion.

Where a designation under a protective order has been challenged, "it is the burden of the designating party to justify the need for enforcement of the protective order in accordance with its terms." *Oncology Tech, L.L.C. v. Elekta, Inc.*, No. CV SA-12-CA-314-H, 2013 WL 12169359, at *5 (W.D. Tex. Feb. 5, 2013). The movant must demonstrate that disclosure will cause "a clearly defined and very serious injury." *United States v. Planned Parenthood Fed'n of Am.*, 2022 WL 19010531, at *4 (N.D. Tex. Dec. 15, 2022). Courts balance the requesting party's need against potential harm. *In re Weekley Homes, L.P.*, 295 S.W.3d 309, 322 (Tex. 2009) (orig. proceeding).

---

[1] Bernhardt Tiede, II ("Tiede"); Prisons Community Advocates ("TPCA"); Lioness Justice Impacted Women's Alliance ("Lioness"); Texas Citizens United for Rehabilitation of Errants ("TX C.U.R.E."); and Coalition for Texans with Disabilities' ("CTD") (collectively, "Plaintiffs").

[2] Defendant Lumpkin was substituted for Bryan Collier. (*See* Dkt. 233).

Defendant seeks to share the Organizational Plaintiffs' membership lists with a limited number of Texas Department of Criminal Justice ("TDCJ") administrative staff in TDCJ's Executive Services and Inmate Grievance Divisions. (Resp., Dkt. 241, at 2). Defendant seeks to make this disclosure in order to cross-check the Organizational Plaintiffs' membership with TDCJ records for the purpose of contesting issues related to standing, administrative exhaustion, and the appropriate scope of remedies. (*Id.* at 7-9). Defendant asserts that the "most efficient way" to cross-reference the Organizational Plaintiffs' membership lists with TDCJ administrative information is to share the lists with TDCJ staff, and that it would be burdensome for litigation counsel to perform this cross-checking. (*Id.* at 2, 8 ("Litigation counsel does not have access to TDCJ's database where inmate information is recorded. Further, TDCJ's databases utilize older software that does not support a user-friendly interface, and counsel have not been trained in its use.")).

Plaintiffs raise significant concerns about this potential disclosure. First, Plaintiffs raise the concern that their incarcerated members could face retaliation, including in the form of administrative penalties, for their participation in advocacy related to prison conditions. (Mot., Dkt. 236, at 5). Second, Plaintiffs argue that, even absent retaliation, disclosure of their membership lists would dissuade incarcerated individuals from participating in advocacy organizations (including the Organizational Plaintiffs), chilling the exercise of those individuals' associational rights. (*Id.* at 4-5; Reply, Dkt. 242, at 2-5). These concerns are supported by declarations from organizational leaders discussing the potential impact of disclosure on their members. (Mot. Ex. 1-3, Dkt. 236-1 to 236-3).

The Court is convinced that Plaintiffs' concerns about retaliation and chilling effects are clearly defined and serious. Defendant argues that these concerns are mitigated by (1) the existence of TDCJ policies barring retaliation and (2) the limited scope of disclosure, with lists only to be shared with a small number of TDCJ administrative staff. (Resp., Dkt. 241, at 2, 7). However, the

Court is not convinced that these concerns are substantially mitigated by either consideration. Plaintiffs are not arguing that retaliation is likely to occur because TDCJ policy directs any form of retaliation, but instead that retaliation may occur despite TDCJ policy. Moreover, retaliation could certainly take the form of actions carried out by administrative staff. Additionally, the chilling of associational rights could occur regardless of the existence of TDCJ policies or the disclosure of information only to administrative staff.

The Court recognizes that maintaining the attorneys-eyes-only designation may burden Defendant's litigation counsel by requiring counsel to either be trained in the relevant TDCJ software or to cross-reference the Organizational Plaintiffs' membership outside of that software. However, the Court finds that this potential burden is outweighed by the significant concerns about retaliation and chilling effects raised by Plaintiffs.

For the reasons stated above, Plaintiffs' motion to maintain attorneys' eyes only designation, (Dkt. 236), is **GRANTED**. It is **ORDERED** that the spreadsheets that were the subject of that motion will continue to be designated as "Attorneys' Eyes Only."

**SIGNED** on October 29, 2025.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE