IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| TEXAS CITIZENS UNITED FOR REHABILITATION OF ERRANTS, INC., et al., | § | |
| Plaintiffs, | § | |
| v. | § | 1:23-CV-1004-RP |
| BOBBY LUMPKIN, | § | |
| Defendant. | § | |

**ORDER**

On September 22, 2026, after bench trial, the Court ruled that "the conditions of confinement in [Texas's] un-air-conditioned prisons violate the Eighth Amendment rights of all inmates housed in those facilities, including Plaintiffs' members and constituents[.]" (Findings of Fact and Conclusions of Law ("FFCLs"), Dkt. 350, at 149). The Court ordered Bobby Lumpkin ("Defendant"), director of the Texas Department of Criminal Justice ("TDCJ"), to "immediately develop and implement a plan to install air-conditioning in every Texas prison, with installation to be completed not later than December 31, 2029." (*Id.*).

Now before the Court is Defendant's opposed motion to stay pending appeal. (Dkt. 361). Defendant seeks "to stay the final judgment in this case pending resolution of his appeal to the United States Court of Appeals for the Fifth Circuit." (Mot. Stay, Dkt. 361, at 1). The Court will deny the motion.

## I. LEGAL STANDARD

"A stay is an intrusion into the ordinary processes of administration and judicial review, and accordingly is not a matter of right, even if irreparable injury might otherwise result to the

appellant[.]" *Nken v. Holder*, 556 U.S. 418, 427 (2009) (internal quotation marks and citations omitted).

When considering a stay pending appeal, four factors are typically relevant: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Veasey v. Abbott*, 870 F.3d 387, 391 (5th Cir. 2017) (quoting *Nken*, 556 U.S. at 425–26). Defendant is a state officer seeking this stay in his official capacity, so his "interest and harm merge with that of the public" and the Court weighs the second and fourth factors together. *Veasey*, 870 F.3d at 391.

"Likelihood of success remains a prerequisite in the usual case[,]" but "it is not an invariable requirement." *Ruiz v. Estelle*, 666 F.2d 854, 857 (5th Cir. 1982) ("*Ruiz II*"). Even if a stay applicant cannot "ma[k]e a strong showing that he is likely to succeed on the merits," a stay can still issue if the movant "present[s] a substantial case on the merits when a serious legal question is involved" and "'if the balance of equities (i.e. consideration of the other three factors) is . . . heavily tilted in the movant's favor[.]'" *Id.* at 856–57 (quoting *Ruiz v. Estelle*, 650 F.2d 555, 564 (5th Cir. Unit A June 1981) ("*Ruiz I*")). The cases give little insight on what makes a "serious legal question," but the Fifth Circuit has explained that "a legal question may be 'serious' when it implicates 'far-reaching effects or public concerns.'" *United States v. Transocean Deepwater Drilling, Inc.*, 537 F. App'x 358, 361 (5th Cir. 2013) (per curiam) (citing *Wildmon v. Berwick Universal Pictures*, 983 F.2d 21, 23–24 (5th Cir. 1992)).[1]

[1] One example of this standard in practice is *United States v. Baylor Univ. Med. Ctr.*, 711 F.2d 38, 40 (5th Cir. 1983), where the Fifth Circuit stayed an order requiring Baylor Medical Center to undergo federal investigation or else lose "all Medicaid and Medicare funds[.]" The Fifth Circuit "ha[d] little difficulty concluding that a serious legal question [was] involved" because "[w]hether Medicare and Medicaid payments constitute federal financial assistance within the meaning of the Rehabilitation Act is a serious legal question that could have a broad impact upon federal/state relations" and "[a] court . . . would want to make a detailed and in depth examination of this serious legal issue before opening the doors of private institutions to the probing tools of an HHS investigation." *Id.* So, at the very least, thorny legal questions with major societal impact are "serious" enough.

## II. DISCUSSION

Here, Defendant argues he presents a substantial case on the merits with serious legal questions, and he contends the other factors strongly favor a stay. (Mot. Stay, Dkt. 361, at 6). The Court agrees that this case is undoubtedly significant with serious legal questions, but as the other three factors do not "heavily tilt[]" in Defendant's favor, the Court will not issue a stay. *Ruiz I*, 650 F.2d at 566.

### A. Substantial Case with Serious Legal Questions

First, Defendant presents "a substantial case on the merits" with "serious legal question[s.]" *Ruiz I*, 650 F.2d at 565. Defendant challenges (1) whether he acted with deliberate indifference, (Mot. Stay, Dkt. 361, at 6–7), and (2) whether Plaintiffs have associational standing and administratively exhausted their claims, (*id.* at 7–8). Although the Court ruled against Defendant on both issues, the legal questions are hard—and they certainly "implicate[] 'far-reaching effects or public concerns,'" since air conditioning all Texas prisons will take major work and will likely cost over a billion dollars. *Transocean Deepwater Drilling*, 537 F. App'x at 361 (citing *Wildmon*, 983 F.2d at 23–24); (*see* FFCLs, Dkt. 350, at 95–97). Defendant satisfies this factor.

That said, although the Court believes this legal question is serious, the facts at trial still proved Defendant's deliberate indifference. Despite existing heat mitigation efforts, trial evidence proved inmates are suffering permanent injuries and dying. (FFCLs, Dkt. 350, at 24–59). Trial evidence proved Defendant is fully aware. (*Id.* at 59–61). And trial evidence also proved Defendant could do more to fix it. (*Id.* at 88–102). Nonetheless, the problem stays unsolved. (*See, e.g.*, *id.* at 127–28 ("[T]he Court finds it particularly concerning that TDCJ continues to rely, across its system, on what are essentially the same core mitigation measures . . . .")). "It is well-established in our circuit 'that the Eighth Amendment guarantees inmates a right to be free from exposure to extremely dangerous temperatures without adequate remedial measures[,]'" *Yates v. Collier*, 868 F.3d 354, 360

(5th Cir. 2017) (quoting *Hinojosa v. Livingston*, 807 F.3d 657, 669 (5th Cir. 2015)), and the trial evidence in this case proved Defendant has not implemented "adequate remedial measures." But the Court is not blind to the fact that systemwide air conditioning will take work, money, and time, making the antecedent question of deliberate indifference a "serious" legal issue.

So too for standing. Defendant "has insisted that the Plaintiffs in this case lack standing to pursue these claims and that their members and constituents have not exhausted their administrative remedies as required" by the Prison Litigation Reform Act ("PLRA"). (Mot. Stay, Dkt. 361, at 7). The Court rejected that position. First, the Court found Lioness Justice Impacted Women's Alliance has standing as a traditional membership organization, (FFCLs, Dkt. 350, at 103–04), and Texas Prison Community Advocates and Texas Citizens United for Rehabilitation of Errants, Inc. have standing because their constituents have sufficient "indicia of membership," (*id.* at 104–14). Then, the Court found the PLRA's exhaustion requirement does not apply because Plaintiffs are organizations—not "prisoner[s] confined in any jail, prison, or other correctional facility." (FFCLs, Dkt. 350, at 116); 42 U.S.C. § 1997e(a). On the factual record proven at trial, the Court is, again, confident in these conclusions. But the Court acknowledges that standing and exhaustion—particularly for organizational plaintiffs—are significant threshold issues here.

**B. Irreparable Injury to the State, and Public Interest**

Next, the Court weighs the public interest and irreparable injury to Defendant, factors which combine since the state's "interest and harm merge with that of the public." *Veasey*, 870 F.3d at 391. The Court finds these factors weigh against a stay.

Defendant argues that "[a]bsent a stay, TDCJ is required to begin taking steps to comply with a likely unachievable deadline, resulting in TDCJ being forced to cut other critical operations and programs thereby exposing its staff and population to greater life safety risks[.]" (Mot. Stay, Dkt. 361, at 8). Defendant also claims his agency will incur compliance costs that cannot be recovered if

he wins on appeal, (*id.* at 9–10), and that TDCJ cannot request more money than it "reasonably believes it can obligate within the relevant budget cycle," (*id.* at 9). But given Defendant's own admissions, and the evidence at trial, these arguments ring hollow.

Defendant has acknowledged that Texas heat injures and kills inmates, (*see, e.g.*, Trial Tr. (Mar. 31, 2026) 239:2–5), and his predecessor, Bryan Collier, wanted to air condition the state's prisons "as fast as we can." (Trial Tr. (Mar. 31, 2026) 237:19–23). Collier described a plan to air condition all prisons in 36 to 51 months as something "we knew we could actually do and get encumbered and get completed in projects." (Trial Tr. (Mar. 31, 2026) 199:5–6). Collier also never heard of any "cap or limit" on the money he could request to meet that goal, (*id.* at 162:2–4), and he "never felt any pushback from Governor Abbott's office or [the] lieutenant governor's office in terms of air conditioning" funding, (*id.* at 162:5–13). And TDCJ's Deputy Director of Facilities, E. Dale Cox, testified that as long as "money's available" and there is "seamless handoff" between procurement steps, then air conditioning Texas prisons in 36 to 51 months would be "very doable" and "not unreasonable." (Trial Tr. (Apr. 8, 2026) 163:7–22). The Court sees no irreparable harm in making Defendant meet his own stated goal, on his own timeline, using money he has never had problems obtaining. *See ODonnell v. Harris Cnty.*, 260 F. Supp. 3d 810, 820 (S.D. Tex. 2017) ("[T]he defendants cannot be irreparably injured by the court's Order, because they are already planning to follow all or at least significant portions of it.").

And, Texas prisoners' Eighth Amendment rights sit on the other side of the scale. "It is always in the public interest to prevent the violation of a party's constitutional rights." *Simms v. District of Columbia*, 872 F. Supp. 2d 90, 105 (D.D.C. 2012) (internal quotation marks and citation omitted). Echoing the Fifth Circuit, "[t]his Court recognizes that some of the improvements will be costly but . . . inadequate resources can never be an adequate justification for depriving any person

of his constitutional rights." *Smith v. Sullivan*, 553 F.2d 373, 378 (5th Cir. 1977) (internal quotation marks and citation omitted) (collecting cases).

Considered together, the irreparable harm and public interest factors disfavor a stay.

**C. Injury to Other Parties**

Last, the Court considers whether a stay would injure other parties. To argue Plaintiffs would not be harmed, Defendant cites active air conditioning projects and falling heat-related grievances, and he challenges "the number of prisoner deaths attributed solely, or in significant part, to heat." (Mot. Stay, Dkt. 361, at 10–11). But the Court already considered these arguments at trial and rejected them because Plaintiffs proved Eighth Amendment injuries. That same, ongoing Eighth Amendment harm supports denying a stay.

The whole problem is that Defendant's installation efforts are not moving fast enough. At TDCJ's current pace, given rising inmate populations, "[t]he gap between inmates and air-conditioned beds [has only] widened." (FFCLs, Dkt. 350, at 93). Even if TDCJ does achieve "almost 90,000 'cool beds'" completed" "going into calendar year 2028[,]" (Mot. Stay, Dkt. 361, at 11), current forecasts estimate TDCJ will house more than 150,000 inmates by then, (Pls.' Trial Ex. 283 (Professor Dietch's Demonstrative)). That will leave over 60,000 people still exposed to dangerous heat. The Court will not belabor its Findings of Fact and Conclusions of Law again, (*see* Dkt. 350), but for the same reasons explained there, this heat exposure is an Eighth Amendment injury, and it is sufficient to disfavor a stay under this factor.

## III. CONCLUSION

Defendant "present[s] a substantial case on the merits" with "a serious legal question" involved, but "the balance of equities" is not "heavily tilted in [his] favor[.]" *Ruiz II*, 666 F.2d at 856–57 (quoting *Ruiz I*, 650 F.2d at 564). It is therefore **ORDERED** that Defendant's motion for a stay pending appeal, (Dkt. 361), is **DENIED**.

**SIGNED** on November 10, 2026.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE